UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

CASE NO.: 9:12-cv-80762-Middlebrooks

GHAHAN, LLC

    Plaintiff,

    vs.

PALM STEAK HOUSE, LLC,
f/k/a PALM STEAK  HOUSE GENTLEMENS CLUB, LLC,

    Defendant

GHAHAN, LLC

    Third-Party Plaintiff

    vs.

SUZANNE FARESE AND DAVID GOLDSTEIN, AS TRUSTEES
OF PALM BEACH GENTLEMEN'S CLUB TRUST,

PALM BEACH GENTLEMEN'S CLUB TRUST,

DAVID M. GOLDSTEIN, AS TRUSTEE OF NOLITA TRUST,

NOLITA TRUST,

BARRY RODERMAN, individually,

    and

SUZANNE FARESE, individually,

    Third-Party Defendants.

_____/

**<u>SECOND AMENDED IMPLEADER COMPLAINT IN PROCEEDINGS
SUPPLEMENTARY TO SET ASIDE FRAUDULENT CONVEYANCE AND TO
SATISFY JUDGMENT AND FOR OTHER RELIEF</u>**

Plaintiff, Ghahan, LLC ("Ghahan"), by and through counsel, brings these proceedings supplementary to avoid and recover fraudulent and improper transfers against Defendant, Palm Steak House, LLC, f/k/a Palm Steak  House Gentlemens Club, LLC, and Third-Party Defendants, Suzanne Farese and David Goldstein, as trustees Of Palm Beach Gentlemen's Club Trust, Palm Beach Gentlemen's Club Trust, David M. Goldstein, as trustee of Nolita Trust, Nolita Trust, Barry Roderman, individually and Suzanne Farese, individually,  (sometimes collectively, "Third-Party Defendants"), and for other relief, and allege in support hereof, as follows:

## The Parties, Jurisdiction and Venue

1.      Ghahan is an Ohio limited liability company with its principal place of business in Columbus, Ohio.

2.      Ghahan's sole member is Steve Roumaya, who is an Ohio citizen.

3.      Suzanne Farese is a citizen of Florida.

4.      Barry Roderman is a citizen of Florida.

5.      David M. Goldstein is a citizen of Florida.

6.      Palm Steak House, LLC, f/k/a Palm Steak House Gentlemens Club, LLC ("PBGC") is a Florida Limited Liability Company. All of its members are: Palm Beach Gentlemen's Club Trust, Nolita Trust and Barry Roderman.

7.      Suzanne Farese and/or David M. Goldstein are trustees of Palm Beach Gentlemen's Club Trust, and Suzanne Farese is the sole beneficiary of said trust, and a citizen of Florida.

8.      David M. Goldstein is the trustee of Nolita Trust, a citizen of Florida, and all of the beneficiaries of said trust are not citizens of Ohio. The sole beneficiaries of Nolita Trust have

always been only Heidi Goldstein and Micheline Goldstein. Heidi Goldstein and Micheline Goldstein are David Goldstein's natural born children, and they have never lived in Ohio. From 2010 to present, Heidi Goldstein has been a citizen and domiciled in either New York or California. She has never been domiciled in Ohio. From 2010 to present, Micheline Goldstein has been domiciled and a citizen of either Virginia, New York or California. Micheline Goldstein has never been domiciled and a citizen of Ohio

9.      PBGC and all of its members are either citizens of Florida or states other than Ohio.

10.      Thomas Farese is a citizen of Florida and the husband of Suzanne Farese.

11.      As alleged below, the assets of PBGC that were sold were located and sold in Florida, and the distributions from said sale to Third-Party Defendants took place in Florida.

12.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as this matter involves a dispute between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

13.      This Court is an appropriate venue for this action pursuant to 28 U.S.C. § 1391, because the material events or omissions upon which the claims are based occurred in this judicial district, and PBGC and Third-Party Defendants' principal place of business and/or domiciles are located in the Southern District of Florida.

### Procedural Background

14.      On July 16, 2012, Ghahan initiated the above-styled action in this Court against PBGC, Susan Farese and Thomas Farese. (D.E. 1).

15.      From February 8 – 11, 2016, a jury trial was conducted in this case. Prior to the trial, the Court severed claims, and the only claims that went to trial were those as to PBGC.

16.     On February 24, 2016, this Court entered a Final Judgment on a jury verdict in favor of Ghahan and against PBGC, in the amount of $675,000.00, on Ghahan's breach of contract claim relating to a buyout agreement, and further ordered that Ghahan shall receive pre and post judgment interest on this amount from the date of November 29, 2011. (the "Judgment") (D.E. 444).

17.     Ghahan obtained a Writ of Execution in an effort to collect on the Judgment (the "Writ of Execution").

18.     The Writ of Execution remains unsatisfied and is valid and outstanding. PBGC appealed the Judgment, which was affirmed on appeal. (Mandate, DE 588).

19.     Pursuant to Fed. R. Civ, P. 69(a), the procedures for proceeding supplementary to and in aid of judgment obtained in a federal district court "shall be in accordance with the practice and procedure of the state in which the district is held." Accordingly, the Florida practices and procedure set forth in Section 56.29, Florida Statutes, apply.

20.     Pursuant to Section 56.29, a judgment creditor holding an unsatisfied writ of execution on a judgment is entitled to implead third parties to whom the judgment debtor may have made fraudulent transfers or who may be alter egos of the judgment debtor.

**<u>Fraudulent Transfer</u>**

21.     PBGC, as the judgment debtor, has acted to defraud, hinder, and delay Ghahan, the judgment creditor, by transferring all of its assets to its insiders, without formality or proper consideration.

22.     The insiders are Third-Party Defendants, who caused PBGC to make said transfers for their personal benefit.

23.     Palm Beach Gentlemen's Club Trust with Suzanne Farese and David

Goldstein as trustees received fraudulent transfers of the proceeds of the sale of the assets of PBGC, which PBGC had title to within one (1) year before service of process on the original suit, and further the transfers were made or contrived to delay, hinder or defraud Ghahan.

24.     As revealed by newly-discovered evidence, and as an alternative to Palm Beach Gentlemen's Club Trust with Suzanne Farese and David Goldstein as trustees receipt of proceeds, Suzane Farese, in her individual capacity, received fraudulent transfers of the proceeds of the sale of the assets of PBGC, which PBGC had title to within one (1) year before service of process on the original suit, and further the transfers were made or contrived to delay, hinder or defraud Ghahan.

25.     Nolita Trust with David M. Goldstein as trustee received fraudulent transfers of the proceeds of the sale of the assets of PBGC, which PBGC had title to within one (1) year before service of process on the original suit, and further the transfers were made or contrived to delay, hinder or defraud Ghahan.

26.      Barry Roderman received fraudulent transfers of the proceeds of the sale of the assets of PBGC, which PBGC had title to within one (1) year before service of process on the original suit, and further the transfers were made or contrived to delay, hinder or defraud Ghahan.

27.     Third-Party Defendants received fraudulent transfers of the proceeds of the sale of all of the assets of PBGC, which PBGC had title to within one (1) year before service of process on the original suit, and further the transfers were made or contrived to delay, hinder or defraud Ghahan.

28.     Ghahan, therefore, hereby impleads Third-Party Defendants Suzanne Farese and David Goldstein as Trustees of the Palm Beach Gentlemen's Club Trust and the Palm

Beach Gentlemen's Club Trust, David Goldstein as Trustee of the Nolita Trust and the Nolita Trust, Barry Roderman (hereinafter sometimes collectively referred to as "Members of Palm") and Suzane Farese, in proceedings supplementary for purposes of execution.

**What the Agreements and Tax Returns Show**

29.     On September 17, 2012, a contract was entered into between PBGC, the Members of PBGC and S & J Crazy Lizards Entertainment, LLC, for the sale of <u>all</u> of the assets of PBGC. (***See* attached Exhibit A**, Agreement of Sale and Purchase, identified at 2/10/16 trial, DE484, pg. 25, lns. 13-25, admitted over a relevancy objection at trial as Exhibit 16, Transcript, DE 484, pg. 28, lns 16-25, pg. 29, lns. 1-12, and marked trial exhibit 16, found at DE 583.)

30.     The total sale price was two million four hundred thousand dollars ($2,400,000.00)

31.     The sale closed on October 29, 2012. (***See* attached Exhibit B,** Closing Statement).

32.     As reflected in the tax return of PBGC, Palm Beach Gentlemen's Club Trust received $803,297 from the sale of the assets of PBGC. (***See* attached Exhibit C**, 2012 Tax Return for Palm, previously filed with the Court by PBGC, at DE 556-6).

33.     As reflected in the tax return of PBGC, Nolita Trust received $172,135 from the sale of the assets of PBGC. (*See* 2012 Tax Return of Palm).

34.     As reflected in the tax return of PBGC, Barry Roderman received $172,135 from the sale of the assets of PBGC. (*See* 2012 Tax Return of Palm).

35.     PBGC had no assets as a result of the sale. (***See* attached Exhibit D**, 2013 Tax Return of Palm, previously filed with the Court by Defendant Palm at DE 556-7).

**What the Escrow Ledger and Disbursement Checks Show**

36.     During the litigation that proceeded this Proceeding Supplementary, Ghanan was able to obtain documents referent to the sale out of which funds were fraudulently transferred.

37.     As is germane to the present matter, two (2) of those types of documents are the Agreement of Sale and Purchase and Tax Returns of the Defendant.  (*See* Agreement of Sale and Purchase, 2012 Tax Return for Palm and 2013 Tax Return for Palm).

38.     The Agreement of Sale and Purchase reflected that the PBGC and Third-Party Defendants were the parties and signatories to the Agreement of Sale and Purchase. (*See* Agreement of Sale and Purchase).

39.     Tax Returns of PBGC reflected that all of the assets of the PBGC were sold, and proceeds of the sale were distributed to Members of Palms as distributions. (*See* 2012 Tax Return for Palm and 2013 Tax Return for Palm).

40.     On March 8, 2021, in response to Ghahan's Requests for Production, Roderman produced, amongst other things, Checks and an Escrow Ledger from the sale of all of the assets of PBGC.  (***See* attached Exhibit E – Proof of Payment to Suzanne Farese).**

41.     The Escrow Ledger and Checks contained in the Proof of Payment to Suzanne Farese reflect that Suzanne Farese individually received proceeds from the sale of all of the assets PBGC's in the amounts of $87,500.00, $65,000.00, $870,322.06 and $124.50 for a total of $1,022,946.56. (*See* Proof of Payment to Suzanne Farese, pgs. 1, 2, 5, 13, 17 and 20**).**

42.     The Escrow Ledger and Checks contained in the Proof of Payment to Suzanne Farese reflect that Barry Roderman received proceeds from the sale of all of the assets PBGC's in the amounts of $18,750.00, $204,767.58 and $6,240.00 for a total of $ 229,757.58. (*See*

Proof of Payment to Suzanne Farese, pgs. 1, 2, 6, 18 and 35**).**

**Debt, Insolvency and Lack of Consideration**

43.     At the time of the above transfers, PBGC was indebted to Ghahan for its breach of contract claim relating to the payout agreement and the Complaint had been filed prior to the entry into the Agreement of Sale and Purchase, although the Final Judgment had not yet been entered.

44.     The Members of PBGC and Suzanne Farese knew or reasonably should have known of the breach of contract and liabilities arising therefrom.

45.     The Members of PBGC and Suzanne Farese signed the Asset and Purchase Agreement, and knew that all the assets of PBGC were sold. (*See* Asset and Purchase Agreement, Ex. A, pgs. 21 – 23.)

46.     PBGC received nothing in return from the Members of Palm or Suzanne Farese for the aforesaid transfers.

47.     The aforesaid transfers were made or contrived to delay, hinder or defraud Ghahan.

48.     Plaintiff has retained the undersigned counsel to represent his interests in this matter and is obligated to pay a reasonable fee for services.

## FIRST CAUSE OF ACTION

49.     Ghahan re-alleges and re-avers the foregoing paragraphs as though fully rewritten herein.

50.     The aforesaid transfers to the Members of Palm were fraudulent transfers to

insiders pursuant to Section 56.29(3)(a). Accordingly, PBGC and the Members of Palm have the burden of proof to establish that the transfer of said funds were not fraudulent transfers.

51.    Section 56.29(3) lists various factors to be considered in determining whether "actual intent" is present, including:

a.    In determining actual intent under paragraph (1)(a), consideration may be given, among other factors, to whether:

i.    The transfer or obligation was to an insider.

ii.    The debtor retained possession or control of the property transferred after the transfer.

iii.    The transfer or obligation was disclosed or concealed.

iv.    Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

v.    The transfer was of substantially all the debtor's assets.

vi.    The debtor absconded.

vii.    The debtor removed or concealed assets.

viii.    The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

ix.    The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

x.    The transfer occurred shortly before or shortly after a substantial debt was incurred.

xi.    The debtor transferred the essential assets of the business to a

lienor who transferred the assets to an insider of the debtor.

52.     The factors listed are satisfied in this instance, demonstrating the "actual intent," *interalia*: The Members of PBGC are insiders, PBGC had been sued by Ghahan at the time of the Transfer, the Transfer was for all of PBGC's assets, and PBGC became insolvent as a result of theTransfer.

53.     The aforesaid facts support a finding of fraudulent transfer pursuant to Section 726.105(1)(a), and are transfers for which proceedings supplementary may be initiated under Section 56.29, Florida Statutes.

54.     Section 56.29(6) gives judgment creditors detailed means by which to void fraudulent transfers from a judgment debtor to another party.

55.     Under 56.29(6), when a judgment debtor gifts, transfers, assigns, or somehow conveys personal property to another person in order to delay, hinder, or defraud the judgment creditor, a court shall void the transfer in a supplementary proceeding.

56.     And when the transfer is made by the judgment debtor to an insider -- like the judgment debtor's shareholders, spouses or relative -- within a year of being served with process, it is the judgment debtor's burden to establish a lack of intent to delay, hinder, or defraud the judgment creditor.

57.     Third-Party Defendants had an intent to delay, hinder, or defraud creditors, and a proceeding under that section involves an issue of substantive law that is independent of the underlying action.

58.     Ghahan sustained damages as a direct and proximate result of said fraudulent transfer.

WHEREFORE, Ghahan respectfully requests that the Court enter judgment against

PBGC and Members of Palm as follows:

    a)    issue Notices to Appear to Members of Palm Suzanne Farese and David Goldstein as Trustees of the Palm Beach Gentlemen's Club Trust and the Palm Beach Gentlemen's Club Trust, David Goldstein as Trustee of the Nolita Trust and the Nolita Trust and Barry Roderman pursuant to Section 56.29(2), Florida Statutes, requiring the Members of Palm to file affidavits, as provided in section 56.16, Florida Statutes, within seven (7) business days from the date of service of the Notice to Appear, stating why the property should not be applied to satisfy the judgment;

    b)    enter a judgment in Ghahan's favor and against PBGC and Members of Palm, jointly and severally: (i) avoiding and/or setting aside the fraudulent transfers; (ii) entering a money judgment against Members of Palm in favor of Ghahan, for the full amount they collectively received from said transfers and which is owed Ghahan; (iii) ordering Third-Party Defendants to pay over to Ghahan the full amount owed on its judgment; (iv) awarding Ghahan its reasonable attorneys' fees and court costs pursuant to Fla. Stat. §§ 56.29(11), Section 56.29 and 57.115; and (iv) awarding Ghahan such further relief deemed equitable and just under the circumstances.

### SECOND CAUSE OF ACTION PLED IN THE ALTERNATIVE AS BETWEEN SUZANNE FARESE AND DAVID GOLDSTEIN, AS TRUSTEES OF PALM BEACH GENTLEMEN'S CLUB TRUST, AND SUZANNE FARESE INDIVIDUALLY

59.    Ghahan re-alleges and re-avers the allegations contained in paragraphs one (1) through forty-eight (48) above as though fully re-written herein.

60.    The aforesaid transfers to David Goldstein as Trustee of the Nolita Trust and the Nolita Trust, Barry Roderman and Suzanne Farese were fraudulent transfers to an insider

pursuant to Section 56.29(3)(a). Accordingly, PBGC, David Goldstein as Trustee of the Nolita Trust and the Nolita Trust, Barry Roderman and Suzanne Farese have the burden of proof to establish that the transfer of said funds were not fraudulent transfers.

61.    Section 56.29(3) lists various factors to be considered in determining whether "actual intent" is present, including:

> b.    In determining actual intent under paragraph (1)(a), consideration may be given, among other factors, to whether:
>
> > i.    The transfer or obligation was to an insider.
> >
> > ii.    The debtor retained possession or control of the property transferred after the transfer.
> >
> > iii.    The transfer or obligation was disclosed or concealed.
> >
> > iv.    Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
> >
> > v.    The transfer was of substantially all the debtor's assets.
> >
> > vi.    The debtor absconded.
> >
> > vii.    The debtor removed or concealed assets.
> >
> > viii.    The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
> >
> > ix.    The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
> >
> > x.    The transfer occurred shortly before or shortly after a substantial debt was incurred.

xi.     The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

62.     The factors listed are satisfied in this instance, demonstrating the "actual intent," *interalia*: David Goldstein as Trustee of the Nolita Trust and the Nolita Trust, Barry Roderman and Suzanne Farese are insiders, PBGC had been sued by Ghahan at the time of the Transfer, the Transfer was for all of PBGC's assets, and PBGC became insolvent as a result of the Transfer.

63.     The aforesaid facts support a finding of fraudulent transfer pursuant to Section 726.105(1)(a), and are transfers for which proceedings supplementary may be initiated under Section 56.29, Florida Statutes.

64.     Section 56.29(6) gives judgment creditors detailed means by which to void fraudulent transfers from a judgment debtor to another party.

65.     Under 56.29(6), when a judgment debtor gifts, transfers, assigns, or somehow conveys personal property to another person in order to delay, hinder, or defraud the judgment creditor, a court shall void the transfer in a supplementary proceeding.

66.     And when the transfer is made by the judgment debtor to an insider -- like the judgment debtor's shareholders, spouse or relative -- within a year of being served with process, it is the judgment debtor's burden to establish a lack of intent to delay, hinder, or defraud the judgment creditor.

67.     David Goldstein as Trustee of the Nolita Trust and the Nolita Trust, Barry Roderman and Suzanne Farese had an intent to delay, hinder, or defraud creditors, and a proceeding under that section involves an issue of substantive law that is independent of the underlying action.

68.     Ghahan sustained damages as a direct and proximate result of said fraudulent transfer.

WHEREFORE, Ghahan respectfully requests that the Court enter judgment against PBGC and David Goldstein as Trustee of the Nolita Trust and the Nolita Trust, Barry Roderman and Suzanne Farese as follows:

a)      issue Notices to Appear to Third-Party Defendants David Goldstein as Trustee of the Nolita Trust and the Nolita Trust, Barry Roderman and Suzanne Farese pursuant to Section 56.29(2), Florida Statutes, requiring David Goldstein as Trustee of the Nolita Trust and the Nolita Trust, Barry Roderman and Suzanne Farese to file affidavits, as provided in section 56.16, Florida Statutes, within seven (7) business days from the date of service of the Notice to Appear, stating why the property should not be applied to satisfy the judgment;

b)      enter a judgment in Ghahan's favor and against the Defendant and Third-Party Defendants, David Goldstein as Trustee of the Nolita Trust and the Nolita Trust, Barry Roderman and Suzanne Farese, jointly and severally: (i) avoiding and/or setting aside the fraudulent transfers; (ii) entering a money judgment against David Goldstein as Trustee of the Nolita Trust and the Nolita Trust, Barry Roderman and Suzanne Farese in favor of Ghahan, for the full amount they collectively received from said transfers and which is owed Ghahan; (iii) ordering David Goldstein as Trustee of the Nolita Trust and the Nolita Trust, Barry Roderman and Suzanne Farese to pay over to Ghahan the full amount owed on its judgment; (iv) awarding Ghahan its reasonable attorneys' fees and court costs pursuant to Fla. Stat. §§ 56.29(11), Section 56.29 and 57.115; and (iv) awarding Ghahan such further relief deemed equitable and just under the circumstances.

Respectfully Submitted,


BY: */s/Gregory R. Elder*
Gregory R. Elder,  Esq.
Law Offices of Gregory R. Elder, LLC
2300 NW Corporate Blvd., Suite 215
Boca Raton, Florida 33341
(305) 546-1061
gelderlaw@gmail.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 7 t h day  of  June,  2021,  I  electronically  filed
the forgoingwith the Clerk of Court by using the CM/ECF system which I understand will serve
a copy on all counsel of record, listed below.

Suzanne Farese, 126 NE 4th Avenue, Delray Beach, Florida 33483; E-mail:
tf511@att.net and suzanne511@att.net

Barry Roderman, c/o Bart Houston E-mail: bhouston@thehoustonfirm.com


BY: */s/Gregory Elder*

# EXHIBIT A

# AGREEMENT OF SALE AND PURCHASE

THIS AGREEMENT is made this 17 day of September, 2012 ("Effective Date"), between THE PALM STEAK HOUSE, LLC, a Florida limited liability company (the "Seller"), PALM BEACH GENTLEMEN'S CLUB TRUST, NOLITA TRUST, and BARRY RODERMAN (the "Members") and S&J CRAZY LIZARDS ENTERTAINMENT, LLC, a Florida limited liability company (the "Purchaser").

## WITNESSETH:



WHEREAS, the Seller is engaged in the adult entertainment nightclub business, providing, among other things, entertainment and alcoholic beverage to the public from its location in West Palm Beach, Florida, with a street address of 1000 North Congress Avenue, West Palm Beach, Florida 33409 (the "Business").

WHEREAS, the Business is operated on the real property described on Exhibit B (the "Property"), which is owned by an affiliate of Seller and will be purchased by an affiliate of Purchaser pursuant to the Real Estate Purchase Agreement described herein.

WHEREAS, the Purchaser desires to purchase from the Seller, and the Seller desires to sell to the Purchaser, upon the terms and conditions set forth, herein, substantially all of the assets, tangible and intangible, of the Business and the Property.

NOW, THEREFORE, in consideration of the covenants and provisions contained herein, the parties hereto, intending to be legally bound hereby, agree as follows:

1. **Agreement to Sell and Purchase**: Seller agrees to sell to Purchaser, and Purchaser agrees to purchase from Seller, subject to the terms and conditions of this Agreement, substantially all of the assets of the Business known as "Diamonds" located at 1000 N. Congress Ave., West Palm Beach, Palm Beach County, Florida, including, without limitation, except as noted herein on Exhibit D, the following:

   (a) All removable infrastructural improvements located on or at the Property (the "Premises") and currently owned by Seller; provided however, all leasehold improvements which are not removable and are part of the Property shall be conveyed under the Real Estate Purchase Agreement (as hereinafter defined).

   (b) All equipment, furnishings and fixtures located in or on or used in connection with the Business and owned by Seller as described on Exhibit A (together with the property described in this Section 1 and all other property used in the Business, sometimes hereinafter collectively, the ("Assets"), as well as the Property, which Property shall be purchased pursuant to the real estate purchase agreement, attached hereto as Exhibit B (the "Real Estate Purchase Agreement").

L502.001/00138383 v6

1

EXHIBIT
16

(c)     all of Seller's inventory of food, alcoholic and non-alcoholic beverages, and other supplies used in connection with the serving of food and beverage at the Business (the "Inventory");

(d)     all of Seller's right, title and interest in Tenant leases, contracts and agreements set forth on <u>Exhibit C</u>, to be assumed by Purchaser (the "Assumed Contracts");

(e)     all licenses, registrations or permits issued, granted, given or otherwise made available by or under the authority of any governmental authority to Seller, to the extent assignable, including Sellers 4-COP Liquor License # 60 11 407 (the "Liquor License"). The Seller will execute and cooperate and do any acts reasonably necessary required of it including the execution of all other documents reasonably necessary to be executed by the Seller for the completion of the transfer of the Liquor License to the Purchaser, and agrees to cooperate in the process as reasonably necessary;

CONFIDENTIAL

(f)     Seller's rights under that certain lawsuit described on <u>Exhibit F</u> (the "Cheetah lawsuit");

(g)     All rights of Seller relating to deposits and prepaid expenses, claims for refunds and rights to offset in respect thereof relating to the Assets. However, Seller will be reimbursed by Purchaser for all Seller's deposits of any kind or type held by third parties, prepaid expenses prorated for the period prior to the Closing, and claims for refunds relating to any of the Assets.

(h)     All phone numbers, facsimile numbers, client and customer lists and all intellectual property of the Business, and all goodwill associated with the Business.

(i)     It is specifically understood and agreed to by the parties hereto, that notwithstanding the provision of Section 1 of this Agreement, the transferred Assets shall not include those listed on <u>Exhibit D</u> (the "Excluded Assets").

2.     <u>Non-Assumption of Liabilities</u>: With the exception of the Assumed Contracts, Purchaser shall not by the execution and consummation of this Agreement, or otherwise, assume or otherwise be responsible for any liability or obligation of any nature of Seller, or claims of such liability or obligation, matured or unmatured, liquidated or unliquidated, fixed or contingent, or known or unknown, including, without limitation:

(a)     any liability or obligation under any lease, contract or other instrument or agreement of Seller;

(b)     any injury (physical or otherwise) to or death of any person or damage to or destruction of any property, whether based on negligence, invasion of privacy, breach of warranty, product liability, strict liability or any other theory, and including but not limited to any such injury, death, damage, or destruction relating to or caused by products sold by Seller or services rendered by Seller to a third party;

(c)    any violation by Seller of the requirements of any governmental authority or of the rights of any third person, including, without limitation, requirements relating to the reporting or payment (or both) of federal, state, local or foreign income, personal property, withholding, sales and use, gross receipts, or other taxes;

(d)    any claim, liability or obligation of Seller relating to any collective bargaining agreements or other contracts, agreements, or other obligations to which Seller is a party or by which Seller is bound; for the employment of any officer, individual, employee or group of employees; for the processing and payment of any worker's compensation claims with respect to any injury or condition incurred by any employee of Seller; for the payment of any wages, bonuses, commissions, vacation pay, or severance pay; for the furnishing of any benefits, including but not limited to group health insurance benefits, profit sharing benefits, pension or other employee benefits (including but not limited to any liability for unfunded or under-funded pension liability); or any obligations under the Consolidated Omnibus Budget Reconciliation Act of 1988 ("COBRA"); or any employment policy of Seller relating to payment upon dismissal or termination of employment, including without limitation, with respect to any employee of Seller not hired by Purchaser after Closing;

(e)    any liability or penalty of Seller resulting from a violation of, or noncompliance or non-conformance with, any law, judgment, order, decree, regulation or rule of any court or governmental authority, including, without limitation, the provisions of all anti-pollution and environmental protection laws, including but not limited to any liability with respect to contamination and third party liability, all employment discrimination or other employment or labor related laws, all safety and health laws, and all rules and regulations promulgated under such laws, and whether any claim related to any such violation or non-compliance or non-conformance is filed before or after the time of Closing, other than any related to the zoning violation for hat-racking violation, which landscape violation will become an obligation of Purchaser;

*CONFIDENTIAL*

*Buyer to pay for new trees if necessary; Seller pays fines*

(f)    any claim, liability, or obligation of Seller related to any products or services rendered by Seller, whether such claim is based on breach of contract, breach of warranty, negligence, strict liability, products liability, or otherwise;

(g)    any other liability or obligation of Seller.

3.    **Purchase Price and Related Matters:**

(a)    The purchase price (the "Purchase Price") for the Assets is TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00) payable as follows:    *2,400,000.00*

(i)    Two Hundred Twenty Five Thousand Dollars ($225,000.00) upon execution of this Agreement, to be held by Seller's attorney, Barry Roderman, Esquire ("Escrow Agent"). Seller and Escrow Agent acknowledge receipt of such

funds, which funds shall be placed in Escrow Agent's Trust account, as the deposit under this Agreement and the Real Estate Agreement (the "Deposit");

(ii) The balance of the purchase price of Two Million One Hundred Seventy Five Thousand Dollars ($2,175,000.00) will be due and payable at Closing by way of cashier's check or by wire to transfer as directed by Seller at Closing.

Unless Escrow Agent is guilty of willful misconduct with regard thereto, the parties agree to indemnify Escrow Agent and hold it harmless from any and all claims, liabilities, losses, actions, suits, judgments, damages, or proceedings at law or equity or any other expense, fee or charge of any character, kind or nature, including reasonable attorneys' fees, which it may incur by reason of its acting as Escrow Agent hereunder. The parties agree that Escrow Agent may, in the event any dispute shall arise between the parties with respect to the disposition or disbursement of the Escrow Funds, interplead all of such funds in the appropriate court of Palm Beach County, Florida and thereafter Escrow Agent will be fully relieved from any and all liability or obligation with respect to such interpleaded funds.

(b) Purchaser shall be responsible for any and all transfer fees related to transfer of the Liquor License, including but not limited to charges by the Division of Alcoholic Beverages and Tobacco (the "DABT").

(c) The Purchase Price shall be allocated in accordance with Exhibit E. After the Closing, the parties shall make consistent use of the allocation, fair market value and useful lives specified in Exhibit E for all Tax purposes and in all filings, declarations and reports with the IRS in respect thereof, including the reports required to be filed under Section 1060 of the Code. Purchaser shall prepare and deliver IRS Form 8594 to Seller within forty-five (45) days after the Closing Date to be filed with the IRS. In any proceeding related to the determination of any Tax, neither Purchaser nor Seller or Members shall contend or represent that such allocation is not a correct allocation.

(d) The parties have agreed that the purchase price for the Property, as set forth in the Real Estate Purchase Agreement, shall be Two Million Three Hundred Thousand and 00/100 Dollars ($2,300,000.00). 2,400,000.00

(e) Purchaser shall pay separately to Seller, that is, in addition to the above stated purchase price, for all closed (unopened from original seal) bottles of liquor, liquors of any kind, brand or type at Seller's retail cost. All liquor which has been opened or have the seals broken and all beer will be retained by the Seller and removed from the premises within 7 days after the closing.

4. **The Closing**: The Closing (the "Closing") shall take place at the Business, or at another location mutually acceptable to Seller and Purchaser, on or before October 15, 2012, provided all conditions precedent to Closing as set forth in Section 8 have been satisfied (the "Closing Date").

CONFIDENTIAL

4

5. **Seller's and Members' Representation and Warranties**: To induce Purchaser to enter into this Agreement, the Members and Seller, jointly and severally, represent, covenant, warrant and agree now and as of the Closing that:

(a) Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Florida, is qualified to do business and in good standing under the laws of the State of Florida with full, complete and unrestricted power and authority to enter into this Agreement and, subject to the satisfaction of the conditions set forth herein, to sell, assign, transfer, convey, and deliver the Assets and Business as contemplated by this Agreement.

(b) All federal, state and local payroll, excise, sales, use, solid waste, income and other taxes (including interest and penalties, if any thereon) imposed by any governmental authority that are payable by Seller have or will be paid as and when due. Any and all deposits with any third party and pursuant to any Assumed Contract that are assigned to and accepted by Purchase, and including all utility deposits of any type or kind, will be refunded by Purchaser to Seller at Closing if such deposits are not directly remitted to Seller by such third party upon assignment of the agreements.

(c) Seller has, and Purchaser will acquire hereunder, good and marketable title to all of the Assets which this Agreement contemplates being conveyed and transferred to Purchaser, free and clear of liens, pledges, charges, restrictions, encumbrances, or claim of creditors of any nature whatsoever, except as set forth in Exhibit C-1 attached hereto, all of which shall be satisfied, or released, at or prior to Closing.

(d) True, correct and complete copies of the Assumed Contracts listed in Exhibit C, have been delivered to Purchaser, are in full force and effect as of the date of this Agreement and will be in full force and effect and in accordance with the terms thereof on the Closing Date. Seller has fulfilled at all times prior hereto, and hereafter shall fulfill its obligations and make all payments accrued or due on the Assumed Contracts up to the Closing Date and is not, and on the Closing Date shall not be, in default in any material respect with respect to any Assumed Contract, nor shall any state of facts exist that would constitute a default under any Assumed Contract.

(e) The transfer of the Assets and the assignment of the Assumed Contracts as contemplated in this Agreement shall have been duly authorized and approved by Seller and Seller's Members and/or Managers, who shall have taken all necessary action to authorize the execution and delivery of this Agreement.

(f) The execution and delivery of this Agreement on the part of Seller shall not, at the Closing Date, conflict with or result in a breach of any of the terms, conditions, or provisions of Seller's Articles of Organization or Operating Agreement, or any material agreement or instrument to which Seller is a party, or by which it is or may be bound, or constitute a default hereunder, or result in the creation or imposition of any lien, charge, or encumbrances of any nature whatsoever upon, or give to others any

CONFIDENTIAL

interest or rights, including rights of termination or cancellation, in, or with respect to, any of the Assets, Assumed Contracts, or the business.

(g) All of the Assets to be transferred "as is" to Purchaser as contemplated herein shall be physically present at the Business on the Closing Date, shall be transferred in "as is" condition as of the Closing Date, and shall be conveyed to Purchaser in accordance with the terms hereof upon the Closing. Seller shall maintain and repair all of the Assets between the execution of this Agreement and the Closing, consistent with Seller's past practices.

(h) The Business will have been conducted from the date hereof to the Closing Date in the usual and ordinary course of its business, and in compliance with all applicable federal, state and local laws, rules, regulations, ordinances and orders.

(i) As to the Property, now and as of the Closing:

(i) all necessary surface water, drainage, sewer waste water lift station and other utility services necessary for the operation of the Business as required by applicable code, are available to the Property through facilities located in public rights-of-way or valid and existing private easements of perpetual duration which have priority over all existing mortgages or security instruments (copies of which are attached hereto as Exhibit C-1);

(ii) Seller is and has been in compliance with all applicable laws relating to building, zoning or land use requirements with respect to the Property and Seller has not received any notice alleging such a violation; Purchaser understands that the use for adult entertainment has been grandfathered.

(iii) to the best of Seller's knowledge, the Property has never been used for the disposal, storage or treatment of any waste, garbage, industrial by-product, chemical or hazardous substance of any nature (including a Hazardous Substance), except for such use as may have occurred in the ordinary course of business and in strict compliance with all applicable laws;

(iv) the Property contains no septic tanks or "underground storage tanks" (as defined in 40 C.F.R. § 280.12), other than an underground grease trap located in the kitchen area;

(v) the Property does not constitute, and is not contiguous to, "waters of the United States" or "wetlands" (as defined in 33 C.F.R. § 328.3);

(vi) the Property is not subject to any unpaid tax assessment or other monetary obligation of Seller which is due and owing; and

(vii) Seller has not received notice of and has no actual knowledge of (i) any pending or contemplated condemnation, eminent domain or rezoning

CONFIDENTIAL

proceeding affecting the Property, (ii) any proposal or other consideration for increasing the assessed value of the Property for state, county, local or other ad valorem or similar taxes by an amount that would materially affect the profitability of the Business, or (iii) any pending or contemplated proceedings or public improvements which could or might result in the levy of any special tax or assessment against the Property.

(j)     Seller is and has been in compliance with all Environmental Laws and any recordkeeping, notification and reporting requirements in respect of the Business and the Property, (ii) there has been no "release" (as such term is defined in 42 U.S.C. § 9601(22)) or generation of any Hazardous Substance from under or upon the Real Property (except for Hazardous Substances generated in the ordinary course of the Business, which have been used, stored and disposed of in strict accordance with all Environmental Laws) or any neighboring properties by Seller, or, to the knowledge of Seller, by any predecessor in interest or prior occupant or user, (iii) there are no Hazardous Substances or asbestos materials located on, in or about any portion of the Property, nor have any Hazardous Substances or asbestos materials been used, stored or disposed of on, in or about any portion of the Property, except for wastes or materials used in the ordinary course of the Business, which have been used, stored and disposed of in strict accordance with all Environmental Laws, and (iv) Seller has not received any notice of any such violation, non-compliance or release or alleging any liability under any such Environmental Law or of any investigation with respect to such non-compliance, release or alleged liability. All gasoline, oil and other petroleum products stored, treated, used or disposed of on, in or about any portion of the Property at any time during Seller's occupation of the Property and, at any time prior thereto, have been stored, treated, used and/or disposed of in full and strict compliance with all applicable federal, state and local laws, including without limitation, all Environmental Laws. All above-ground and underground gasoline, oil or petroleum product storage tanks on the Property, if any, have been properly registered. "Environmental Laws" shall mean all applicable laws pertaining to the regulation, control or clean-up of pollution and environmental contamination, including those relating to the generation, use, collection, treatment storage, transportation, recovery, removal, discharge or disposal of Hazardous Substances. "Hazardous Substances" shall mean:

(i)     any toxic or hazardous wastes, materials, pollutants or substances, including petroleum products and by-products, flammable explosives, radioactive materials, asbestos, polychlorinated byphenyls, pesticides, herbicides, pesticide or herbicide containers, untreated sewage, industrial process sludge;

(ii)    any substances defined as "hazardous substances" or "toxic substances" or similarly identified in or pursuant to CERCLA;

(iii)   "hazardous materials" as identified in or pursuant to the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 et seq., as amended;

CONFIDENTIAL

(iv)     any chemical substance or mixture regulated under the Toxic Substance Control Act of 1976, 15 U.S.C. § 2601 et seq., as amended;

(v)     any "toxic pollutant" under the Clean Water Act, 33 U.S.C. § 466 et seq., as amended, any hazardous air pollutant under the Clean Air Act, 42 U.S.C. § 7401 et seq., as amended; or

(vi)     any toxic or hazardous wastes, materials, pollutants or substances regulated under any other Applicable Law including any so-called "Super Fund" or "Super Lien" legislation, now existing, pertaining to hazardous materials, pollutants or wastes.

(k)     From the date hereof to the Closing Date, Seller will not incur or agree to incur any material liability or obligation (absolute or contingent) except current liabilities incurred and obligations under contracts entered into in the normal and ordinary course of its business.

(l)     Seller will terminate the employment of all those of its employees which Purchaser agrees to employ as of, but no sooner than, the Closing Date. Pending such termination, Seller will not pay, grant or agree to grant any general increase in the rates of pay of any of its hourly-paid employees, pay any bonuses to or increase in salaries of its other employees unless already a part of such employees' pay plans, or are approved in writing by Purchaser; provided, however, that Seller may make non-recurrent payments to some of its employees by reason of Seller terminating its relationship with said employees.

(m)     From the date hereof to the Closing Date, Seller will not waive any material rights or claims relating to the Business or the Assets without the prior written consent of the Purchaser.

(n)     Seller owns or has the right to use the intellectual property assets, all computer programs and all other confidential business information or technical information used in connection with the Business ("Business Information"), free and clear of all liens or rights of any other parties to the use of such Business Information, Seller has not received notice of any claim of infringement or conflict with respect to, any patents, trademarks, service marks, domain names, trade names, copyrights, computer programs or other intellectual property rights of others.

(o)     Seller is not a defendant, or a plaintiff against whom a counterclaim has been asserted, in any litigation pending, except as disclosed on Exhibit F.

(p)     There are no material proceedings affecting Seller pending, or threatened, before any federal, state or municipal body, which would affect title to the Assets or which would materially and adversely affect, or could reasonably be expected to materially and adversely affect, the operation of the Business or the Assets in any material respect. Seller has no oral or written collective bargaining agreements, welfare

CONFIDENTIAL

or health benefit plans, or retirement plan or arrangement. Seller has paid and satisfied all bona fide obligations or liabilities of Seller regarding the aforesaid agreements. Seller is not a party to any organized labor contract. Seller is not delinquent in payments to any of its employees for any wages, salaries, commissions, bonuses or other direct compensation for any services performed by them or amounts requiring reimbursements to such employees. Seller has paid and satisfied all bona fide obligations or liabilities of Seller for accrued payroll, vacation and other benefits with respect to all of Seller's employees working at or for the Business prior to the Closing. Seller has no employee medical and benefit plan as set forth in the Internal Revenue Code and ERISA and is not required to give any COBRA notices. Seller is not required to give and notice under the WARN Act.

(q)     No current supplier to the Seller has threatened to terminate its business relationship with the Seller for any reason;

(r)     Seller is not now insolvent and will not be rendered insolvent by reason of the transaction contemplated by this Agreement and has been and until Closing shall pay, all of its liabilities and obligations, as and when due.

(s)     Seller holds 4-COP State of Florida alcoholic beverage license No 60 11407 The alcoholic beverage licenses will be in good standing and transferable to the Purchaser upon the Purchaser's qualification in accordance with applicable rules and regulations.

(t)     Neither this Agreement nor any documents to be provided by Seller to Purchaser in connection herewith contains or will contain any untrue statement of a material fact, or omits or will omit to state a material fact necessary to make the statements so made not misleading. Seller has not failed to disclose a material fact necessary to make such information not misleading.

CONFIDENTIAL

6.     **Purchaser's Representations and Warranties:**

Purchaser represents and warrants to the Seller as follows:

(a)     It has the financial ability to purchase the Business.

(b)     Its member has no criminal convictions that would prevent it from purchasing the Business.

(c)     It will obtain and complete necessary DABT transfer forms for execution by Seller at or prior to Closing.

7.     **Due Diligence Period.** The obligations of Purchaser under this Agreement to purchase the Assets and Property are, unless otherwise indicated, subject to the satisfaction of the following condition:

(a)     Purchaser shall have not more than ten (10) days from the execution of this Agreement to conduct its due diligence of the Business, the Assets and the Property



access to the Business and all records of the Business, excluding financials, and the Property as requested by Purchaser to perform any and all inspections Seller deems necessary. During the Due Diligence Period, Seller shall deliver to Purchaser, at Seller's expense, a UCC Search Report.

8.  <u>Conditions Precedent to Closing</u>:

(a)  <u>Conditions Precedent to Purchaser's Obligation to Close</u>. Purchaser's obligation to purchase the Assets and to take the other actions required to be taken by Purchaser at the Closing is subject to the satisfaction, at or prior to the Closing, of each of the following conditions (any of which may be waived by Purchaser, in whole or in part):

(i)  All of Seller's and the Member's representations and warranties in this Agreement (considered collectively), and each of these representations and warranties (considered individually), shall have been accurate in all material respects as of the date of this Agreement, and shall be accurate in all material respects as of the time of the Closing as if then made.

(ii)  All of the covenants and obligations that Seller and Members are required to perform or to comply with pursuant to this Agreement at, or prior to the Closing, (considered collectively), and each of these covenants and obligations (considered individually), shall have been duly performed and complied with in all material respects.

(iii)  The closing of the Real Estate Purchase Agreement and the transfer of the Property shall have occurred simultaneously with the Closing, of this Agreement.

(b)  <u>Conditions Precedent to Seller's Obligation to Close</u>. Seller's obligation to sell the Assets and to take the other actions required to be taken by Seller at the Closing is subject to the satisfaction, at or prior to the Closing, of each of the following conditions (any of which may be waived by Seller in whole or in part):

(i)  All of Purchaser's representations and warranties in this Agreement (considered collectively), and each of these representations and warranties (considered individually), shall have been accurate in all material respects as of the date of this Agreement and shall be accurate in all material respects as of the time of the Closing as if then made.

L502.001/00138383 v6

10



(the "Due Diligence Period"). If Purchaser is not ~~satisfied for any reason~~, in Purchaser's sole discretion, with the result of its investigation, upon written notice to Seller within the Due Diligence Period, it may terminate this Agreement and the Deposit shall be returned to the Purchaser. if such notice is not received within the Due Diligence period, P~~~~ shall be bound by the terms of this Agreement and the Deposit (and any additional ~~~~ deposit delivered by Purchaser to the E~~~~

*If Seller breaks to obligations which is*

[!]  CONFIDENTIAL

(ii)    All of the covenants and obligations that Purchaser is required to perform or to comply with pursuant to this Agreement at or prior to the Closing (considered collectively), and each of these covenants and obligations (considered individually), shall have been performed and complied with in all material respects.

(iii)    The closing of the Real Estate Purchase Agreement and the transfer of the Property shall have occurred simultaneously with the Closing of this Agreement.

(c)    Termination of Leases. Seller shall have received the agreement and acknowledgment of its Landlord, Congress Plaza, LLC that its lease is null and void. Seller and the Master Lessor, Thomas Farese, shall agree and acknowledge that the lease granted from Congress Plaza, LLC to Thomas Farese is lease is no longer in effect and null and void. All recorded leases, or short form leases which are recorded, shall be terminated and extinguished of record prior so that Purchaser shall acquire unencumbered fee simple title to the Property.

9.    **Closing Deliveries**:

(a)    **Deliveries By Seller**: The Seller shall deliver or cause to be delivered the following to the Purchaser at the Closing:

(i)    such bills of sale, endorsements, assignments and other good and sufficient instruments of conveyance (collectively, the "Bill of Sale") as will effectively convey to the Purchaser good and marketable title to and interest in the Assets, duly executed by the Seller, together with releases, or termination statements, of all liens or encumbrances on the Assets;

(ii)    Seller shall execute such documents, as are necessary and required to transfer the Liquor License to Purchaser; such documents shall be obtained and completed by the Purchaser for the Seller's signature as it is at all times the Purchaser's responsibility to complete the DABT applications for transfer and to become an approved responsible person under the DABT rules;

(iii)    certificates dated as of the Closing and executed by an officer of the Seller:

a.    stating that the representations and warranties of Seller in this Agreement are true and correct in all material respects on and as of the Closing with the same effect as though such representations and warranties had been made on and as of such date, and that the covenants and agreements to be performed or complied with by the Seller, prior to the Closing have been performed and complied with in all material respects; and

11

b.       certifying the Seller's corporate actions represented and warranted pursuant to this Agreement, and certifying that such actions are still in full force and effect;

(iv)    a certificate dated as of the Closing and executed by the Members stating that representations and warranties of the Members in this Agreement are true and correct in all material respects on and as of the Closing, with the same effect as though such representations and warranties had been made on and as of such date;

(v)     evidence of the recordation of UCC-3 termination statements, if there are any UCC recordings or filings on or in connection with the Assets, and all other releases for all liens, security interests and/or encumbrances on the Assets so that Purchaser receives the Assets free and clear of all liens and encumbrances;

(vi)    evidence satisfactory to Purchaser of termination of Seller's employees that Purchaser elects to hire after date of Closing; on the day following the date of Closing, Seller shall give notice to the employees of the transfer of the business to Purchaser; Seller shall advise the employees that their employment is terminated unless re-hired by the Purchaser.

(vii)   a certificate of good standing with respect to the Seller from the Secretary of State of Florida, dated as of a recent date prior to the Closing Date

(viii)  A certificate of compliance from the Florida Department of Revenue that all required sales tax returns have been filed and all taxes reflected as due on such returns has been paid;

(ix)    such other documents or instruments as may be required pursuant to this Agreement or as may be reasonably requested by the Purchaser in connection with the consummation of the transaction; and

(x)     consent to the assignment of any of the Assumed Contracts where required and estoppel certificates, including from all Tenants leasing any portion of the Property which leases are being assumed by Purchaser.

(b)     **Deliveries By Purchaser**:  The Purchaser shall deliver or cause to be delivered the following to the Seller at the Closing:

(i)     payment to the Seller by wire transfer in immediately available funds of an amount equal to the sum of the Purchase Price, minus the Deposit, plus or minus any adjustments for pro rations and other payments and withholdings to be paid or otherwise borne by the Seller or the Purchaser pursuant to this Agreement; except that the Purchaser shall pay directly to secured creditors of the Seller, as approved by the Seller,  the amount required to release any liens or encumbrances on the Assets being sold to Purchaser and any such amount paid shall be credited against the Purchase Price;

CONFIDENTIAL

L502.001/00138383 v8

12

(ii)    an Assignment and Assumption of the Assumed Contracts to be assumed by Purchaser under Section 1(d) and estoppel certificates from the parties to the Assumed Contract that the Assumed Contract is in full force and effect and no default exists thereunder;

(iii)    authorization to the Escrow Agent to disburse the Deposit to the Seller by wire transfer in immediately available funds or by certified check;

(iv)    certificates dated as of the Closing and executed by an officer **CONFIDENTIAL** the Purchaser:

    a.    stating that the representations and warranties of Purchaser in this Agreement are true and correct in all material respects on and as of the Closing with the same effect as though such representations and warranties had been made on and as of such date, and that the covenants and agreements to be performed or complied with by the Purchaser, prior to the Closing have been performed and complied with in all material respects; and

    b.    certifying the Purchaser's corporate actions represented and warranted pursuant to this Agreement, and certifying that such actions are still in full force and effect; and

(v)    such other documents or instruments as may be required pursuant to this Agreement or as may be reasonably requested by the Seller in connection with the consummation of the transaction.

10.    **Pro-Rations**. The parties shall apportion, as of the Closing Date, the following:

(a)    Payments due or made under the Assumed Contracts;

(b)    All public utilities (including sewer and water) (and including the lift station maintenance) servicing the real property. (Water and sewer charges shall be adjusted on the basis of the calendar year, but if there are water meters, Seller, to the extent obtainable, shall furnish a reading effective as of the Closing Date, or if not feasible or so read, to a date not more than twenty (20) days prior to the Closing Date, and the meter charges based thereon for the intervening period shall be apportioned on the basis of such last reading); and

(c)    All other items customarily apportionable between sellers and purchasers of any similar businesses, including, without limitation, any proratable licenses and permits, payments under the Assumed Contracts, including but not limited to, the liquor license, described in Sections 4(b) above.

All prorations and apportionments between Seller and Purchaser pursuant to this Section shall be effective as of 12:01 a.m. (Eastern Time) on the date of Closing.

**11.** <u>Risk of Loss</u>: The Seller assumes all risk of loss due to fire or other casualty up to the time of Closing. In the event any such loss occurs prior to the date of Closing, or in the event the Business of the Seller is closed or interrupted by reason of any event not in the ordinary course of business, then the Purchaser shall have the right to terminate this Agreement, on written notice to the Seller, and upon such termination there shall be no further liability on the part of the Seller or the Purchaser hereunder, and the Deposit shall be returned forthwith to the Purchaser. If Purchaser does not terminate this Agreement, the proceeds of any insurance necessary to restore the Business and the Premises shall be paid or assigned to Purchaser at Closing and Seller shall pay any deductible amount. All unpaid claims and rights in connection with losses shall be assigned to Purchaser at Closing without in any manner affecting the Purchase Price.

**12.** <u>Eminent Domain</u>: In the event Seller receives any notice of condemnation proceedings, or other proceedings in the nature of eminent domain between the Effective Date and the Closing, Seller will forthwith send a copy of such notice to Purchaser. If any portion of the Business Premises has been or is hereafter taken by condemnation or eminent domain or if any such proceeding in relation to the Business Premises has been or is hereafter commenced or if notice of the contemplated commencement therefore has been or is hereafter given, Seller shall promptly give written notice thereof to Purchaser and Purchaser shall have the right, at its sole option, of terminating this Agreement, by giving Seller written notice of its intent to terminate within a reasonable time of Purchase receipt of the aforesaid notice from Seller and, in such event, the Deposit shall be returned to Purchaser and neither party shall have any further liability or obligation hereunder, provided that any such notice of eminent domain given hereunder shall constitute an extension of the time for Closing so as to allow for the parties to comply with procedures set forth in this Section.

**13.** <u>Indemnification</u>:

(a) <u>Survival of Representations and Warranties</u>. All representations, warranties, covenants and agreements made by any party to this Agreement, whether made in this Agreement or any exhibit, schedule, agreement, certificate, instrument or other document delivered pursuant to this Agreement, shall be made at and as of the date of this Agreement and at and as of the Closing Date. The representations, warranties, covenants and agreements made by the parties in this Agreement and in any agreement, certificate, instrument or other document delivered pursuant to this Agreement shall survive the Closing and shall survive until the Claim is finally determined. No investigation made by, nor any disclosure made after the date of this Agreement by the Purchaser, on the one hand, or by the Seller, on the other hand, shall affect the enforceability of, or the remedies available under this Agreement with respect to, any such representations, warranties, covenants, agreements or undertakings or their survival.

(b) <u>Indemnification by Seller and the Members</u>. Seller and the Members, jointly and severally, agree to indemnify Purchaser, its affiliates and the directors, officers, Members, employees, agents, successors and assigns of Purchaser and each of its affiliates against, and hold each and every one of the foregoing harmless from, any and all damages, losses, claims, actions, causes of action, liabilities, obligations,

14

demands, charges, suits, penalties, fines, costs or expenses, whether accrued, absolute, contingent, known or unknown, foreseeable or unforeseeable, or otherwise, including but not limited to court costs, reasonable attorneys' fees, reasonable paralegals' fees, deposition charges, reasonable investigation fees, reasonable expert witness fees, reasonable appraiser fees and expenses of environmental remediation (hereinafter collectively referred to as the "Losses"), which any of the foregoing may incur or to which any of the foregoing may be subjected, arising out of, incurred in connection with, related to, or otherwise caused by, directly or indirectly, any of the following: (a) any liabilities, claims, controversies, legal actions and proceedings in connection with, arising from or accruing on Seller's ownership, use or possession of the Assets or the operation of the Business prior to the Closing Date (other than claims arising out of the nonperformance by Purchaser of the Assumed Contracts); (b) any income, sales and use, payroll, or other tax liabilities of Seller and the failure to comply with Florida State Section 213.758 (including assessments, additions to taxes, deficiencies, penalties interest and the costs and expenses relating to examinations or audits of Seller's taxes) accruing prior to the Closing Date; (c) any liabilities set forth in Section 1.10 hereinabove accruing prior to the Closing Date; or (d) any tax, fee, cost or expense that Seller has agreed to pay or otherwise bear pursuant to this Agreement; or (e) without limiting or being in any manner limited by the foregoing, as the result of any breach of warranty, representation, covenant or agreement, or from any misrepresentation in or material omission, on the part of Seller or the Members.

CONFIDENTIAL

(c)    Indemnification by Purchaser.  Purchaser agrees to indemnify Seller and Members, their affiliates and the directors, officers, Members, employees, agents, successors and assigns and each of their affiliates against, and hold each and every one of the foregoing harmless from, any and all damages, losses, claims, actions, causes of action, liabilities, obligations, demands, charges, suits, penalties, fines, costs or expenses, whether accrued, absolute, contingent, known or unknown, foreseeable or unforeseeable, or otherwise, including but not limited to court costs, reasonable attorneys' fees, reasonable paralegals' fees, deposition charges, reasonable investigation fees, reasonable expert witness fees, reasonable appraiser fees and expenses of environmental remediation (hereinafter collectively referred to as the "Losses"), which any of the foregoing may incur or to which any of the foregoing may be subjected, arising out of, incurred in connection with, related to, or otherwise caused by, directly or indirectly, any of the following: (a) any liabilities, claims, controversies, legal actions and proceedings brought by or on behalf of any creditor of Purchaser or any other third party, which arise in connection with Purchaser's ownership, use or possession of the Assets or the operation of the Business after the Closing Date, including any liabilities under the Assumed Contracts (other than claims arising out of the nonperformance by Seller of the Assumed Contracts); (b) any tax, fee, cost or expense that Purchaser has agreed to pay or otherwise bear pursuant to this Agreement; or (c) without limiting or being in any manner limited by the foregoing, as the result of any breach of warranty, representation, covenant or agreement, or from any misrepresentation in or material omission, on the part of Purchaser.

(d)    Claims Subject to Indemnification.  Each party shall promptly notify the other of any claim for which indemnification may be sought under this Agreement, shall give the indemnifying party the opportunity to defend the claim with counsel of its choice, subject to the reasonable approval of the party against whom the claim is being brought, at its sole cost and expense, and shall not settle or compromise such claim without the prior written consent of the prospective indemnitor, which shall not be unreasonably withheld or delayed.  Notwithstanding the foregoing, in the event the subject matter underlying such claim is reasonably determined by the indemnitee to be or potentially be precedent setting, or may adversely affect the indemnitee's future operations, indemnitee may, in its sole judgment, withhold its consent to indemnitor defending the claim with its own counsel, or settling the claim, and upon written notice to indemnitor, indemnitee shall proceed with its defense of the claim.  Indemnitor's liability when indemnitee is defending the claim shall not exceed that which indemnitor would have incurred had indemnitor provided the claim defense.

14.    Sales Tax Notification Waived; Indemnification:  The parties hereto agree to waive compliance with any notification requirements of any applicable laws relating to bulk sales or transfers in connection with the sale of the Business and as provided in Fla. Stat. 213.758 regarding the withholding of a portion of the purchase price for potential sales tax liabilities of Seller.  As more fully set forth herein, Seller and the Members, jointly and severally,  agree to indemnify, defend and hold Purchaser and its officers, directors, successors and assigns harmless from and against any and all claims made against them, or any of them and/or the Assets purchased by Purchaser, based on failure to comply with any applicable bulk sales laws or transfer laws, including but not limited to the provisions relating to the utilization of sales tax by to pay any potential sales tax owed of Seller, as provided in Florida Statute Section 213.758 or otherwise, or the failure of Seller to pay any sales, use or excise tax (and any interest, penalties or fines).   Notwithstanding the foregoing, Seller shall provide at Closing, a Certificate of Compliance from the Department of Revenue stating that all required sale tax returns have been filed and the sales tax reflected on such returns has been paid in full and that no sales tax audit is ongoing.

15.    Termination:  The transactions contemplated herein may be terminated and/or abandoned prior to Closing:

(a)    by mutual written consent of the parties hereto at any time prior to Closing; or

(b)    by Purchaser, upon delivery of written notice to Seller in accordance with this Agreement in the event of a material breach by Seller of any provision of this Agreement, including covenants, warranties or representations, and such breach has not been cured within five (5) business days following receipt of notice by Purchaser to Seller; or

(c)    by Seller, upon delivery of written notice to Purchaser in accordance with this Agreement in the event of a material breach by Purchaser of any provision of this Agreement, including covenants, warranties or representations, and such breach has not

Case 9:12-cv-80762-DMM Document 695-1 Entered on FLSD Docket 06/06/2019 Page 26 of 9

been cured within five (5) business days following receipt of notice by Seller to Purchaser; or

(d)      by Purchaser, if during the Due Diligence Period Purchaser elects to exercise its right of cancellation pursuant to <u>Section 1.3</u> of this Agreement; or

(e)      by Purchaser, if Purchaser elects to exercise its right of cancellation pursuant to <u>Section 1.3</u> of the Real Estate Purchase Agreement; or

(f)      by Purchaser, at any time after the expiration of the Due Diligence Period upon delivery of written notice in accordance with this Agreement, if the conditions to closing under Section 8 have not been obtained on or before October 15, 2012.

(g)      by Seller or Purchaser upon termination of the Real Estate Purchase Agreement.

16.   <u>Remedies</u>:

(a)      <u>Purchaser's Default</u>: If Purchaser fails to close for reasons other than (i) due to, or as a result of, the failure or non-satisfaction of any condition precedent to Purchaser's obligations under this Agreement, (ii) due to, or as a result of, the failure on the part of Seller to perform its obligations hereunder, or (iii) due to its right to terminate this Agreement before the end of the Due Diligence Period, or as otherwise provided herein, then Seller shall have the right, <u>in lieu</u> of any other remedies available to it, at law or in equity, to terminate this Agreement by giving Purchaser and the Escrow Agent written notice thereof  and, upon receipt of such notice, the Escrow Agent shall pay to and Seller may retain, only the Deposit (i.e., all monies being held in escrow by Barry Roderman, Esq.) as liquidated damages, or elect to pursue specific performance. (Seller and Purchaser hereby acknowledge that the amount of damages resulting from a breach of this Agreement by Purchaser would be difficult or impossible to accurately ascertain).

(b)      <u>Sellers Default</u>:  In the event Seller fails to Close other than (i) due to, or as a result of, the election by Seller to terminate Seller's obligations as permitted by this Agreement, or (ii) due to, or as a result of, the failure on the part of Purchaser to perform its obligations hereunder, then Purchaser shall have the right to either (i) the return Deposit and any other prepaid monies received by Seller, less $25,000 to be retained by Seller, and in addition, Seller shall pay to Purchaser an additional sum equal to the Deposit, less $25,000; or (ii) Purchaser may seek specific performance of Seller's obligations hereunder.

17.   <u>Operation Pending Closing; Lease to Purchaser</u>.  Seller and Purchaser agree, that, at the election of Purchaser, commencing on September 15th, Seller will cease operation of the Business and ~~enter into a similar lease~~ agreement with Seller, (~~using the Standard~~ [~~Barry/David, pick a standard pre-printed commercial lease form you like, insert here and send me a copy~~] for Seller to ~~lease the~~ Business premises (being that property being purchased by Purchaser under the Real Estate Agreement) to Seller until the Closing Date or the termination of this Agreement, at a the monthly ~~lease~~ rate of Eighteen Thousand Dollars ($18,000) per month,

inclusive of sales tax and without additional charge or expense such as utilities, maintenance and other charges related to the Business premises; provided however, the electricity shall be prorated between Seller and Purchaser from the date Purchase takes possession until Closing. Purchaser shall have the right to make improvements to the Business premises in advance of the Closing. If this Agreement is terminated prior to Closing, Purchaser shall have the election to remove any improvements, including furniture, fixtures and equipment, and restore the Business premises to their original condition, wear and tear excluded, or Purchaser may elect to leave all improvements in place for the benefit and Seller, and Purchaser shall pay Seller the cost of such improvements incurred by Purchaser in improving the Business premises. Rent shall be prorated for each partial month. Up and until September 15th and Purchaser obtaining possession of the Business Premises, Seller shall continue to operate the business in its usual and ordinary course and shall not incur any expense or obligation outside of the usual course of business, including but not limited to increasing the inventory of liquor or other supplies. at the time of the execution and delivery of the written lease agreement by both Seller and Purchaser, Purchaser shall deliver to Seller an additional Deposit of One Million Dollars ($1,000,000), which shall be considered part of the Deposit to be held and disbursed in accordance with the provisions of this Agreement, including but not limited to, Section 16 of this Agreement.

**18.** **Notice:** All notices, requests and other communications under this Agreement shall be in writing and shall either be sent by U.S. first class certified mail (return receipt requested, postage prepaid); by an overnight courier guaranteeing next day delivery (e.g. Federal Express, Purolator, United Parcel Service); or by facsimile transmission or email with a copy also forwarded by U.S. Mail in the manner aforesaid, in each instance addressed as follows:

If intended for Seller:

THE PALM STEAK HOUSE LLC
1000 North Congress Avenue, Suite I
West Palm Beach, Florida 33409
Telephone: (954) 465-5466
Facsimile: (561) 276-7099
Email: sfarese103@comcast.net

and to:

Suzanne Farese
65 N. E. 4th Ave, Townhouse "G"
Delray Beach, Florida 33483
Telephone: (954) 465-5466
Facsimile: (561) 276-7099
Email: Sfarese103@comcast.net

and to:

Barry Roderman, Esquire
One East Broward Blvd., Suite 700
Fort Lauderdale, Florida 33301
Telephone: (954) 761-8810
Facsimile: (954) 761-9911
Email: bgr@barryroderman.com

CONFIDENTIAL

If intended for Purchaser:    **S&J CRAZY LIZARDS ENTERTAINMENT, LLC**
c/o Haile, Shaw & Pfaffenberger, P.A.
660 U.S. Highway One – Third Floor
North Palm Beach, FL 33408
Telephone: (561) 627-8100
Facsimile: (561) 622-7603
Email: otasini@haileshaw.com

and to:    Oren Tasini, Esquire
Haile, Shaw & Pfaffenberger, P.A.
660 U.S. Highway One – Third Floor
North Palm Beach, FL 33408
Telephone: (561) 627-8100
Facsimile: (561) 622-7603
Email: otasini@haileshaw.com

Or at such other address of which Seller or Purchaser shall have given notice in the manner as hereinabove provided. All such notices, request and other communication shall be deemed to have been sufficiently given for all purposes hereon if refused or received when sent by first class prepaid U.S. Mail, if sent certified mail return receipt requested; on receipt or refusal if sent by overnight courier; or on the same day if sent by email or facsimile with confirmation of receipt before the close of business in the locate of the recipient (5:00 P.M. local time), or on the next business day if sent by facsimile after the close of business.

    19.    <u>Brokerage Commissions</u>: The parties represent and warrant to each other that neither has dealt with any broker or other intermediary with respect to this transaction in any manner which would create a right to a fee or commission. If any broker or other intermediary claims a fee, commission or other compensation with respect to this transaction, the party alleged to have created the right to such commission or compensation shall be responsible for defending against such commission or compensation claims(s) and shall indemnify, defend and save and hold the other party harmless of, from and with respect to any such claim(s) including the coast of defense thereof. This indemnity shall survive termination of this Agreement.

    20.    <u>Exhibits</u>: The parties have agreed that the exhibits to this Agreement and the Real Estate Purchase Agreement shall be completed within ten (10) business days from the Effective Date. If the exhibits are not completed due to any fault of Seller, the Due Diligence Period will be extended by the number of business days in excess of ten (10) and the date the exhibits are completed.

    21.    <u>Miscellaneous</u>:

        (a)    The captions in this Agreement are inserted for convenience of reference only and in no way define, describe, or limit the scope of intent of this Agreement or any of the provisions hereof.

(b)      This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representative and successors.

(c)      This Agreement shall be governed and construed in accordance with the of the State of Florida and venue for the enforcement hereof shall be in Palm Beach County, Florida, to which jurisdiction Seller, and Purchaser submit for purposes of service of process in any enforcement action by a party to this Agreement. If a dispute develops herewith, the prevailing party shall be entitled to reasonable attorney's fees and costs at all states of litigation.

CONFIDENTIAL

(d)      This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original hereof, and all of which, when taken together, shall be considered one and the same instrument.

(e)      This Agreement contains the entire Agreement between Seller, and Purchaser. No change, amendment or modification shall be made to this Agreement unless in writing and then only on condition that the party(ies) be bound thereby shall have executed such instrument.

(f)      Whenever used herein, the masculine, feminine and neuter pronouns shall be fully interchangeable, and the singular shall include the plural when the context so requires and vice versa.

(g)      For the purposes of this Agreement a "Business Day" shall mean any day except Saturday, Sunday and any day which shall be in Palm Beach, Florida, a legal holiday, or a day on which banking institutions are authorized, or required to law or other governmental action to close.

(h)      The Purchaser understands that the Escrow Agent hereunder has and does represent the Seller and its principals/ members in this matter and in other matters not related to this Agreement and agrees that the Escrow Agent is not prohibited from representing the Seller in any such litigation that may arise from this Agreement.

(i)      The terms of this agreement shall remain confidential and can only be revealed to the parties' licensed professional advisers or if ordered by the judicial body of competent jurisdiction. The parties hereto agree that this clause is a material clause to this transaction and that the enforcement of it shall survive the closing. If it becomes necessary to enforce this clause, the prevailing party will be entitled to reasonable attorney' fees and costs.

## [SIGNATURES ON THE FOLLOWING PAGE]

LS02.001/00138383 v8

20

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written:

Witnesses:

_____

_____

**SELLER:**

THE PALM STEAK HOUSE, LLC,
a Florida limited liability company

By: _____
Barry Roderman

Witnesses:

_____

_____

**MEMBERS:**

PALM BEACH GENTLEMEN'S CLUB
TRUST

By:_____
Name:_____

NOLITA TRUST

By:_____
Name:_____

_____
Barry Roderman

Witnesses:

_____

_____

**PURCHASER:**

S&J CRAZY LIZARDS
ENTERTAINMENT LLC,
a Florida limited liability company

By: _____
Scott Lizza, Manager

## SCHEDULE OF EXHIBITS

Exhibit A          Assets

Exhibit B          Property **CONFIDENTIAL**

Exhibit C          Assumed Contracts

Exhibit C-1        Existing Mortgages and Liens

Exhibit D          Excluded Assets

Exhibit E          Allocation of Purchase Price

Exhibit F          Pending Litigation

1

Palm Beach Gentlemens Club, LLC
D B A  D r e a m g i r l s  o f  P a l m  B e a c h
1000 North Congress Avenue
West Palm Beach, Florida 33409
561-687-4444 (Club Info) 561-684-8618 (Bookkeeping)
561-684-8619 (Fax)

# CLUB INVENTORY: ALL EQUIPMENT, FURNITURE, FIXTURES AND COMPUTER EQUIPMENT
## January 26, 2009

| Bookkeeping Office, Suite I | | | | |
|---|---|---|---|---|
| Description | Item/Serial No & Model No. | Date Acquired | Cost New | Condition |
| See Chaney Brothers Equipment List | Bar equipment, 5 coolers, ice machine, 2 glass washers, 1 dish washer, see list | Late 2007- early 2008 | $35,000.00 | |
| Sound | | 2007- Added items in 2008 | | |
| Lights | | 2007—added some stage lights in 2008 | | |

Club Inventory
Page 1 of 5

PBC0637011

| Item No | Description | Date Acquired | Cost New | Condition |
|---|---|---|---|---|
| Tables and Chairs 35 barstools, 25 tables, 50 chairs upholstered | | 2009 | $14,000.00 | |
| Kitchen Equipment | 1 stove, 3 refrigerators, hood, grille, gas burner, stainless working counters and benches, Slicer, Pizza oven, | 2009 by PBGC Note: Kitchen Work Tables Brought from Michigan by Nick were sold used for $1500. | $24,000.00 | |
| Telephone System | | 2009 | $2500.00 | |
| Office Equipment and Desks & furnishings | 8 desks Sets 4 copy machine | 2008 PBGC | $8600.00 | |
| Mirrors | | 2009 | $1800.00 | |
| rugs | | 2009 New Rug paid and installed by Nick. | $4,000.00 | |
| Hummer | Big engine 4 Door | 2009. From Columbus | $35,000 | Good |

Club Inventory
Page 2 of 5

CONFIDENTIAL

| Item No | Description | Date Acquired | Cost New | Condition |
|---|---|---|---|---|
| Vehicle | | Club , PBGC assumed all payments | | |
| 2003 BMW | 2 Door BMW 328i | 2010 PBGC | Bought Used $11,000.00 | Excellent |
| 2005 Mercedes Benz | 500 SL | June 2010 PBGC | $30,000.00 | Excellent |
| POS System | Point of Sale software | 2008 PBGC from ESI | $22,000.00 | |
| Computers and Registers for the POS | Main Frame 5 registers and 5 printers | 2008 PBGC from ESI | $10,000.00 | |
| Office computers | 3 dell systems 2 HP systems Elite 4 HP standard computers & | Nick bought the Dells; PBGC bought the Elites; 4 HP's by Nick | $7200.00 | |

Club Inventory
Page 3 of 5

| | | | | |
|---|---|---|---|---|
| | keyboards | | | |
| Sound System | See attached | 2009 Some used speakers from Nick's Michigan club | $12,546.00 | Good |
| Lighting System | See Attached. | | $26,000.00 | |
| ADI Interface equipment | | | $453.00 | |
| Cameras and Equipment | | 2009 New Moniitors and added cameras by Nick | $38,000.00 | |
| Exterior Street Signs | 2 complete 8 x 16 signs lighted with neon | 2009 Ordered by Nick, but paid by PBGC | $26,000.00 | |
| ATM Machine | | 2009 Nick brought from Michigan Club | $3000.00 | |
| Cigarette & Candy Machine | | 2009 Used Nick brought from Michigan club | $4200.00 | |
| Buffet Equipment | Cooler portable lighting heat lamps, cooler and table system | 2009 Used Nick brought from Michigan club | $8000.00 | |
| Lockers | | 2009 PBGC | $8,000.00 | |
| Couches and love seats | | 2009 half came from Used Nick brought from Michigan club; other half new | $6000.00 | |
| Lamps | | 2009. PBGC | $800.00 | |
| | | | | |
| | | | | |

AREAS:

1. Bookkeeping, Suite I
2. Kitchen, Suite I
3. Small Manager's Office

Club Inventory
Page 4 of 5

CONFIDENTIAL

4.  General Manager's Office
5.  Lobby areas
6.  Main Club area
7.  Main Bar area
8.  Service Bar Area
9.  Liquor Room
10. Cleaning – Ice Machine Area
11. Entertainer's Locker Room
12. Champagne Rooms
13. Dance Rooms

EXHIBIT B

**CLOSING STATEMENT**

Exhibit B

SELLER: **The Palm Steak House, LLC**

BUYER:   **S&J Property Holdings, LLC**

CLOSING DATE:  October·i̲,g̲, 2012

| | Buyer Amounts Due | Seller Amounts Due |
|---|---|---|
| **PURCHASE PRICE** | $2,400,000.00 | |
| **INVENTORY PRICE** | $9,723.00 | |
| **PRORATION AND CREDITS** | | |
| **Rent due to Seller for September** | $    18,000.00 | |
| **Rent due to Seller for October (11 days)** | $     6,384.09 | |
| **Repairs by Seller - Windows** | | $    (318.00) |
| **TOTAL AMOUNTS DUE TO SELLER**  Before Credits | | |
| **LESS DEPOSITS**  Contract Deposit | | $    (225,000.00) |
|   Deposit for Possession | | $ (1,000,000.00) |
| **TOTAL DEPOSITS** | | |
| **TOTAL DUE FROM BUYER AT CLOSING** | $2,434,107.09 | |
| **TOTAL CREDITS TO BUYER** | $   (1,225,318.00) | |
| **TOTAL PAID TO SELLER*** | $1,208,789.09 | |

*CONFIDENTIAL*

00174316.XLS

CLOSING STATEMENT

The  due to Seller shall be paid to David Goldstein  P.A.  Trust Account,  as Closing Agent, for disbursement  by the Closing Agent in accordance with this Closing Statement.  All                to be made via wire transfer  of immediately  available funds.

Seller and Buyer hereby approve the Closing Slatement and the Disbursements to be made pursuant to the Closing Statement as noted above



**SELLER:**

**THE PALM STEAK HOUSE, LLC**

By J B
   Barry Roderman, its

CONFIDENTIAL

00174316.XLS

CLOSING STATEMENT

**BUYER:**

**S&J PROPERTY HOLDINGS, LLC**

By: _____ *JK* _____

Scottlizza.sole Member

00174316.XLS

EXHIBIT C

Case 9:12-cv-80762-DMM Document 714-1 Entered on FLSD Docket 06/07/2021 Page 54 of
Case 9:12-cv-80762-DMM Document 556-6 Entered on FLSD Docket 12/19/2016 Page 15 of 26
136

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA PALM BEACH DIVISION

### CASE NO. 12-80762-CIV-MIDDLEBROOKS

GHAHAN, LLC,
Plaintiff,
vs.

PALM STEAK HOUSE, LLC,
Defendant.
_____/

### NOTICE OF FILING
### CONFIDENTIAL TAX RETURNS FOR PALM STEAK HOUSE, LLC

### Exhibit-6

Palm Steak House

TAX RETURN

YEAR 2012

CONFIDENTIAL!

603 Village Blvd • Suite 302 • West Palm Beach, FL 33409
Tel: 561-242-0568 • Fax: 561-242-7997
pcaccomo@bellsouth.net
**www.UnitedTaxandFinancial.com**

PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS
1000 N CONGRESS AVE
WEST PALM BEACH, FL 33409

Dear Suzanne,

I have prepared your 2012 Form 1065 based on the information you provided. Please review the enclosed copy for PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS, then sign the IRS e-file Signature Authorization Form 879-PE and return it to me. When I receive the signed authorization, I will e-file your return.

There are no taxes or fees due with the return.

If you have any questions about the return(s) or about PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS's tax situation during the year, please do not hesitate to call me at (561) 242-0568. I appreciate this opportunity to serve you.

Sincerely,


Paul Caccomo
United Tax & Financial Services, LLC

**Privacy Notice**
As a tax practitioner, I receive and collect nonpublic personal information from various forms and statements that you provide. I do not disclose such information unless you instruct me to do so. I maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

OCT. 18, 2013

**United Tax & Financial Services, LLC**
**603 Village Blvd Suite 302**
**West Palm Beach, FL 33409**
**(561) 242-0568**

**Invoice for 2012 Tax Year**

PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS
1000 N CONGRESS AVE
WEST PALM BEACH, FL 33409

Invoice Date: October 18, 2013

**Statement of Charges**

Tax return preparation fee                                1,200.00

Additional Discounts                                       -400.00

                                    **TOTAL**              800.00

Description
1065 - Return of Partnership Incom
8879-PE - E-File Signature Authorization for 1065
1125-A - Cost of Goods
4797 - Sales of Business Property
Sch B-1 - Info rs Own g >50% of the Ptnrshp
Sch M-3 et Inc( ) Re /Certain Partnerships
Sch K-1 K-1 (1065) rtner hare of Income
4562: 1 5 - Depreciati and mortization
7004 - to. Extension Certain Bus IT/Info/Other

**Form 1065**

Department of the Treasury
Internal Revenue Service

## U.S. Return of Partnership Income

For calendar year 2012, or tax year beginning _____ , ending _____

▶ Information about Form 1065 and its separate instructions is at *www.irs.gov/form1065.*

OMB No. 1545-0099

**2012**

| A Principal business activity | Name of partnership | |
|---|---|---|
| NIGHTCLUB | PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS | D ■■■■■■■ |
| B Principal product or service | Print or type. | Number, street, and room or suite no. If a P.O. box, see the instructions. | ■■■■■ 7/5/2007 |
| FOOD AND BEVERAGE | | 1000 N CONGRESS AVE | |
| C Business code number | | City or town     State     ZIP code | F Total assets (see the instructions) |
| ■■■■■ | | WEST PALM BEACH     FL     33409 | $     744 |

G Check applicable boxes: (1) ☐ Initial return  (2) ☐ Final return  (3) ☐ Name change  (4) ☐ Address change  (5) ☐ Amended return

(6) ☐ Technical termination - also check (1) or (2)

H Check accounting method: (1) ☒ Cash  (2) ☐ Accrual  (3) ☐ Other (specify) ▶

I Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ ..... 4

J Check if Schedules C and M-3 are attached ................... ☐

**Caution.** Include **only** trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.

| | | | | |
|---|---|---|---|---|
| **Income** | 1a | Gross receipts or sales . . . . . . . . . | 1a | 1,361,1■■ |
| | b | Returns and allowances . . . . . . . . . | 1b | 4,24■ |
| | c | Balance. Subtract line 1b from line 1a . . . . . . . . | 1c | 1,356,871 |
| | 2 | Cost of goods sold (attach Form 1125-A) . . . . . . . | 2 | 190,149 |
| | 3 | Gross profit. Subtract line 2 from line 1c . . . . . . . | 3 | 1,166,722 |
| | 4 | Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) . . | 4 | |
| | 5 | Net farm profit (loss) (attach Schedule F (Form 1040)) . . . . | 5 | |
| | 6 | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) . . . | 6 | |
| | 7 | Other income (loss) (attach statement) . . . . . . . | 7 | |
| | 8 | **Total income (loss). Combine lines 3 through 7** . . . . . | 8 | 1,166,722 |
| **Deductions** (see the instructions for limitations) | 9 | Salaries and wages (other than to partners) (less employment credits) . . | 9 | 312,438 |
| | 10 | Guaranteed payments to partners . . . . . . . . | 10 | 161,500 |
| | 11 | Repairs and maintenance . . . . . . . . . | 11 | 24,114 |
| | 12 | Bad debts . . . . . . . . . . . | 12 | |
| | 13 | Rent . . . . . . . . . . . . | 13 | 213,248 |
| | 14 | Taxes and licenses . . . . . . . . . . | 14 | 25,437 |
| | 15 | Interest . . . . . . . . . . . . | 15 | |
| | 16a | Depreciation (if required) attach Form 4562) . . | 16a | 7,295 | |
| | b | Less depreciation reported on Form 1125-A and elsewhere on return | 16b | | 16c | 7,295 |
| | 17 | Depletion (**Do not deduct oil and gas depletion.**) . . . . | 17 | |
| | 18 | Retirement plans, etc. . . . . . . . . . | 18 | |
| | 19 | Employee benefit programs . . . . . . . . | 19 | |
| | 20 | Other deductions (attach statement) . . . . . . . | 20 | ■■■■■ |
| | 21 | **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 . | 21 | ■■■■■ |
| | 22 | **Ordinary business income (loss).** Subtract line 21 from line 8 . . | 22 | -54,580 |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member manager) is based on all information of which preparer has any knowledge.

▶ _____
Signature of general partner or limited liability company member manager     Date

May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self- | PTIN |
|---|---|---|---|---|
| Paul Caccomo | | 10/18/2013 | | |
| Firm's name ▶ United Tax & Financial Services, LLC | | | Firm's ■■■ | |
| Firm's address ▶ 603 Village Blvd Suite 302 | | | Phone ■■ | |
| City     West Palm Beach | State FL | ZIP | | |

For Paperwork Reduction Act Notice, see separate instructions.

HTA

CONFIDENTIAL!

Form 1065 (2012)   PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS                    2▮▮▮▮    Page **2**

| **Schedule B** | **Other Information** | | | |
|---|---|---|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| **1** | What type of entity is filing this return? Check the applicable box: | | | |
| **a** | ☐ Domestic general partnership | **b** ☐ Domestic limited partnership | | |
| **c** | ☒ Domestic limited liability company | **d** ☐ Domestic limited liability partnership | | |
| **e** | ☐ Foreign partnership | **f** ☐ Other ▶ _____ | | |
| **2** | At any time during the tax year, was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person? . . . . . . . . . . . . . . . . . . . . . . | | | X |
| **3** | At the end of the tax year: | | | |
| **a** | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization, or any foreign government own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership . . . . . . . . . . . . | | | X |
| **b** | Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership . . . . . . . . . . . . . . | | | X |
| **4** | At the end of the tax year, did the partnership: | | | |
| **a** | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (iv) below . . . . . . . . . . . . . . . . . . . . . . . | | | X |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| | | | | Yes | No |
|---|---|---|---|---|---|
| **b** | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below . . | | | | | X |

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | | | Yes | No |
|---|---|---|---|---|
| **5** | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | X |
| **6** | Does the partnership satisfy **all four** of the following conditions? | | | |
| **a** | The partnership's total receipts for the tax year were less than $250,000. | | | |
| **b** | The partnership's total assets at the end of the tax year were less than $1 million. | | | |
| **c** | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | | |
| **d** | The partnership is not filing and is not required to file Schedule M-3 . . . . . . . . . . . . | | | X |
| | If "Yes," the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item L on Schedule K-1. | | | |
| **7** | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? . . . . . . . . . | | | X |
| **8** | During the tax year, did the partnership have any debt that was cancelled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? . . . . . . . . . . . . . . . | | | X |
| **9** | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? . . . . . . . . . . . . . . . . . . . | | | X |
| **10** | At any time during calendar year 2012, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts. If "Yes," enter the name of the foreign country. ▶ _____ | | | X |

Form **1065** (2012)

CONFIDENTIAL!



Form 1065 (2012)  PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS  Page **3**

| Schedule B | Other Information (continued) |
|---|---|

**11** At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions

**12a** Is the partnership making, or had it previously made (and not revoked), a section 754 election?
See instructions for details regarding a section 754 election.

**b** Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? attach a statement showing the computation and allocation of the basis adjustment. See instructions

**c** Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defi 734(d))? If "Yes," attach a statement showing the computation and allocation of the basis adjust

**13** Check this box if, during the current or prior tax year, the partnership distributed any prop like-kind exchange or contributed such property to another entity (other than disregard wholly-owned by the partnership throughout the tax year)

**14** At any time during the tax year, did the partnership distribute to any partner a te undivided interest in partnership property?

**15** If the partnership is required to file Form 8858, Information Return of U.S Disregarded Entities, enter the number of Forms 8858 attached. See i

**16** Does the partnership have any foreign partners? If "Yes," enter the r Information Statement of Section 1446 Withholding Tax, filed for this p

**17** Enter the number of Forms 8865, Return of U.S. Persons With Respect attached to this return. ▶

**18a** Did you make any payments in 2012 that would require you to file F m(s) 1

**b** If "Yes," did you or will you file required Form(s) 1099?

**19** Enter the number of Form(s) 5471, Information Return of U.S. ersons W Corporations, attached to this return. ▶

**20** Enter the number of partners that are foreign governments under tion 892.

**Designation of Tax Matters Partner** (see instructions)

Enter below the general partner or member-manager designa as the ta atters art (TMP) for tax year of this return:

| | | | |
|---|---|---|---|
| Name of designated TMP | ▶ SUZANNE FARESE TTEE PRGC RUST | Identifying number of TMP | |
| If the TMP is an entity, name of TMP representative | ▶ SUZANNE FARE E | Phone number of TMP | (561) 687-4682 |
| Address of designated TMP | 65 NE 4TH AVE UN G | | |
| | DELRAY BEACH | FL | 33483 |

Form **1065** (2012)

CONFIDE[NTIAL]

Form 1065 (2012) PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS

Page 4

**Schedule K** Partners' Distributive Share Items — Total amount

| | | | | Total amount |
|---|---|---|---|---|
| Income (Loss) | 1 | Ordinary business income (loss) (page 1, line 22) | **1** | -54,580 |
| | 2 | Net rental real estate income (loss) (attach Form 8825) | **2** | |
| | 3a | Other gross rental income (loss) | 3a | |
| | b | Expenses from other rental activities (attach statement) | 3b | |
| | c | Other net rental income (loss). Subtract line 3b from line 3a | **3c** | |
| | 4 | Guaranteed payments | **4** | 161,500 |
| | 5 | Interest income | **5** | |
| | 6 | Dividends: a Ordinary dividends | **6a** | |
| | | b Qualified dividends | 6b | |
| | 7 | Royalties | **7** | |
| | 8 | Net short-term capital gain (loss) (attach Schedule D (Form 1065)) | **8** | |
| | 9a | Net long-term capital gain (loss) (attach Schedule D (Form 1065)) | **9a** | |
| | b | Collectibles (28%) gain (loss) | 9b | |
| | c | Unrecaptured section 1250 gain (attach statement) | 9c | |
| | 10 | Net section 1231 gain (loss) (attach Form 4797) | **10** | -856,470 |
| | 11 | Other income (loss) (see instructions) Type ▶ | **11** | |
| Deductions | 12 | Section 179 deduction (attach Form 4562) | **12** | |
| | 13a | Contributions | **13a** | |
| | b | Investment interest expense | **13b** | |
| | c | Section 59(e)(2) expenditures (1) Type ▶ Amount ▶ | **13c(2)** | |
| | d | Other deductions (see instructions) Type ▶ | **13d** | |
| Self-Employment | 14a | Net earnings (loss) from self-employment | **14a** | |
| | b | Gross farming or fishing income | **14b** | |
| | c | Gross nonfarm income | **14c** | |
| Credits | 15a | Low-income housing credit (section 42(j)(5)) | **15a** | |
| | b | Low-income housing credit (other) | **15b** | |
| | c | Qualified rehabilitation expenditures (rental real estate) (attach Form 3468) | **15c** | |
| | d | Other rental real estate credits (see instructions) Type▶ | **15d** | |
| | e | Other rental credits (see instructions) Type▶ | **15e** | |
| | f | Other credits (see instructions) Type▶ | **15f** | |
| Foreign Transactions | 16a | Name of country or U.S. possession ▶ | | |
| | b | Gross income from all sources | **16b** | |
| | c | Gross income sourced at partner level | **16c** | |
| | | Foreign gross income sourced at partnership level | | |
| | d | Passive category ▶ e General category ▶ f Other ▶ | **16f** | |
| | | Deductions allocated and apportioned at partner level | | |
| | g | Interest expense ▶ h Other ▶ | **16h** | |
| | | Deductions allocated and apportioned at partnership level to foreign source income | | |
| | i | Passive category ▶ j General category ▶ k Other ▶ | **16k** | |
| | l | Total foreign taxes (check one): ▶ Paid ☐ Accrued ☐ | **16l** | |
| | m | Reduction in taxes available for credit (attach statement) | **16m** | |
| | | Other foreign tax information (attach statement) | | |
| Alternative Minimum Tax (AMT) Items | a | Post-1986 depreciation adjustment | **17a** | |
| | b | Adjusted gain or loss | **17b** | |
| | c | Depletion (other than oil and gas) | **17c** | |
| | d | Oil, gas, and geothermal properties—gross income | **17d** | |
| | e | Oil, gas, and geothermal properties—deductions | **17e** | |
| | f | Other AMT items (attach statement) | **17f** | |
| Other Information | a | Tax-exempt interest income | **18a** | |
| | b | Other tax-exempt income | **18b** | |
| | c | Nondeductible expenses | **18c** | 3,264 |
| | 19a | Distributions of cash and marketable securities | **19a** | 1,147,567 |
| | b | Distributions of other property | **19b** | |
| | 20a | Investment income | **20a** | |
| | b | Investment expenses | **20b** | |
| | c | Other items and amounts (attach statement) | | |

Form **1065** (2012)

CONFIDENTIAL!

Form 1065 (2012)    PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS

## Analysis of Net Income (Loss)

**1** Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16l . . . . . . .

**2** Analysis by partner type:

| | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|
| **a** General partners | | | | | | |
| **b** Limited partners | | | 17,313 | | | 89,607 |

---

| Schedule L | Balance Sheets per Books | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| | **Assets** | (a) | (b) | (c) | (d) |
| 1 | Cash . . . . . . . . . | | 13,034 | | 744 |
| 2a | Trade notes and accounts receivable . | | | | |
| b | Less allowance for bad debts . | | | | |
| 3 | Inventories . . . . . . . | | 76,276 | | |
| 4 | U.S. government obligations . . | | | | |
| 5 | Tax-exempt securities . . . . | | | | |
| 6 | Other current assets (attach statement) . | | | | |
| 7a | Loans to partners (or persons related to partners) . . | | 30?,279 | | |
| b | Mortgage and real estate loans . . | | | | |
| 8 | Other investments (attach statement) . | | | | |
| 9a | Buildings and other depreciable assets . | 199,803 | | 284 | |
| b | Less accumulated depreciation . | 168,260 | 3?,543 | 284 | |
| 10a | Depletable assets . . . . . | | | | |
| b | Less accumulated depletion . . | | | | |
| 11 | Land (net of any amortization) . . | | | | |
| 12a | Intangible assets (amortizable only) . | ?00,000 | | | |
| b | Less accumulated amortization . . | 555,55? | 444,444 | | |
| 13 | Other assets (attach statement) . . | | | | |
| 14 | Total assets . . . . . . . | | 3,867,576 | | 744 |
| | **Liabilities and Capital** | | | | |
| 15 | Accounts payable . . . . . | | 109,418 | | |
| 16 | Mortgages, notes, bonds payable in less than 1 ye? | | | | |
| 17 | Other current liabilities (attach statement) | | | | |
| 18 | All nonrecourse loans . . . . | | 283,849 | | |
| 19a | Loans from partners (or persons related t? partners) | | | | |
| b | Mortgages, notes, bonds payable ?1 year or mor? | | 302,279 | | |
| 20 | Other liabilities (attach statemen?) . . | | | | |
| 21 | Partners' capital accounts . . . | | 3,172,030 | | 744 |
| 22 | Total liabilities and capital . . . | | 3,867,576 | | 744 |

---

| Schedule M-1 | Reconciliation of Income (Loss) per Books With Income (Loss) per Return |
|---|---|

Note. Schedule M-3 may be required instead of Schedule M-1 (see instructions).

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) p?r b?o?? | -914,314 | 6 | Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | |
| 2 | Income included on ?chedule ? lines 1, 2, 3c, 5, 6a, 7, and ?1, not recorded on books ?his year (i??mize): | | a | Tax-exempt interest   $ _____ | |
| 3 | Guara?teed payme?ts (oth?r than health insur?nce) . . | 161,500 | 7 | Deductions included on Schedule K, lines 1 through 13d, and 16l, not charged against book income this year (itemize): | |
| 4 | Expe?ses recorded ?n books this year not i?clud?d on Sched?le K, lines 1 through 13d, and ?6l (i?emize): | | a | Depreciation   $ _____ | |
| a | Depreciation $ _____ | | 8 | Add lines 6 and 7 . . . . . . | |
| b | Trave? and entertainment $ ____ 3,264 | 3,264 | 9 | Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | |
| 5 | Add lines 1 through 4 . . . . | -749,550 | | | |

---

| Schedule M-2 | Analysis of Partners' Capital Accounts |
|---|---|

| | | | | | |
|---|---|---|---|---|---|
| 1 | Balance at beginning of year . . | 3,172,030 | 6 | Distributions:   a Cash . . | 1? |
| 2 | Capital contributed:   a Cash . | | | b Property . | |
| |    b Property | | 7 | Other decreases (itemize): _____ | |
| 3 | Net income (loss) per books . . | -914,314 | | | |
| 4 | Other increases (itemize): See Statement | -1,109,405 | 8 | Add lines 6 and 7 . . . . . | 1,147,567 |
| 5 | Add lines 1 through 4 . . . . | 1,148,311 | 9 | Balance at end of year. Subtract line 8 from line 5 | 744 |

Form **1065** (2012)

CONFIDENTIAL!

Form **1125-A**
(Rev. December 2012)

Department of the Treasury
Internal Revenue Service

**Cost of Goods Sold**

▶ Attach to Form 1120, 1120-C, 1120-F, 1120S, 1065, or 1065-B.
▶ Information about Form 1125-A and its instructions is at *www.irs.gov/form1125a.*

OMB No. 1545-2225

Name

PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS

| | | | |
|---|---|---|---|
| 1 | Inventory at beginning of year . . . . . . . . . . . . . . . . | 1 | 76 |
| 2 | Purchases . . . . . . . . . . . . . . . . . . . | 2 | 73 |
| 3 | Cost of labor . . . . . . . . . . . . . . . . . . | 3 | |
| 4 | Additional section 263A costs (attach schedule) . . . . . . . . | 4 | |
| 5 | Other costs (attach schedule) . . . . . . . . . . . . . | 5 | |
| 6 | **Total.** Add lines 1 through 5 . . . . . . . . . . . . . | 6 | 190,14 |
| 7 | Inventory at end of year . . . . . . . . . . . . . . | 7 | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on Form 1120, page 1, line 2 or the appropriate line of your tax return (see instructions) . . . . . . . . | 8 | 190,149 |

9 a Check all methods for valuing closing inventory:

    (i) [X] Cost

    (ii) [ ] Lower of cost or market

    (iii) [ ] Other (Specify method used and attach explanation.) ▶ - - - - - - - - - - - - - - - - - - - - - -

  b Check if there was a writedown of subnormal goods . . . . . . . . . . . . . . . . . ▶ [ ]

  c Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) . . ▶ [ ]

  d If the LIFO inventory method was used for this tax year, enter amount of closing inventory computed under LIFO . . . . . . . . . . . . . . . . | 9d |

  e If property is produced or acquired for resale, do the rules of section 263A apply to the entity (see instructions)? . . [ ] Yes [X] No

  f Was there any change in determining quantities, cost, or valuation between opening and closing inventory? If "Yes," attach explanation . . . . . . . . . . . . . . . . . . . . [ ] Yes [ ] No

HTA

Form **1125-A** (Rev. 12-2012)

CONFIDENTIAL!

| Form **4797** | **Sales of Business Property**<br>(Also Involuntary Conversions and Recapture Amounts<br>Under Sections 179 and 280F(b)(2))<br>► **Attach to your tax return.** | OMB No. 1545-0184 |
|---|---|---|
| Department of the Treasury<br>Internal Revenue Service | ► Information about Form 4797 and its separate instructions is at www.irs.gov/form4797. | **2012**<br>Attachment<br>Sequence No. **27** |

Name(s) shown on return: PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS

1 Enter the gross proceeds from sales or exchanges reported to you for 2012 on Form(s) 1099-B or 1099-S
(or substitute statement) that you are including on line 2, 10, or 20 (see instructions) . . . . . . | 1 |

**Part I** Sales or Exchanges of Property Used in a Trade or Business and Involuntary Conversions Fro
Other Than Casualty or Theft—Most Property Held More Than 1 Year (see instructions)

| 2 (a) Description of property | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) | (d) Gross sales price | (e) Depreciation allowed or allowable since acquisition | (f) Cost or oth basis, plus improvements an ex ense of sale | Gain or ( ) Su ( (f) from su and (e) |
|---|---|---|---|---|---|---|
| GOODWILL | 6/1/2007 | 9/17/2012 | 2,400,000 | 1,777,778 | 035,00 | -857,222 |
| FIXED ASSETS | VARIOUS | 9/17/2012 | 25,000 | 175,2 | 9,519 | 752 |

| 3 | Gain, if any, from Form 4684, line 39 . . . . . . . . . . . . . . . . . . . . | | |
| 4 | Section 1231 gain from installment sales from Form 6252, line 26 or 37 . . . . . . . . | 4 | |
| 5 | Section 1231 gain or (loss) from like-kind exchanges from Form 8824 . . . . . . . . . | 5 | |
| 6 | Gain, if any, from line 32, from other than casualty or theft . . . . . . . . . . . . | 6 | |
| 7 | Combine lines 2 through 6. Enter the gain or (loss) here and on the appropriate li ows: | 7 | -856,470 |

Partnerships (except electing large partnerships) and S corporations. Repo e gain loss) fo
instructions for Form 1065, Schedule K, line 10, or Form 1120S, Schedule K, li . Skip lines 9, 11, and 12 below.

Individuals, partners, S corporation shareholders, and all othe if line 7 is zero o loss, enter the
amount from line 7 on line 11 below and skip lines 8 and 9. If line 7 a gain d you did n have any prior year
section 1231 losses, or they were recaptured in an earlier year, enter e g from line 7 as a long-term capital
gain on the Schedule D filed with your return and skip lines 8 9, 11, an below.

| 8 | Nonrecaptured net section 1231 losses from prior year ee ins tions) . . . . | 8 | |
| 9 | Subtract line 8 from line 7. If zero or less, enter -0- ne 9 is zero, er the from line 7 on line 12 below.<br>If line 9 is more than zero, enter the amount from line on line 12 be and enter the gain from line 9 as a<br>long-term capital gain on the Schedule D filed th you turn (see in ructions) . . . . . | 9 | |

**Part II** Ordinary Gains and Losse (se nstru ons)

| 10 | Ordinary gains and losses not include n lines 1 rough ( de property held 1 year or less): | | |
| | | | |
| | | | |
| | | | |

| 11 | Loss, if any, from line 7 . . . | 11 | ( ) |
| 12 | Gain, if any, from e 7 or amou rom li 8, if applicable . . . . . . . . . . . . | 12 | |
| 13 | Gain, if any, from . . . . . | 13 | |
| 14 | Net gain or (loss) fr Form 31 and 38a . . . . . . . . . . . . . . . . | 14 | |
| 15 | Ordina m ins llment sales from Form 6252, line 25 or 36 . . . . . . . . . | 15 | |
| 16 | Ordi ry gain o ss) n like-kind exchanges from Form 8824 . . . . . . . . . . | 16 | |
| 17 | Co bine lines 10 ough . . . . . . . . . . . . . . . . . . . . . | 17 | |
| 18 | F all except indiv ual returns, enter the amount from line 17 on the appropriate line of your return and skip | | |
| | lin a and b below For individual returns, complete lines a and b below: | | |
| a | If the s on line 11 i udes a loss from Form 4684, line 35, column (b)(ii), enter that part of the loss here. Enter the part | | |
| | of the rom inco producing property on Schedule A (Form 1040), line 28, and the loss from property | | |
| | used as a yee on Schedule A (Form 1040), line 23. Identify as from "Form 4797, line 18a." See instructions . . . | 18a | |
| b | Re ermine the gain or (loss) on line 17 excluding the loss, if any, on line 18a. Enter here and on Form 1040, line 14 . . . | 18b | |

For Pape vork Reduction Act Notice, see separate instructions.       Form **4797** (2012)

HTA

CONFIDENTIAL!

**SCHEDULE B-1**
**(Form 1065)**
(Rev. December 2011)
Department of the Treasury
Internal Revenue Service

# Information on Partners Owning 50% or More of the Partnership

▶ Attach to Form 1065. See instructions on back.

OMB No. 1545-0099

Name of partnership
PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS

Employer identification number (EIN)

**Part I**   **Entities Owning 50% or More of the Partnership** (Form 1065, Schedule B, Question 3a)

Complete columns (i) through (v) below for any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, tax-exempt organization, or any foreign government that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| SUZANNE FARESE TTEE PBGC TRUST | | Trust | United States | 70.000% |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Part II**   **Individuals or Estates Owning 50% or More of the Partnership** (Form 1065, Schedule B, Question 3b)

Complete columns (i) through (iv) below for any individual or estate that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Individual or Estate | (ii) Identifying Number (if any) | (iii) Country of Citizenship (see instructions) | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 1065.
HTA

Schedule B-1 (Form 1065) (Rev. 12-2011)

CONFIDENTIAL!

651112

| Schedule K-1 (Form 1065) | | 2012 | | | ☐ Final K-1   ☐ Amended K-1 | OMB No. 1545-0099 |

**Schedule K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

**2012**

For calendar year 2012, or tax
year beginning _____ , 2012
ending _____ , 20 ____

**Partner's Share of Income, Deductions, Credits, etc.** ▶ See back of form and separate instructions.

☐ Final K-1   ☐ Amended K-1   OMB No. 1545-0099

### Part I   Information About the Partnership

**A** Partnership's employer identification number

**B** Partnership's name, address, city, state, and ZIP code

PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS
1000 N CONGRESS AVE
WEST PALM BEACH          FL    33409

**C** IRS Center where partnership filed return
Cincinnati, OH 45999-0011

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II   Information About the Partner

Partner's identifying number          **Partner: 1**

**F** Partner's name, address, city, state, and ZIP code

SUZANNE FARESE TTEE PBGC TRUST
65 NE 4TH AVE UNIT G
DELRAY BEACH, FL 33483

**G** ☒ General partner or LLC member-manager    ☐ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner? (see instructions)  Trust

**I2** If this partner is a retirement plan (IRA/SEP/Keogh, etc.), check here (see instructions) . . . . . . . ☐

**J** Partner's share of profit, loss, and capital (see instructions):

|  | Beginning | Ending |
|---|---|---|
| Profit | 70.000000% | 70.000000% |
| Loss | 70.000000% | 70.000000% |
| Capital | 70.000000% | 70.000000% |

**K** Partner's share of liabilities at year end:

Nonrecourse . . . . . . $
Qualified nonrecourse financing $
Recourse . . . . . . $

**L** Partner's capital account analysis:

Beginning capital account . . . $         -253,789
Capital contributed during the year . $
Current year increase (decrease) . . $          -40,490
Withdrawals & distributions . . . $ (        803,297 )
Ending capital account . . . . $

☐ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No
If "Yes," attach statement (see instructions)

### Part III   Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) | 15 | Credits |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| 4 | Guaranteed payments        110,500 | | |
| 5 | Interest income | | |
| 6a | Ordinary dividends | | |
| 6b | Qualified dividends | | |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | | |
| 9a | Net long-term capital gain (loss) | 17 | Alternative minimum tax (AMT) items |
| 9b | Collectibles (28%) gain (loss) | | |
| 9c | Unrecaptured section 1250 gain | | |
| 10 | Net section 1231 gain (loss) | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | C | 2,284 |
| 12 | Section 179 deduction | 19 | Distributions |
| 13 | Other deductions | A | 803,297 |
| | | 20 | Other information |
| 14 | Self-employment earnings (loss) | | |

*See attached statement for additional information.

**For IRS Use Only**

For Paperwork Reduction Act Notice, see Instructions for Form 1065.          IRS.gov/form1065          Schedule K-1 (Form 1065) 2012
HTA

SUZANNE FARESE TTEE PBGC TRUST

## K-1 Statement (Sch K-1, Form 1065)

**Line 18 - Tax-exempt income and nondeductible expenses**

C   Code C - Nondeductible expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C _____ 2,284

**Line 19 - Distributions**

A   Code A - Cash and marketable securities . . . . . . . . . . . . . . . . . . . . . . . . . . . A _____ 03,297

CONFIDENTIAL!

651112

| ☐ Final K-1 | ☐ Amended K-1 | OMB No. 1545-0099 |

**Schedule K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

**2012**

For calendar year 2012, or tax
year beginning _____ , 2012
ending _____ , 20 ___

**Partner's Share of Income, Deductions,
Credits, etc.**    ▶ See back of form and separate instructions.

**Part III**

| | | |
|---|---|---|
| 1 | Ordinary business income (loss) -8,187 | 15 Credits |
| 2 | Net rental real estate income (loss) | |
| 3 | Other net rental income (loss) | 16 Foreign transactions |
| 4 | Guaranteed payments 25,500 | |
| 5 | Interest income | |
| 6a | Ordinary dividends | |
| 6b | Qualified dividends | |
| 7 | Royalties | |
| 8 | Net short-term capital gain (loss) | |
| 9a | Net long-term capital gain (loss) | 17 Alternative minimum tax (AMT) items |
| 9b | Collectibles (28%) gain (loss) | |
| 9c | Unrecaptured section 1250 gain | |
| 10 | Net section 1231 gain (loss) | 18 Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | C 490 |
| 12 | Section 179 deduction | 19 Distributions A 172,135 |
| 13 | Other deductions | 20 Other information |
| 14 | Self-employment earnings (loss) | |

**Part I**

A   Partnership's employer identification number

B   Partnership's name, address, city, state, and ZIP code

PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS
1000 N CONGRESS AVE
WEST PALM BEACH      FL     33409

C   IRS Center where partnership filed return
Cincinnati, OH 45999-0011

D   ☐ Check if this is a publicly traded partnership (PTP)

**Part II**

E   Partner's identifying number          Partner: 2

F   Partner's name, address, city, state, and ZIP code
DAVID M GOLDSTEIN TTEE NOLITA TRUST
1441 BRICKELL AVENUE SUITE 1003
MIAMI, FL 33131

G   ☒ General partner or LLC member-manager      ☐ Limited partner or other LLC member

H   ☒ Domestic partner      ☐ Foreign partner

I1   What type of entity is this partner? (see instructions) _____ Trust

I2   If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐ (see instructions)

J   Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 15.000000% | 15.000000% |
| Loss | 15.000000% | 15.000000% |
| Capital | 15.000000% | 15.000000% |

K   Partner's share of liabilities at year end:
Nonrecourse . . . . . $ _____
Qualified nonrecourse financing $ _____
Recourse . . . . . $ _____

L   Partner's capital account analysis:
Beginning capital account . . . . $ -56,563
Capital contributed during the year . . $ _____
Current year increase (decrease) . . $ -8,677
Withdrawals & distributions . . . . $ ( 172,135 )
Ending capital account . . . . $ _____

☐ Tax basis  ☐ GAAP  ☐ Section 704(b) book
☐ Other (explain)

M   Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes," attach statement (see instructions)

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.        IRS.gov/form1065        Schedule K-1 (Form 1065) 2012
HTA

DAVID M GOLDSTEIN TTEE NOLITA TRUST

## K-1 Statement (Sch K-1, Form 1065)

**Line 18 - Tax-exempt income and nondeductible expenses**

  **C**  Code C - Nondeductible expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C     490

**Line 19 - Distributions**

  **A**  Code A - Cash and marketable securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A     72,135

CONFIDENTIAL!

651112

| | |
|---|---|
| ☐ Final K-1 | ☐ Amended K-1 |

OMB No. 1545-0099

**Schedule K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

**2012**

For calendar year 2012, or tax
year beginning _____ , 2012
ending _____ , 20 ___

**Partner's Share of Income, Deductions, Credits, etc.** ▶ See back of form and separate instructions.

**Part III**

| | | |
|---|---|---|
| 1 | Ordinary business income (loss) -8,187 | 15 Credits |
| 2 | Net rental real estate income (loss) | |
| 3 | Other net rental income (loss) | 16 Foreign transactions |
| 4 | Guaranteed payments 25,500 | |
| 5 | Interest income | |
| 6a | Ordinary dividends | |
| 6b | Qualified dividends | |
| 7 | Royalties | |
| 8 | Net short-term capital gain (loss) | |
| 9a | Net long-term capital gain (loss) | 17 Alternative minimum tax (AMT) items |
| 9b | Collectibles (28%) gain | |
| 9c | Unrecaptured section 1250 gain | |
| 10 | Net section 1231 gain (loss) | 18 Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | C 490 |
| 12 | Section 179 deduction | 19 Distributions A 172,135 |
| 13 | Other deductions | 20 Other information |
| 14 | Self-employment earnings (loss) | |

**Part I**

A Partnership's employer identification number

B Partnership's name, address, city, state, and ZIP code

PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS
1000 N CONGRESS AVE
WEST PALM BEACH       FL    33409

C IRS Center where partnership filed return
Cincinnati, OH 45999-0011

D ☐ Check if this is a publicly traded partnership (PTP)

**Part II**

E Partner's identifying number       Partner: 3

F Partner's name, address, city, state, and ZIP code
BARRY RODERMAN
500 WEST CYPRESS CREEK ROAD SUITE 5
FORT LAUDERDALE, FL 33309

G ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member

H ☒ Domestic partner    ☐ Foreign partner

I1 What type of entity is this partner? (see instructions) Passive individual
I2 If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

J Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 15.000000% | 15.000000% |
| Loss | 15.000000% | 15.000000% |
| Capital | 15.000000% | 15.000000% |

K Partner's share of liabilities at year end:
Nonrecourse . . . $
Qualified nonrecourse financing . $
Recourse . . . $

L Partner's capital account analysis:
Beginning capital account . . $ -56,564
Capital contributed during the year . $
Current year increase (decrease) . . $ -8,677
Withdrawals & distributions . $ ( 172,135 )
Ending capital account . . . $

☐ Tax basis  ☐ GAAP  ☐ Section 704(b) book
☐ Other (explain)

M Did the partner contribute property with a built-in gain or loss?
☐ Yes  ☒ No
If "Yes," attach statement (see instructions)

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.      IRS.gov/form1065      Schedule K-1 (Form 1065) 2012
HTA

BARRY RODERMAN

## K-1 Statement (Sch K-1, Form 1065)

**Line 18 - Tax-exempt income and nondeductible expenses**

C  Code C - Nondeductible expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C _____ 490

**Line 19 - Distributions**

A  Code A - Cash and marketable securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A _____ 172,135

CONFIDENTIAL!

**651112**

OMB No. 1545-0099

☐ Final K-1   ☐ Amended K-1

| Schedule K-1 (Form 1065) | 2012 |
|---|---|

Department of the Treasury
Internal Revenue Service

For calendar year 2012, or tax
year beginning _____ , 2012
ending _____ , 20 ____

**Partner's Share of Income, Deductions, Credits, etc.**    ▶ See back of form and separate instructions.

**Part I**

**A** Partnership's employer identification number

**B** Partnership's name, address, city, state, and ZIP code

PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS
1000 N CONGRESS AVE
WEST PALM BEACH        FL      33409

**C** IRS Center where partnership filed return
Cincinnati, OH 45999-0011

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II**

**E** Partner's identifying number          Partner: 4

**F** Partner's name, address, city, state, and ZIP code
MARC SCOTT
21100 95TH AVE #227
BOCA RATON, FL 33428

**G** ☐ General partner or LLC member-manager   ☒ Limited partner or other LLC member

**H** ☒ Domestic partner   ☐ Foreign partner

**I1** What type of entity is this partner? (see instructions) ... passive individual

**I2** If this partner is a retirement plan (IRA/SEP/Keogh, etc.), check here (see instructions) . . . . . . . ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.000000% | 0.000000% |
| Loss | 0.000000% | 0.000000% |
| Capital | 0.000000% | 0.000000% |

**K** Partner's share of liabilities at year end:
Nonrecourse . . . . . $ _____
Qualified nonrecourse financing . $ _____
Recourse . . . . . $ _____

**L** Partner's capital account analysis:
Beginning capital account . . . $ 265,166
Capital contributed during the year . $ _____
Current year increase (decrease) . . $ _____
Withdrawals & distributions . . . $ ( _____ )
Ending capital account . . . . $ 265,166

☐ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes," attach statement (see instructions)

**Part III**

| | | | 15 | Credits |
|---|---|---|---|---|
| 1 | Ordinary business income (loss) | | | |
| 2 | Net rental real estate income (loss) | | | |
| 3 | Other net rental income (loss) | | 16 | Foreign transactions |
| 4 | Guaranteed payments | | | |
| 5 | Interest income | | | |
| 6a | Ordinary dividends | | | |
| 6b | Qualified dividends | | | |
| 7 | Royalties | | | |
| 8 | Net short-term capital gain (loss) | | | |
| 9a | Net long-term capital gain (loss) | | 17 | Alternative minimum tax (AMT) items |
| 9b | Collectibles (28%) gain | | | |
| 9c | Unrecaptured section 1250 gain | | | |
| 10 | Net section 1231 gain (loss) | | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | | | |
| | | | 19 | Distributions |
| 12 | Section 179 deduction | | | |
| 13 | Other deductions | | 20 | Other information |
| 14 | Self-employment earnings (loss) | | | |

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.      IRS.gov/form1065      Schedule K-1 (Form 1065) 2012

HTA

| SCHEDULE M-3<br>(Form 1065) | Net Income (Loss) Reconciliation<br>for Certain Partnerships | OMB No. 1545-0099 |
|---|---|---|
| Department of the Treasury<br>Internal Revenue Service | ▶ Attach to Form 1065 or Form 1065-B.<br>▶ Information about Schedule M-3 (Form 1065) and its instructions is at www.irs.gov/form1065. | 2012 |

Name of partnership

PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS

**This Schedule M-3 is being filed because (check all that apply):**

A ☐ The amount of the partnership's total assets at the end of the tax year is equal to $10 million or mo...

B ☐ The amount of the partnership's adjusted total assets for the tax year is equal to $10 million or mo...
enter the amount of adjusted total assets for the tax year _____ .

C ☐ The amount of total receipts for the tax year is equal to $35 million or more. If box C is checked, enter the t...
receipts for the tax year _____

D ☐ An entity that is a reportable entity partner with respect to the partnership owns or is deemed to own an inte... st of 5...
percent or more in the partnership's capital, profit, or loss, on any day during the tax year of the pa...ership.

| Name of Reportable Entity Partner | Identifying Number | M...imum P...centage Owned or De...ed Owned |
|---|---|---|
| | | |
| | | |

E ☐ Voluntary Filer.

**Part I    Financial Information and Net Income (Loss) Reconciliation**

1a Did the partnership file SEC Form 10-K for its income statement period ending with or wi...n this tax ye...?
☐ **Yes.** Skip lines 1b and 1c and complete lines 2 through 11 with respect...SEC Fo... 10-K.
☐ **No.** Go to line 1b. See instructions if multiple non-tax-basis income...atem...ts a...
b Did the partnership prepare a certified audited non-tax-basis income...atement...that perio...?
☐ **Yes.** Skip line 1c and complete lines 2 through 11 with respec...that income...atement.
☐ **No.** Go to line 1c.
c Did the partnership prepare a non-tax-basis income statement fo...at...iod?
☐ **Yes.** Complete lines 2 through 11 with respect to that income s...ment.
☐ **No.** Skip lines 2 through 3b and enter the partner...p's n...incom...(loss)...its books and records on line 4a.

2 Enter the income statement period: Beginning _____ Ending _____

3a Has the partnership's income statement been res...ed for the inc...ne sta...ment period on line 2?
☐ **Yes.** (If "Yes," attach a statement and th...amou... of each ite... restated.)
☐ **No.**
b Has the partnership's income statem...t been r...ated...an...the five income statement periods preceding the period on line 2?
☐ **Yes.** (If "Yes," attach a statem...t and the am...nt of...item restated.)
☐ **No.**

| | | | |
|---|---|---|---|
| 4a | Worldwide consolidated ne...incom...(lo...from incom...statement source identified in Part I, line 1 . . . . . | 4a | |
| b | Indicate accounting standa... used...ine 4a (see instructions): | | |
| | 1 ☐ GAAP    2 ☐...FRS    3 ☐ 704(b) | | |
| | 4 ☐ Tax-basi...    5 ☐...er: (Specify) ▶ _____ | | |
| 5a | Net income from...ible fo...gn en...ties (attach statement) . . . . . . . . . . . | 5a | ( ) |
| b | Net loss from nonin...dible f...tties (attach statement and enter as a positive amount) . . . . . . | 5b | |
| 6a | Net inco...nonin...udible U.S. entities (attach statement) . . . . . . . . . . . . | 6a | ( ) |
| b | Net lo...from no...clud...e U.S. entities (attach statement and enter as a positive amount) . . . . | 6b | |
| 7a | Net i...ome (loss)...othe...reign disregarded entities (attach statement) . . . . . . | 7a | |
| b | Net i...ome (loss) o...other U.S. disregarded entities (attach statement) . . . . . . . . . . | 7b | |
| 8 | Adju...ent to elimi...tions of transactions between includible entities and nonincludible entities<br>(atta... statement) . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 | |
| 9 | Adjustm...t to re...ncile income statement period to line 11 amount (attach statement) . . . . . . . . | 9 | |
| 10 | Other adju...ents to reconcile to amount on line 11 (attach statement) . . . . . . . . . . | 10 | |
| 11 | Net i...ome (loss) per income statement of the partnership. Combine lines 4a through 10 . . . . . | 11 | |

**Note.** Part I, line 11, must equal the amount on Part II, line 26, column (a).

12 Ente...he total amount (not just the partnership's share) of the assets and liabilities of all entities included or removed on the following lines:

| | | Total Assets | Total Liabilities |
|---|---|---|---|
| a | ...ncluded on Part I, line 4 | | |
| b | Removed on Part I, line 5 | | |
| c | Removed on Part I, line 6 | | |
| d | Included on Part I, line 7 | | |

For Paperwork Reduction Act Notice, see the Instructions for your return.

HTA

Schedule M-3 (Form 1065) 2012

CONFIDENTIAL

Schedule M-3 (Form 1065) 2012           Page **2**

| Name of partnership | Employer identification number |
|---|---|
| PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS | |

**Part II**    **Reconciliation of Net Income (Loss) per Income Statement of Partnership with Inc** ▮▮▮ **Return**

| Income (Loss) Items | (a) Income (Loss) per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Income (Loss) per Tax Return |
|---|---|---|---|---|
| (Attach statements for lines 1 through 9) | | | | |
| 1 Income (loss) from equity method foreign corporations . . | | | | |
| 2 Gross foreign dividends not previously taxed . . . . . | | | | |
| 3 Subpart F, QEF, and similar income inclusions . . . . | | | | |
| 4 Gross foreign distributions previously taxed . . . . . | | | | |
| 5 Income (loss) from equity method U.S. corporations . . | | | | |
| 6 U.S. dividends . . . . . . . . . . . . . | | | | |
| 7 Income (loss) from U.S. partnerships . . . . . . . | | | | |
| 8 Income (loss) from foreign partnerships . . . . . . | | | | |
| 9 Income (loss) from other pass-through entities . . . . | | | | |
| 10 Items relating to reportable transactions (attach statement) . | | | | |
| 11 Interest income (attach Form 8916-A) . . . . . . . | | | | |
| 12 Total accrual to cash adjustment . . . . . . . . | | | | |
| 13 Hedging transactions . . . . . . . . . . . | | | | |
| 14 Mark-to-market income (loss) . . . . . . . . . | | | | |
| 15 Cost of goods sold (attach Form 8916-A) . . . . . | ( ) | | ( ) | ( ) |
| 16 Sale versus lease (for sellers and/or lessors) . . . . | | | | |
| 17 Section 481(a) adjustments . . . . . . . . . | | | | |
| 18 Unearned/deferred revenue . . . . . . . . . | | | | |
| 19 Income recognition from long-term contracts . . . . | | | | |
| 20 Original issue discount and other imputed interest . . . | | | | |
| 21a Income statement gain/loss on sale, exchange, abandonment, worthlessness, or other disposition of assets other than inventory and pass-through entities . . | | | | |
| b Gross capital gains from Schedule D, excluding amounts from pass-through entities . . . . . . . | | | | |
| c Gross capital losses from Schedule D, excluding amounts from pass-through entities, abandonment losses, and worthless stock losses . . . . . . | | | | |
| d Net gain/loss reported on Form 4797, line 17, excluding amounts from pass-through entities, abandonment losses, and worthless stock losses . . | | | | |
| e Abandonment losses . . . . . . . . . . . | | | | |
| f Worthless stock losses (attach statement) . . . . . | | | | |
| g Other gain/loss on disposition of assets other than inventory | | | | |
| 22 Other income (loss) items with differences (attach statement) | | | | |
| 23 Total Income (loss) items. Combine lines 1 through 22 . . . . . . . . . . . . . . . | | | | |
| 24 Total expense/deduction items (from Part III, line 31) (see instructions) . . . . . . . . . | ( 175,322 ) | | ( 3,264 ) | ( 172,058 ) |
| 25 Other items with no differences . . . . . . . | | | | |
| 26 Reconciliation totals. Combine lines 23 through 25 . . . | ( 175,322 ) | | ( 3 ▮ | |

**Note.** Line 26, column (a), must equal the amount on Part I, line 11, and column (d) must equal Form 1065, Anal ▮ Net Income (Loss), line 1.

Schedule M-3 (Form 1065) 2012

CONFIDENTIAL!

Schedule M-3 (Form 1065) 2012

Page **3**

Name of partnership

PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS

Employ████████

| Part III | Reconciliation of Net Income (Loss) per Income Statement of Partnership With Inco██ Return—Expense/Deduction Items |
|---|---|

| | Expense/Deduction Items | (a) Expense per Income Statement | (b) Temporary Difference | (c) Permanent Difference | Deduction per Tax Return |
|---|---|---|---|---|---|
| 1 | State and local current income tax expense . . . . . | | | | |
| 2 | State and local deferred income tax expense . . . . | | | | |
| 3 | Foreign current income tax expense (other than foreign withholding taxes) . . . . . . . . . . . | | | | |
| 4 | Foreign deferred income tax expense . . . . . . . | | | | |
| 5 | Equity-based compensation . . . . . . . . . . | | | | |
| 6 | Meals and entertainment . . . . . . . . . . | 6,527 | | 3,█ | 3,263 |
| 7 | Fines and penalties . . . . . . . . . . . . | | | | |
| 8 | Judgments, damages, awards, and similar costs . . . | | | | |
| 9 | Guaranteed payments . . . . . . . . . . . | 161,500 | | | 161,500 |
| 10 | Pension and profit-sharing . . . . . . . . . . | | | | |
| 11 | Other post-retirement benefits . . . . . . . . . | | | | |
| 12 | Deferred compensation . . . . . . . . . . . | | | | |
| 13 | Charitable contribution of cash and tangible property . . . . . . . . . . . . . . . . | | | | |
| 14 | Charitable contribution of intangible property . . . . | | | | |
| 15 | Organizational expenses as per Regulations section 1.709-2(a) . . . . . . . . . . . . | | | | |
| 16 | Syndication expenses as per Regulations section 1.709-2(b) . . . . . . . . . . . . | | | | |
| 17 | Current year acquisition/reorganization investment banking fees . . . . . . . . . . . . . . | | | | |
| 18 | Current year acquisition/reorganization legal and accounting fees . . . . . . . . . . . . . | | | | |
| 19 | Amortization/impairment of goodwill . . . . . . . | | | | |
| 20 | Amortization of acquisition, reorganization, and start-up costs . . . . . . . . . . . . . | | | | |
| 21 | Other amortization or impairment write-offs . . . . . | | | | |
| 22 | Section 198 environmental remediation costs . . . . | | | | |
| 23a | Depletion—Oil & Gas . . . . . . . . . . . | | | | ████ |
| b | Depletion—Other than Oil & G██ . . . . . . . | | | | |
| 24 | Intangible drilling & development costs . . . . . . | | | | |
| 25 | Depreciation . . . . . . . . . . . . . . | 7,295 | | | 7,295 |
| 26 | Bad debt expense . . . . . . . . . . . . | | | | |
| 27 | Interest expense with Form 8916-A . . . . . | | | | |
| 28 | Purchase versus lease (for purchasers and/or lessee) . . . . . . . . . . . . . . . | | | | |
| 29 | Research and development costs . . . . . . . | | | | |
| 30 | Other expense/deduction items with differences (attach statement) . . . . . . . . . . . . | | | | |
| 31 | **Total expense/deduction items.** Combine lines 1 through 30. Enter here and on Part II, line 24, reporting positive amounts as negative and negative amounts as positive . . . . . . . . . . | 175,322 | | 3,264 | ████ |

Schedule M██████████

PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS

## Line 20 (1065) - Other Deductions

| | | | |
|---|---|---|---:|
| 1 | Travel, Meals and Entertainment | | |
| | a | Travel . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1a** | 3█ |
| | b | Meals and entertainment, subject to 50% limit . . . . . **1b** 6,527 | |
| | d | Less disallowed . . . . . . . . . . . **1d** 3,264 | |
| | e | Subtract line d from lines b and c . . . . . . . . . . . . **1e** | 3,263 |
| 2 | From Form 4562 – Amortization . . . . . . . . . . . . . . . **2** | | 222,222 |
| 3 | Automobile and truck expenses . . . . . . . . . . . . . . . **3** | | 3,402 |
| 4 | Bank charges . . . . . . . . . . . . . . . . . . . . . . . . **4** | | 1,855 |
| 5 | Consulting fees . . . . . . . . . . . . . . . . . . . . . . . **5** | | 51,000 |
| 6 | Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . **6** | | 546 |
| 7 | Cleaning and janitorial . . . . . . . . . . . . . . . . . . . **7** | | 18,000 |
| 8 | Legal and professional fees . . . . . . . . . . . . . . . . **8** | | 37,█3 |
| 9 | Miscellaneous . . . . . . . . . . . . . . . . . . . . . . . . **9** | | 7,1█ |
| 10 | Office supplies . . . . . . . . . . . . . . . . . . . . . . . **10** | | 437 |
| 11 | Postage . . . . . . . . . . . . . . . . . . . . . . . . . . . **11** | | 88 |
| 12 | Printing and reproduction . . . . . . . . . . . . . . . . . **12** | | 185 |
| 13 | Sales and promotion expenses . . . . . . . . . . . . . . . **13** | | 3,885 |
| 14 | Supplies . . . . . . . . . . . . . . . . . . . . . . . . . . . **14** | | 5,181 |
| 15 | Telephone . . . . . . . . . . . . . . . . . . . . . . . . . . **15** | | 346 |
| 16 | Utilities . . . . . . . . . . . . . . . . . . . . . . . . . . . **16** | | 8,305 |
| 17 | Advertising . . . . . . . . . . . . . . . . . . . . . . . . . **17** | | 2,900 |
| 18 | Rental equipment . . . . . . . . . . . . . . . . . . . . . . **18** | | 4,490 |
| 19 | Trash removal . . . . . . . . . . . . . . . . . . . . . . . . **19** | | 830 |
| 20 | Bar supplies . . . . . . . . . . . . . . . . . . . . . . . . . **20** | | 292 |
| 21 | Cable . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21** | | 4,412 |
| 22 | Cell phone . . . . . . . . . . . . . . . . . . . . . . . . . . **22** | | 1,255 |
| 23 | Internet and website . . . . . . . . . . . . . . . . . . . . **23** | | 3,000 |
| 24 | Co2 gas . . . . . . . . . . . . . . . . . . . . . . . . . . . **24** | | 784 |
| 25 | Sound and video . . . . . . . . . . . . . . . . . . . . . . . **25** | | 866 |
| 26 | Uniforms | | |
| 27 | Remodeling and construction costs | | |
| 28 | Promotional giveaways and comps | | |
| 29 | Bank chargeback and ATM charges | | |
| 30 | Casual labor | | |
| 31 | Total other deductions | | |

## Line 19, Sch K (1065) - Distributions

| | | Adjusted Basis | Fair Market Value |
|---|---|---:|---:|
| A | Code A - Distributions of cash and marketable securities | | |
| | Distributions of cash . . . . . . . . . . . . . . . . . . . | | 1,147,567 |
| | Total distributions of cash and marketable securities . . . . . . . . . **A** | | 1,147,567 |

## Line 4, Sch M-2 (1065) - Other Increases

| | | | |
|---|---|---|---:|
| 1 | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1** | | -1,109,405 |
| 2 | Total other increases . . . . . . . . . . . . . . . . . . . . **2** | | -1,109,405 |

© 2012 CCH Small Firm Services. All rights reserved.

| Form **4562** | **Depreciation and Amortization**<br>**(Including Information on Listed Property)** | OMB No. 1545-0172 |
|---|---|---|
| Department of the Treasury<br>Internal Revenue Service        (99) | ▶ See separate instructions.        ▶ Attach to your tax return. | **2012**<br>Attachment<br>Sequence No. 1 |

| Name(s) shown on return<br>PALM STEAK HOUSE, LLC DBA CLUB DIAMO | Business or activity to which this form relates<br>1065 - NIGHTCLUB | |
|---|---|---|

**Part I**  **Election To Expense Certain Property Under Section 179**

Note: If you have any listed property, complete Part V before you complete Part I.

| | | |
|---|---|---|
| 1 Maximum amount (see instructions) | **1** | |
| 2 Total cost of section 179 property placed in service (see instructions) | **2** | |
| 3 Threshold cost of section 179 property before reduction in limitation (see instructions) | **3** | |
| 4 Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | **4** | |
| 5 Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | **5** | |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|---|
| | | | |
| | | | |

| | | |
|---|---|---|
| 7 Listed property. Enter the amount from line 29 | 7 | |
| 8 Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | **8** | |
| 9 Tentative deduction. Enter the **smaller** of line 5 or line 8 | **9** | |
| 10 Carryover of disallowed deduction from line 13 of your 2011 Form 4562 | **10** | |
| 11 Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instructions) | **11** | |
| 12 Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 | **12** | |
| 13 Carryover of disallowed deduction to 2013. Add lines 9 and 10, less line 12 ▶ | **13** | |

Note: Do not use Part II or Part III below for listed property. Instead, use Part V.

**Part II**  **Special Depreciation Allowance and Other Depreciation (Do not include listed property.) (See instructions.)**

| | | |
|---|---|---|
| 14 Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) | **14** | |
| 15 Property subject to section 168(f)(1) election | **15** | |
| 16 Other depreciation (including ACRS) | **16** | |

**Part III**  **MACRS Depreciation (Do not include listed property.) (See instructions.)**

**Section A**

| | | |
|---|---|---|
| 17 MACRS deductions for assets placed in service in tax years beginning before 2012 | **17** | 7,295 |
| 18 If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here | ▶ ☐ | |

**Section B - Assets Placed in Service During 2012 Tax Year Using the General Depreciation System**

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only—see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19 a  3-year property | | | | | | |
| b  5-year property | | | | | | |
| c  7-year property | | | | | | |
| d  10-year property | | | | | | |
| e  15-year property | | | | | | |
| f  20-year property | | | | | | |
| g  25-year property | | | 25 yrs. | | S/L | |
| h  Residential rental property | | | 27.5 yrs. | MM | S/L | |
| | | | 27.5 yrs. | MM | S/L | |
| i  Nonresidential real property | | | 39 yrs. | MM | S/L | |
| | | | | MM | S/L | |

**Section C - Assets Placed in Service During 2012 Tax Year Using the Alternative Depreciation System**

| | | | | | | |
|---|---|---|---|---|---|---|
| 20 a  Class life | | | | | S/L | |
| b  12-year | | | 12 yrs. | | S/L | |
| c  40-year | | | 40 yrs. | MM | S/L | |

**Part IV**  **Summary (See instructions.)**

| | | |
|---|---|---|
| 21 Listed property. Enter amount from line 28 | **21** | |
| 22 Total. Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations - see instructions | **22** | 7,295 |
| 23 For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | 23 | |

For Paperwork Reduction Act Notice, see separate instructions.

Form **4562** (2012)

HTA

CONFIDENTIAL!

Form 4562 (2012)     PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS     20-8626763     Page 2

**Part V** — **Listed Property** (Include automobiles, certain other vehicles, certain computers, and property used for entertainment, recreation, or amusement.)

Note: For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete only 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.

**Section A—Depreciation and Other Information** (Caution: See the instructions for limits for passenger automobiles.)

24a Do you have evidence to support the business/investment use claimed?  [ ] Yes  [ ] No    24b If "Yes," is the evidence written?  [ ] Yes  [ ] No

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/ investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use (see instructions) . . . . . . | | | | | | 25 | | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| | | % | | | | | | |
| | | % | | | | | | |
| | | % | | | | | | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| | | % | | | | S/L | | |
| | | % | | | | S/L – | | |
| | | % | | | | S/L – | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 . . . . | | | | | | 28 | | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 . . . . . . . . . | | | | | | | 29 | |

**Section B—Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person. If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 | Total business/investment miles driven during the year (do not include commuting miles) . . . | | | | | | | | | | | | |
| 31 | Total commuting miles driven during the year . | | | | | | | | | | | | |
| 32 | Total other personal (noncommuting) miles driven . . . . . . . . . . . | | | | | | | | | | | | |
| 33 | Total miles driven during the year. Add lines 30 through 32 . . . . . . | | | | | | | | | | | | |
| 34 | Was the vehicle available for personal use during off-duty hours? | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 35 | Was the vehicle used primarily by a more than 5% owner or related person? | | | | | | | | | | | | |
| 36 | Is another vehicle available for personal use? | | | | | | | | | | | | |

**Section C—Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who are not more than 5% owners or related persons (see instructions).

| | | Yes | No |
|---|---|---|---|
| 37 | Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? . . . . . . | | |
| 38 | Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners . . . . . | | |
| 39 | Do you treat all use of vehicles by employees as personal use? . . . . . . . . . . . . | | |
| 40 | Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? . . . . . . . . . . | | |
| 41 | Do you meet the requirements concerning qualified automobile demonstration use? (See instructions.) . . | | |

Note: If your answer to 37, 38, 39, 40, or 41 is "Yes," do not complete Section B for the covered vehicles.

**Part VI** — **Amortization**

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2012 tax year (see instructions): | | | | | |
| | | | | | |
| | | | | | |
| 43 Amortization of costs that began before your 2012 tax year . . . . . . . . . . | | | | 43 | |
| 44 Total. Add amounts in column (f). See the instructions for where to report . . . . . | | | | 44 | |

CONFIDENTIAL!

PALM STEAK HOUSE, LLC DBA CLUB DIAMONDS

**Form 4562 Statement - 1065**                                                                12/31/2012

**Depreciation Detail**



**MACRS deductions for prior years (Line 17)**

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | SMOKEETER U | 6/1/2007 | F-10 | 100.00% | 11,227 | | | 11, | | 200DB | H | 9,123 | 501 | 9,624 |
| 2 | FURNITURE | 6/1/2007 | F-11 | 100.00% | 11,543 | | | 11,543 | 7 | 200DB | HY | 9,379 | 515 | 9,894 |
| 4 | SIGNS | 6/1/2007 | F-11 | 100.00% | 19,016 | | | 19,016 | 7 | 200DB | HY | 15,452 | 849 | 16,301 |
| 5 | GLASSWASHER | 6/1/2007 | F-10 | 100.00% | 13,044 | | | 3,044 | 7 | 200DB | HY | 10,600 | 582 | 11,182 |
| 6 | COOLERS | 6/1/2007 | F-10 | 100.00% | 5,483 | | | ,483 | 7 | DB | HY | 4,456 | 245 | 4,701 |
| 7 | SINKS & STATIONS | 6/1/2007 | F-11 | 100.00% | 1,915 | | | 15 | 7 | B | HY | 1,556 | 86 | 1,642 |
| 8 | POS SYSTEM | 6/1/2007 | F-6 | 100.00% | 24,278 | | | 24, 5 | 7 | 20 B | HY | 19,726 | 1,084 | 20,810 |
| 9 | SPEAKERS | 6/1/2007 | F-10 | 100.00% | 12,188 | | | 12, | 7 | 200DB | HY | 9,904 | 544 | 10,448 |
| 10 | TVS & CAMERAS | 6/1/2007 | F-10 | 100.00% | 31,259 | | | 31,25 | 7 | 200DB | HY | 25,401 | 1,396 | 26,797 |
| 11 | BAR EQUIPMENT | 6/1/2007 | F-10 | 100.00% | 10,383 | | | 383 | 7 | 200DB | HY | 8,437 | 464 | 8,901 |
| 12 | MUSIC CENTER | 6/1/2007 | F-10 | 100.00% | 15,659 | | | | 7 | 200DB | HY | 12,724 | 699 | 13,423 |
| 14 | KITCHEN | 1/15/2009 | F-10 | 100.00% | 7,012 | 3,506 | | 3,506 | 7 | 200DB | HY | 5,479 | 219 | 5,698 |
| 15 | GENERATOR | 2/12/2009 | F-10 | 100.00% | 1,300 | 650 | | 650 | 7 | 200DB | HY | 1,016 | 41 | 1,057 |
| 13 | FURNITURE | 4/20/2009 | F-11 | 100.00% | 2,251 | 1,126 | | 1,125 | 7 | 200DB | HY | | | |

Total MACRS deductions for prior years (Line 17)                166,556       5,282          161,274

**Subtotal Depreciation**                                       166,556       5,282          161,274                    135,013   7,395   142,338

© 2012 CCH Small Firm Services. All rights reserved.

EXHIBIT D

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA PALM BEACH DIVISION

### CASE NO. 12-80762-CIV-MIDDLEBROOKS

GHAHAN, LLC,
Plaintiff,
vs.

PALM STEAK HOUSE, LLC,
Defendant.
_____/

### NOTICE OF FILING
### CONFIDENTIAL TAX RETURNS FOR PALM STEAK HOUSE, LLC

### Exhibit-7

Case 9:12-cv-80762-DMM Document 55-47 Entered on FLSD Docket 12/10/2012 Page 2 of 20



Palm STEAK House

TAX RETURN

YEAR 2013

**FOR TAX YEAR 2013**

PALM STEAK HOUSE, LLC DBA CLUB DIAM

United Tax & Financial Services

603 Village Blvd Suite 302

West Palm Beach, FL 33409

(561)242-0568

CONFIDENTIAL!

# United Tax & Financial Services

603 Village Blvd Suite 302
West Palm Beach, FL 33409
pcaccomo@bellsouth.net
Phone: (561) 242-0568 | Fax: (561) 242-7997

PALM STEAK HOUSE, LLC DBA CLUB DIAM                    Invoice Date: 06/20/2016
1000 N CONGRESS AVE
WEST PALM BEACH, FL 33409

**Your 2013 tax return was prepared by Paul Caccomo EA.**

## Description of Charges                                                    Price

### Federal and Supplemental Forms

| | | |
|---|---|---|
| Form 1065 | - U.S. Partnership Return of Income Page 1 | $ |
| Form 1065 | - U.S. Partnership Return of Income Page 2 | |
| Form 1065 | - U.S. Partnership Return of Income Page 3 | |
| Form 1065 | - U.S. Partnership Return of Income Page 4 | |
| Form 1065 | - U.S. Partnership Return of Income Page | |
| Form 1125-A | - Cost of Goods Sold | |
| Schedule K-1 | - Partner's Share of Income | |
| Schedule K-1 | - Partner's Share of Income | |
| Schedule K-1 | - Partner's Share of Income | |
| Schedule K-1 | - Partner's Share of Income | |
| Form 4562 | - Depreciation and Amortization | |
| Wksht Sch K | - Net Earnings/Loss from SE Worksheet | |
| K-K1 Comparison | - Comparison of Schedule K to K-1 | |
| Comparison | - Tax Year Comparison Sheet | |
| Wksht PCAR | - Capital Account Reconciliation | |
| Depr Sch | - Federal Depreciation Schedule | |

### Florida Forms

| | | |
|---|---|---|
| FL 1065 | - Partnership Information Return | |
| FL INST | - Filing Instructions | |

| | | |
|---|---|---|
| **Total Forms : 1** | **Forms Subtotal** | **0.00** |
| | **Total Balance Due** | **0.00** |

CONFIDENTIAL!

# Form 1065 — U.S. Return of Partnership Income

OMB No. 1545-0099

For calendar year 2013, or tax year beginning ____, 2013, ending ____, 20__

▶ Information about Form 1065 and its separate instructions is at www.irs.gov/form1065.

**2013**

Department of the Treasury, Internal Revenue Service

**A** Principal business activity: NIGHTCLUB

**B** Principal product or service: FOOD AND BEVERA

**C** Business code number:

Name of partnership: PALM STEAK HOUSE, LLC DBA CLUB DIAM

Number, street: 1000 N CONGRESS AVE

City: WEST PALM BEACH, FL 33409

**D** Date business started: 07-05-2007

**F** Total assets: $

**G** Check applicable boxes: (1) Initial return (2) Final return (3) Name change (4) Address change (5) Amended return (6) Technical termination - also check (1) or (2)

**H** Check accounting method: (1) ☒ Cash (2) Accrual (3) Other

**I** Number of Schedules K-1: 4

**J** Check if Schedules C and M-3 are attached

## Income

| | | |
|---|---|---|
| 1a Gross receipts or sales | 1a | |
| b Returns and allowances | 1b | |
| c Balance. Subtract line 1b from line 1a | 1c | |
| 2 Cost of goods sold | 2 | |
| 3 Gross profit | 3 | |
| 4 Ordinary income (loss) from other partnerships | 4 | |
| 5 Net farm profit (loss) | 5 | |
| 6 Net gain (loss) from Form 4797 | 6 | |
| 7 Other income (loss) | 7 | |
| 8 Total income (loss) | 8 | |

## Deductions

| | | |
|---|---|---|
| 9 Salaries and wages | 9 | |
| 10 Guaranteed payments to partners | 10 | |
| 11 Repairs and maintenance | 11 | |
| 12 Bad debts | 12 | |
| 13 Rent | 13 | |
| 14 Taxes and licenses | 14 | |
| 15 Interest | 15 | |
| 16a Depreciation | 16a 12,233 | |
| b Less depreciation reported | 16b | 16c 12,233 |
| 17 Depletion | 17 | |
| 18 Retirement plans | 18 | |
| 19 Employee benefit programs | 19 | |
| 20 Other deductions | 20 | |
| 21 Total deductions | 21 | 12,233 |
| 22 Ordinary business income (loss) | 22 | (12,233) |

## Sign Here

Signature of general partner or limited liability company member manager ____ Date

May the IRS discuss this return with the preparer shown below? ☒ Yes ☐ No

## Paid Preparer Use Only

Print/Type preparer's name: Paul Caccomo EA

Date: 06-20-2016

Firm's name: ▶ United Tax & Financial Services

Firm's address: ▶ 603 Village Blvd Suite 302, West Palm Beach, FL 33409

Phone no. (561) 242-0568

Form **1065** (2013)

EEA

Form 1065 (2013)  PALM STEAK HOUSE, LLC DBA CLUB DIAM  Page **2**

| Schedule B | Other Information |
|---|---|

| | | | | Yes | No |
|---|---|---|---|---|---|
| **1** | What type of entity is filing this return? Check the applicable box: | | | | |
| **a** | ☐ Domestic general partnership | **b** | ☐ Domestic limited partnership | | |
| **c** | ☒ Domestic limited liability company | **d** | ☐ Domestic limited liability partnership | | |
| **e** | ☐ Foreign partnership | **f** | ☐ Other ▶ | | |
| **2** | At any time during the tax year, was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | | X |
| **3** | At the end of the tax year: | | | | |
| **a** | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization, or any foreign government own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership . . . . . . . . . . . . . . . . . | | | | X |
| **b** | Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership . . . . . . . . . . . . . . | | | | X |
| **4** | At the end of the tax year, did the partnership: | | | | |
| **a** | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (iv) below . . . . . . . . . . . . . . . . . . . . . | | | | X |

| (i) Name of Corporation | (ii) Employer Identification Number | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| | |
|---|---|
| **b** | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below . . . . . . . . .  X |

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | | | Yes | No |
|---|---|---|---|---|
| **5** | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details . . . | | | | |
| **6** | Does the partnership satisfy all four of the following conditions? | | | | |
| **a** | The partnership's total receipts for the tax year were less than $250,000. | | | | |
| **b** | The partnership's total assets at the end of the tax year were less than $1 million. | | | | |
| **c** | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | | | |
| | The partnership is not filing and is not required to file Schedule M-3 . . . . . . . . . . . . . | | | X | |
| | If "Yes," the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item L on Schedule K-1. | | | | |
| **7** | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? . . . . . . . . . . . . | | | | X |
| **8** | During the tax year, did the partnership have any debt that was cancelled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? | | | | |
| **9** | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? | | | | |
| **10** | At any time during calendar year 2013, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR) (formerly TD F 90-22.1). If "Yes," enter the name of the foreign country. ▶ | | | | |

EEA

Form **1065** (2013)

CONFIDENTIAL!

Form 1065 (2013)    PALM STEAK HOUSE, LLC DBA CLUB DIAM                           Page 3

| Schedule B | Other Information (continued) | | Yes | No |
|---|---|---|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| 11 | At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions . . . . . . . . . . . . . . . . . . | | | X |
| 12a | Is the partnership making, or had it previously made (and not revoked), a section 754 election? . . . . . . . . . . . . . | | | |
| | See instructions for details regarding a section 754 election. | | | |
| b | Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions . . . . . . . . . . . . | | | |
| c | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defined under section 734(d))? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions . . . . | | | |
| 13 | Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (other than disregarded entities wholly-owned by the partnership throughout the tax year) . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐ | | | |
| 14 | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in partnership property? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | |
| 15 | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities, enter the number of Forms 8858 attached. See instructions . . . . . . . . . . . . . ▶ | | | |
| 16 | Does the partnership have any foreign partners? If "Yes," enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership. ▶ | | | |
| 17 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return. ▶          0 | | | |
| 18a | Did you make any payments in 2013 that would require you to file Form(s) 1099? See instructions . . . . . . . . | | | |
| b | If "Yes," did you or will you file required Form(s) 1099? | | | |
| 19 | Enter the number of Form(s) 5471, Information Return of U.S. Persons With Respect to Certain Foreign Corporations, attached to this return. ▶ | | | |
| 20 | Enter the number of partners that are foreign governments under section . . . . . . . . . . . | | | |

**Designation of Tax Matters Partner** (see instructions)

Enter below the general partner or member-manager designated as the tax matters partner (TMP) for the tax year of this return:

| Name of designated TMP ▶ | SUZANNE FARESE TTEE PBG TRUST | Identifying number of TMP | |
|---|---|---|---|
| If the TMP is an entity, name of TMP representative ▶ | SUZANNE FARESE | Phone number of TMP | (561) 687-4682 |
| Address of designated TMP ▶ | 65 NE 4TH AVENUE G DELRAY BEACH FL 33483 | | |

EEA                                                                          Form **1065** (2013)

Form 1065 (2013)  PALM STEAK HOUSE, LLC DBA CLUB DIAM                                Page **4**

| Schedule K | | Partners' Distributive Share Items | | | Total amount |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| **Income (Loss)** | 1 | Ordinary business income (loss) (page 1, line 22) | | **1** | (2,233) |
| | 2 | Net rental real estate income (loss) (attach Form 8825) | | **2** | |
| | 3 a | Other gross rental income (loss) | 3a | | |
| | b | Expenses from other rental activities (attach statement) | 3b | | |
| | c | Other net rental income (loss). Subtract line 3b from line 3a | | **3c** | |
| | 4 | Guaranteed payments | | **4** | |
| | 5 | Interest income | | **5** | |
| | 6 | Dividends: a Ordinary dividends | | **6a** | |
| | | b Qualified dividends | 6b | | |
| | 7 | Royalties | | **7** | |
| | 8 | Net short-term capital gain (loss) (attach Schedule D (Form 1065)) | | **8** | |
| | 9 a | Net long-term capital gain (loss) (attach Schedule D (Form 1065)) | | **9a** | |
| | b | Collectibles (28%) gain (loss) | 9b | | |
| | c | Unrecaptured section 1250 gain (attach statement) | 9c | | |
| | 10 | Net section 1231 gain (loss) (attach Form 4797) | | **10** | |
| | 11 | Other income (loss) (see instructions) Type ▶ | | **11** | |
| **Deductions** | 12 | Section 179 deduction (attach Form 4562) | | **12** | |
| | 13 a | Contributions | | **13a** | |
| | b | Investment interest expense | | **13b** | |
| | c | Section 59(e)(2) expenditures: (1) Type ▶ | Amount ▶ | **13c(2)** | |
| | d | Other deductions (see instructions) Type ▶ | | **13d** | |
| **Self-Employment** | 14 a | Net earnings (loss) from self-employment | | **14a** | (9,712) |
| | b | Gross farming or fishing income | | **14b** | |
| | c | Gross nonfarm income | | **14c** | |
| **Credits** | 15 a | Low-income housing credit (section 42(j)(5)) | | **15a** | |
| | b | Low-income housing credit (other) | | **15b** | |
| | c | Qualified rehabilitation expenditures (rental real estate) (attach Form 3468) | | **15c** | |
| | d | Other rental real estate credits (see instructions) Type ▶ | | **15d** | |
| | e | Other rental credits (see instructions) Type ▶ | | **15e** | |
| | f | Other credits (see instructions) Type ▶ | | **15f** | |
| **Foreign Transactions** | 16 a | Name of country or U.S. possession ▶ | | | |
| | b | Gross income from all sources | | **16b** | |
| | c | Gross income sourced at partner level | | **16c** | |
| | | Foreign gross income sourced at partnership level | | | |
| | d | Passive category ▶ e General category ▶ f Other ▶ | | **16f** | |
| | | Deductions allocated and apportioned at partner level | | | |
| | g | Interest expense ▶ h Other ▶ | | **16h** | |
| | | Deductions allocated and apportioned at partnership level to foreign source income | | | |
| | i | Passive category ▶ j General category ▶ k Other ▶ | | **16k** | |
| | l | Total foreign taxes (check one): ▶ Paid ☐ Accrued ☐ | | **16l** | |
| | m | Reduction in taxes available for credit (attach statement) | | **16m** | |
| | | Other foreign tax information (attach statement) | | | |
| **Alternative Minimum Tax (AMT) Items** | 17 a | Post-1986 depreciation adjustment | | **17a** | |
| | b | Adjusted gain or loss | | **17b** | |
| | c | Depletion (other than oil and gas) | | **17c** | |
| | d | Oil, gas, and geothermal properties-gross income | | **17d** | |
| | e | Oil, gas, and geothermal properties-deductions | | **17e** | |
| | f | Other AMT items (attach statement) | | **17f** | |
| **Other Information** | 18 a | Tax-exempt interest income | | **18a** | |
| | b | Other tax-exempt income | | **18b** | |
| | c | Nondeductible expenses | | **18c** | |
| | 19 a | Distributions of cash and marketable securities | | **19a** | |
| | b | Distributions of other property | | **19b** | |
| | 20 a | Investment income | | **20a** | |
| | b | Investment expenses | | **20b** | |
| | c | Other items and amounts (attach statement) | | | |

EEA                                                                 Form **1065** (2013)

Form 1065 (2013)  PALM STEAK HOUSE, LLC DBA CLUB DIAM                    Page **5**

## Analysis of Net Income (Loss)

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16l . . . . . . . . . . . . . . . . . . . . . . | | | | **1** | (12,233) |

| 2 | Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt Organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|---|
| a | General partners . . . | | | | | | |
| b | Limited partners . . . | | (12,233) | | | | |

## Schedule L   Balance Sheets per Books

| | Assets | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| | | (a) | (b) | (c) | (d) |
| 1 | Cash | | | | |
| 2 a | Trade notes and accounts receivable . . . . . . . . | | | | |
| b | Less allowance for bad debts . . . . . . . . . . . . | | | | |
| 3 | Inventories . . . . . . . . . . . . . . . . | | | | |
| 4 | U.S. government obligations . . . . . . . . . . | | | | |
| 5 | Tax-exempt securities . . . . . . . . . . . | | | | |
| 6 | Other current assets (attach statement) . . . . . . | | | | |
| 7 a | Loans to partners (or persons related to partners) . . | | | | |
| b | Mortgage and real estate loans . . . . . . . . . | | | | |
| 8 | Other investments (attach statement) . . . . . . . | | | | |
| 9 a | Buildings and other depreciable assets . . . . . . . | | | | |
| b | Less accumulated depreciation . . . . . . . . . | | | | |
| 10 a | Depletable assets . . . . . . . . . . . . | | | | |
| b | Less accumulated depletion . . . . . . . . . | | | | |
| 11 | Land (net of any amortization) . . . . . . . . . | | | | |
| 12 a | Intangible assets (amortizable only) . . . . . . . | | | | |
| b | Less accumulated amortization . . . . . . . . . | | | | |
| 13 | Other assets (attach statement) . . . . . . . . . | | | | |
| 14 | Total assets . . . . . . . . . . | | | | |
| | **Liabilities and Capital** | | | | |
| 15 | Accounts payable . . . . . . . . . . . . | | | | |
| 16 | Mortgages, notes, bonds payable in less than 1 year | | | | |
| 17 | Other current liabilities (attach statement) . . . . . | | | | |
| 18 | All nonrecourse loans . . . . . . . . . . . | | | | |
| 19 a | Loans from partners (or persons related to partners) | | | | |
| b | Mortgages, notes, bonds payable in 1 year or more | | | | |
| 20 | Other liabilities (attach statement) . . . . . . . | | | | |
| 21 | Partners' capital accounts . . . . . . . . | | | | |
| 22 | Total liabilities and capital | | | | |

## Schedule M-1   Reconciliation of Income (Loss) per Books With Income (Loss) per Return

Note. Schedule M-3 may be required instead of Schedule M-1 (see instructions).

| | | | | |
|---|---|---|---|---|
| 1 | Net income (loss) per books | 6 | Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): |
| 2 | Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11 not recorded on books this year (itemize): | a | Tax-exempt interest $ |
| 3 | Guaranteed payments (other than health insurance) | 7 | Deductions included on Schedule K, lines 1 through 13d, and 16l, not charged against book income this year (itemize): |
| 4 | Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16l (itemize): | a | Depreciation $ |
| | Depreciation $ | | |
| b | Travel and entertainment $ | 8 | Add lines 6 and 7 . . . . . . . . . . . . . |
| | | 9 | Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 . . . . |
| 5 | Add lines 1 through 4 . . . . . . . . . . . | | |

## Schedule M-2   Analysis of Partners' Capital Accounts

| | | | | |
|---|---|---|---|---|
| 1 | Balance at beginning of year . . . . . . . . . | 6 | Distributions: a Cash . . . . . . . . . . . . . |
| 2 | Capital contributed:  a Cash | | b Property . . . . . . . . . . |
| | b Property . . . . . . . | 7 | Other decreases (itemize): |
| 3 | Net income (loss) per books . . . . . . . . . | | |
| 4 | Other increases (itemize): | 8 | Add lines 6 and 7 . . . . . . . . . . . |
| 5 | Add lines 1 through 4 . . . . . . . . . | 9 | Balance at end of year. Subtract line 8 from line 5 |

EEA                                                            Form **1065** (2013)

CONFIDENTIAL!

Form **1125-A**

(Rev. December 2012)

Department of the Treasury
Internal Revenue Service

## Cost of Goods Sold

▶ Attach to Form 1120, 1120-C, 1120-F, 1120S, 1065, or 1065-B.
▶ Information about Form 1125-A and its instructions is at www.irs.gov/form1125a.

OMB No. 1545-2225

Name

PALM STEAK HOUSE, LLC DBA CLUB DIAM

| | | |
|---|---|---|
| 1 | Inventory at beginning of year | 1 |
| 2 | Purchases | 2 |
| 3 | Cost of labor | 3 |
| 4 | Additional section 263A costs (attach schedule) | 4 |
| 5 | Other costs (attach schedule) | 5 |
| 6 | **Total.** Add lines 1 through 5 | 6 |
| 7 | Inventory at end of year | 7 |

8  **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on Form 1120, page 1, line 2 or the appropriate line of your tax return (see instructions) ............. 8

9a  Check all methods used for valuing closing inventory:

   (i) ☒ Cost

   (ii) ☐ Lower of cost or market

   (iii) ☐ Other (Specify method used and attach explanation.) ▶

b  Check if there was a writedown of subnormal goods .......................................... ▶ ☐

c  Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) .......... ▶ ☐

d  If the LIFO inventory method was used for this tax year, enter amount of closing inventory computed under LIFO ... 9d

e  If property is produced or acquired for resale, do the rules of section 263A apply to the entity (see instructions)? .... ☐ Yes ☒ No

f  Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If "Yes," attach explanation .................................................. ☐ Yes ☐ No

CONFIDENTIAL!

For Paperwork Reduction Act Notice, see instructions

EEA

Form **1125-A** (Rev. 12-2013)

Schedule K-1
(Form 1065)

Department of the Treasury
Internal Revenue Service

**2013**

For calendar year 2013, or tax

year beginning _____ , 2013

ending _____ , 20

651113

| Final K-1 | | Amended K-1 | OMB No. 1545-0099 |

**Partner's Share of Income, Deductions,
Credits, etc.**

▶ See page 2 of form and separate instructions.

**Part I    Information About the Partnership**

**A**  Partnership's employer identification number
20-8626763

**B**  Partnership's name, address, city, state, and ZIP code
PALM STEAK HOUSE, LLC DBA CLUB DIAM
1000 N CONGRESS AVE
WEST PALM BEACH, FL 33409

**C**  IRS Center where partnership filed return
Cincinnati

**D**  Check if this is a publicly traded partnership (PTP)

**Part II    Information About the Partner**

**F**  Partner's name, address, city, state, and ZIP code
SUZANNE FARESE TTEE PBGC TRUST
65 NE 4TH AVE UNIT 12
DELRAY BEACH, FL 33483

**G**  [X] General partner or LLC member-manager   [ ] Limited partner or other LLC member

**H**  [X] Domestic partner   [ ] Foreign partner

**I1**  What type of entity is this partner?  INDI___

**I2**  If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here (see instructions)

**J**  Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 65.3800000 % | 65.3800000 % |
| Loss | 65.3800000 % | 65.3800000 % |
| Capital | 65.3800000 % | 65.3800000 % |

**K**  Partner's share of liabilities at
Nonrecourse . . . . . . . . $
Qualified nonrecourse financing $
Recourse . . . . . . . . . $

**L**  Partner's capital account analysis
Beginning capital account . . . . $
Capital contributed during the year $
Current year increase (decrease) . $
Withdrawals & distributions . . $ (                    )
Ending capital account . . . . $

[ ] Tax basis   [ ] GAAP   [ ] Section 704(b) book
[ ] Other (explain)

**M**  Did the partner contribute property with a built-in gain or loss?
[ ] Yes   [ ] No
If "Yes", attach statement (see instructions)

**Part III    Partner's Share of Current Year Income,
Deductions, Credits, and Other Items**

| | | |
|---|---|---|
| 1 | Ordinary business income (loss) | (7,998) |
| 2 | Net rental real estate income (loss) | |
| 3 | Other net rental income (loss) | |
| 4 | Guaranteed payments | |
| 5 | Interest income | |
| 6a | Ordinary dividends | |
| 6b | Qualified dividends | |
| 7 | Royalties | |
| 8 | Net short-term capital gain (loss) | |
| 9a | Net long-term capital | |
| 9b | Co___ | |
| | Unrecaptured se___ 125___ | |
| | Net section ___ (loss) | |
| | ___er in___ (loss) | |
| 12 | Section 179 deduction | |
| 13 | Other deductions | |
| 14 | Self-employment earnings (loss) | A (7,998) |

| 15 | Credits | |
|---|---|---|
| 16 | Foreign transactions | |
| 18 | Tax-exempt income and nondeductible expenses | |
| 19 | Distributions | |
| 20 | Other information | |

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.       IRS.gov/form1065       Schedule K-1 (Form 1065) 2013

EEA

Schedule K-1
(Form 1065)

**2013**

Department of the Treasury
Internal Revenue Service

For calendar year 2013, or tax
year beginning _____ , 2013
ending _____ , 20 ___

**Partner's Share of Income, Deductions, Credits, etc.**

▶ See page 2 of form and separate instructions.

OMB No. 1545-0099

651113

| Final K-1 | Amended K-1 |

**Part III**   **Partner's Share of Current Year Income, Deductions, Credits, and Other items**

## Part I   Information About the Partnership

A   Partnership's employer identification number
20-8626763

B   Partnership's name, address, city, state, and ZIP code
PALM STEAK HOUSE, LLC DBA CLUB DIAM
1000 N CONGRESS AVE
WEST PALM BEACH, FL 33409

C   IRS Center where partnership filed return
Cincinnati

D   ☐ Check if this is a publicly traded partnership (PTP)

## Part II   Information About the Partner

E   Partner's identifying number

F   Partner's name, address, city, state, and ZIP code
DAVID M GOLDSTEIN TTEE NOLITA TRUST
1441 BRICKELL AVENUE SUITE 1003
MIAMI, FL 33131

G   ☒ General partner or LLC member-manager   ☐ Limited partner or other LLC member

H   ☒ Domestic partner   ☐ Foreign partner

I1   What type of entity is this partner?   INDI...

I2   If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here (see instructions) ☐

J   Partner's share of profit, loss, and capital (see instructions):

|        | Beginning  | Ending     |
|--------|-----------|-----------|
| Profit | 14.0100000 % | ...0100000 % |
| Loss   | 14.0100000 % | ...0100000 % |
| Capital| 14.0100000 % | ...0100000 % |

K   Partner's share of liabilities at...
Nonrecourse . . . . . . . $
Qualified nonr... financing $
Recourse . . . . . . . $

L   Partner's capital account analysis
Beginning capital account . . . . . . $
Capital contributed during the year . . . $
Current year increase (decrease) . . . $
Withdrawals & distributions . . . . $ (            )
Ending capital account . . . . . . $

☐ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

M   Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☐ No
If "Yes", attach statement (see instructions)

| 1 | Ordinary business income (loss) | (1,714) | 15 | Credits |
| 2 | Net rental real estate income (loss) | | 16 | Foreign transactions |
| 3 | Other net rental income (loss) | | | |
| 4 | Guaranteed payments | | | |
| 5 | Interest income | | | |
| 6a | Ordinary dividends | | | |
| 6b | Qualified dividends | | | |
| 7 | Royalties | | | |
| 8 | Net short-term capital ... (loss) | | | |
| 9a | Net long-term cap... | | 17 | Alternative minimum tax (AMT) items |
| 9b | Co... | | | |
| 9c | Unrecaptured sec... | | | |
| 10 | Net section ... (loss) | | 18 | Tax-exempt income and nondeductible expenses |
| 11 | ...er in... (loss) | | | |
| 12 | Section 179 deduction | | 19 | Distributions |
| 13 | Other deductions | | | |
| | | | 20 | Other information |
| 14 | Self-employment earnings (loss) A | (1,714) | | |

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.      IRS.gov/form1065      Schedule K-1 (Form 1065) 2013
EEA

CONFIDENTIAL!

651113

**Schedule K-1**
**(Form 1065)**

Department of the Treasury
Internal Revenue Service

**2013**

For calendar year 2013, or tax

year beginning _____ , 2013
ending _____ , 20 ___

**Partner's Share of Income, Deductions, Credits, etc.**

▶ See page 2 of form and separate instructions.

| | Final K-1 | | Amended K-1 | OMB No. 1545-0099 |
|---|---|---|---|---|

**Part III    Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

**Part I    Information About the Partnership**

**A**  Partnership's employer identification number

20-8626763

**B**  Partnership's name, address, city, state, and ZIP code

PALM STEAK HOUSE, LLC DBA CLUB DIAM
1000 N CONGRESS AVE
WEST PALM BEACH, FL 33409

**C**  IRS Center where partnership filed return

Cincinnati

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II    Information About the Partner**

**E**  Partner's identifying number

**F**  Partner's name, address, city, state, and ZIP code

BARRY RODERMAN
500 WEST CYPRESS CREEK ROAD SUITE
FORT LAUDERDALE, FL 33309

**G** ☐ General partner or LLC
member-manager
☒ Limited partner or other LLC
member

**H** ☒ Domestic partner     ☐ Foreign partner

**I1**  What type of entity is this partner?  INDIVIDUAL

**I2**  If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐
(see instructions)

**J**  Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 14.0100000 % | 14.0100000 % |
| Loss | 14.0100000 % | 14.0100000 % |
| Capital | 14.0100000 % | 14.0100000 % |

**K**  Partner's share of liabilities:

Nonrecourse . . . . . . . . $
Qualified nonrecourse financing . $
Recourse . . . . . . . . . . $

**L**  Partner's capital account analysis:

Beginning capital account . . . . $
Capital contributed during the year . $
Current year increase (decrease) . $
Withdrawals & distributions . . . $ (                    )
Ending capital account . . . . . $

☐ Tax basis  ☐ GAAP  ☐ Section 704(b) book
☐ Other (explain)

**M**  Did the partner contribute property with a built-in gain or loss?

☐ Yes     ☐ No
If "Yes", attach statement (see instructions)

| | | |
|---|---|---|
| 1 Ordinary business income (loss) | | 15 Credits |
| | (1,714) | |
| 2 Net rental real estate income (loss) | | 16 Foreign transactions |
| 3 Other net rental income (loss) | | |
| 4 Guaranteed payments | | |
| 5 Interest income | | |
| 6a Ordinary dividends | | |
| 6b Qualified dividends | | |
| 7 Royalties | | |
| 8 Net short-term capital gain (loss) | | |
| 9a Net long-term capital gain (loss) | | 17 Alternative minimum tax (AMT) items |
| 9b Collectibles (28%) gain (loss) | | |
| 9c Unrecaptured section 1250 gain | | |
| 10 Net section 1231 gain (loss) | | 18 Tax-exempt income and nondeductible expenses |
| 11 Other income (loss) | | |
| 12 Section 179 deduction | | 19 Distributions |
| 13 Other deductions | | |
| 14 Self-employment earnings (loss) | | 20 Other information |

*See attached statement for additional information.

For IRS Use Only

CONFIDENTIAL!

**Schedule K-1
(Form 1065)**

**2013**

Department of the Treasury
Internal Revenue Service

For calendar year 2013, or tax
year beginning _____, 2013
ending _____, 20

OMB No. 1545-0099

☐ Final K-1    ☐ Amended K-1    651113

**Partner's Share of Income, Deductions,
Credits, etc.**

▶ See page 2 of form and separate instructions.

## Part III   Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | |
|---|---|---|---|
| **1** Ordinary business income (loss) | (807) | **15** Credits | |
| **2** Net rental real estate income (loss) | | **16** Foreign transactions | |
| **3** Other net rental income (loss) | | | |
| **4** Guaranteed payments | | | |
| **5** Interest income | | | |
| **6a** Ordinary dividends | | | |
| **6b** Qualified dividends | | | |
| **7** Royalties | | | |
| **8** Net short-term capital (loss) | | | |
| **9a** Net long-term capital | | **17** Alternative minimum tax (AMT) items | |
| **9b** Co... | | | |
| **9c** Unrecaptured sec 1250... | | | |
| ... section (2) (loss) | | **18** Tax-exempt income and nondeductible expenses | |
| ...er inco (loss) | | | |
| **12** Section 179 deduction | | **19** Distributions | |
| **13** Other deductions | | | |
| | | **20** Other information | |
| **14** Self-employment earnings (loss) | | | |

## Part I   Information About the Partnership

**A** Partnership's employer identification number
20-8626763

**B** Partnership's name, address, city, state, and ZIP code
PALM STEAK HOUSE, LLC DBA CLUB DIAM
1000 N CONGRESS AVE
WEST PALM BEACH, FL 33409

**C** IRS Center where partnership filed return
Cincinnati

**D** ☐ Check this if this is a publicly traded partnership (PTP)

## Part II   Information About the Partner

**E** Partner's identifying number

**F** Partner's name, address, city, state, and ZIP code
MARC SCOTT
21100 95TH AVE #227
BOCA RATON, FL 33428

**G** ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner?    INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐
(see instructions)

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 6.6000000 | 5.0000000 % |
| Loss | 6.6000000 | 5.0000000 % |
| Capital | 6.6000000 | 5.0000000 % |

**K** Partner's share of liabilities a...
Nonrecourse . . . . . . $ _____
Qualified nonr... . . . $ _____
Recourse . . . . . . . $ _____

**L** Partner's capital account analys...
Beginning capital account . . . . . $ _____
Capital contributed during the year . . . $ _____
Current year increase (decrease) . . . . $ _____
Withdrawals & distributions . . . . . $ ( _____ )
Ending capital account . . . . . . $ _____

☐ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☐ No
If "Yes", attach statement (see instructions)

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.    IRS.gov/form1065    Schedule K-1 (Form 1065) 2013
EEA

Form **4562**

Department of the Treasury
Internal Revenue Service   (99)

# Depreciation and Amortization
## (Including Information on Listed Property)

▶ See separate instructions.    ▶ Attach to your tax return.

OMB No. 1545-0172

**2013**

Attachment
Sequence No. **179**

Name(s) shown on return
PALM STEAK HOUSE, LLC DBA CLUB D

Business or activity to which this form relates
FORM 1065

Identifying number

**Part I**  Election To Expense Certain Property Under Section 179

Note: If you have any listed property, complete Part V before you complete Part I.

| | | |
|---|---|---|
| 1 | Maximum amount (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . | **1** |
| 2 | Total cost of section 179 property placed in service (see instructions) . . . . . . . . . . . . | **2** |
| 3 | Threshold cost of section 179 property before reduction in limitation (see instructions) . . . . . . . . | **3** |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- . . . . . . . . . . . | **4** |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions . . . . . . . . . . . . . . . . . . . . . . . | **5** |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|---|
| | | | |
| | | | |

| | | | |
|---|---|---|---|
| 7 | Listed property. Enter the amount from line 29 . . . . . . . . . . . . . | **7** | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 . . . . | **8** | |
| 9 | Tentative deduction. Enter the smaller of line 5 or line 8 . . . . . . . . . . . . . | **9** | |
| 10 | Carryover of disallowed deduction from line 13 of your 2012 Form 4562 . . . . . . . . | **10** | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instructions) | **11** | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 . . . . | **12** | |
| 13 | Carryover of disallowed deduction to 2014. Add lines 9 and 10, less line 12 ▶ | **13** | |

Note: Do not use Part II or Part III below for listed property. Instead, use Part V.

**Part II**  Special Depreciation Allowance and Other Depreciation (Do not include listed property.) (See instructions.)

| | | |
|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) . . . . . . . . . . . . . . . . . . . | **14** |
| 15 | Property subject to section 168(f)(1) election . . . . . . . . . . . . . . . . | **15** |
| 16 | Other depreciation (including ACRS) . . . . . . . . . . . . . . . . . . | **16** |

**Part III**  MACRS Depreciation (Do not include listed property.) (See instructions.)

Section A

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2013 . . . . . . . . . . | **17** | 12,233 |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here . . . . . . . . . . . . . . . . . . . . . ▶ ☐ | | |

Section B - Assets Placed in Service During 2013 Tax Year Using the General Depreciation System

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only—see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a  3-year property | | | | | | |
| b  5-year property | | | | | | |
| c  7-year property | | | | | | |
| d  10-year property | | | | | | |
| e  15-year property | | | | | | |
| f  20-year property | | | | | | |
| g  25-year property | | | 25 yrs. | | S/L | |
| h  Residential rental property | | | 27.5 yrs. | MM | S/L | |
| | | | 27.5 yrs. | MM | S/L | |
| i  Nonresidential real property | | | 39 yrs. | MM | S/L | |
| | | | | MM | S/L | |

Section C - Assets Placed in Service During 2013 Tax Year Using the Alternative Depreciation System

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a  Class life | | | | | S/L | |
| b  12-year | | | 12 yrs. | | S/L | |
| c  40-year | | | 40 yrs. | MM | S/L | |

**Part IV**  Summary (See instructions.)

| | | |
|---|---|---|
| 21 | Listed property. Enter amount from line 28 . . . . . . . . . . . . . . . . . | **21** | |
| 22 | Total. Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations - see instructions . . | **22** | 12,233 |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs . . . . . . . . . . . | **23** | |

For Paperwork Reduction Act Notice, see separate instructions.

Form 4562 (2013)

EEA

CONFIDENTIAL!

**Form 1065**

## K-K1 Comparison Worksheet

(Keep for your records)

**2013**

PARTNERSHIP NAME

PALM STEAK HOUSE, LLC DBA CLUB DIAM

EIN

| | Description | Schedule K | K-1 | |
|---|---|---|---|---|
| 1 | Ordinary business income (loss) . . . . . . . | (12,233) | (12,233) | |
| 14 A | Net earnings (loss) from self-employment . . | (9,712) | (9,712) | |

CONFIDENTIAL!

WK_PCOMP.LD



| | | | | |
|---|---|---|---|---|
| | positive amount . . . . . . . . . . . . . . . . . . . . . . | 1d | | |
| 2 | Net gain from Form 4797, Part II, line 17, included on line 1a above . . . . . | 2 | | |
| 3a | Subtract line 2 from line 1e. If line 1e is a loss, increase the loss on line 1e by the amount on line 2 | 3a | (12,233) | |
| b | Part of line 3a allocated to limited partners, estates, trusts, corporations, exempt organizations, and IRAs . . . . . . . . . . . . . . . . . . . . . . . | 3b | (2,521) | |
| c | Subtract line 3b from line 3a. If line 3a is a loss, reduce the loss on line 3a by the amount on line 3b. Include each individual general partner's share in box 14 of Schedule K-1, using code A . . . . . . . . . . . . . . | 3c | (9,712) | |
| 4a | Guaranteed payments to partners (Schedule K, line 4) derived from a trade or business as defined in section 1402(c) (see instructions) . . . . . . . . . . . | 4a | | |
| b | Part of line 4a allocated to individual limited partners for other than services and to estates, trusts, corporations, exempt organizations, and IRAs . . . . . . . . | | | |
| c | Subtract line 4b from line 4a. Include each individual general partner's share and each individual limited partner's share in box 14 of Schedule K-1, using code A . . . . . . . . . . . . . . | 4c | | |
| 5 | Net earnings (loss) from self-employment. Combine lines 3c and 4c. Enter here and on Schedule K, line 14a | | (9,712) | |

WK_SE.LD

| | Worksheet for Figuring Net Earnings (Loss)<br>From Self-Employment<br>(Keep for your records) | | 2013 |
|---|---|---|---|

Name(s) as shown on return

PALM STEAK HOUSE, LLC DBA CLUB DIAM

Identifying Number

| | | | |
|---|---|---|---|
| 1a | Ordinary business income (loss) (Schedule K, line 1) . . . . . . . . . . . . . | 1a | (12,233) |
| b | Net income (loss) from certain rental real estate activities (see instructions) . . . | 1b | |
| c | Other net rental income (loss) (Schedule K, line 3c) . . . . . . . . . . . . . | 1c | |
| d | Net loss from Form 4797, Part II, line 17, included on line 1a above. Enter as a | | |

CONFIDENTIAL!

| | Capital Account Reconciliation | | | | 2013 |
| | (Keep for your records) | | | | Page 1 |

**PARTNERSHIP NAME**

PALM STEAK HOUSE, LLC DBA CLUB DIAM

| Partner Name | Beginning Capital Account | Capital Contributed During Year | Partner's Share of Lines 3, 4 and 7 Form 1065, Sch M-2 | Withdrawals and Distributions | Ending Capital Account |
|---|---|---|---|---|---|
| SUZANNE FARESE TTEE PBGC TRUST | | | | | |
| DAVID M GOLDSTEIN TTEE NOLITA T | | | | | |
| BARRY RODERMAN | | | | | |
| MARC SCOTT | | | | | |
| | | | | | |
| TOTALS | | | | | |

WK_PCAR.LD



**Depreciation Detail Listing**

FORM 1065

**For your records only**

**2013**

PAGE 1

Social security number/EIN
20-8626763

\* Item was disposed of during current year

Name(s) as shown on return
PALM STEAK HOUSE, LLC DBA

| No. | Description | Section 179 | Depreciation Basis | Life | | Prior expense | Bonus depreciation | AMT Current |
|---|---|---|---|---|---|---|---|---|
| 1 | SMOKEETER U | | | | | | | 1,003 |
| 2 | FURNITURE | | | | | | | 1,031 |
| 3 | COMPUTER | | | | | | | |
| 4 | SIGNS | | | | DB HY | | | 1,698 |
| 5 | GLASSWASHER | | | | DB HY | | | 1,165 |
| 6 | COOLERS | | | | DB HY | | | 490 |
| 7 | SINKS & STATIONS | | | | DB HY | | | 171 |
| 8 | POS SYSTEM | | | | DB HY | | | |
| 9 | SPEAKERS | 12,1 | | | DB HY | | | 1,088 |
| 10 | TVS & CAMERAS | 31,259 | | | DB HY | | | 2,791 |
| 11 | BAR EQUIPMENT | 10,383 | | | HY | | | 927 |
| 12 | MUSIC CENTER | 15,659 | | | | | | 1,398 |
| 13 | FURNITURE | | | | | PY | 1,126 | 100 |
| 14 | KITCHEN | | | | | PY | 3,506 | 313 |
| 15 | GENERATOR | 100.00 | | | | PY | 650 | 58 |
| 16 | REFRIDGERATION COMPR | 100.00 | | | | PY | 23,163 | |
| 17 | 2 NEW AC UNITS | 100.00 | | | | PY | 9,800 | |
| | Totals | 199,803 | 161,558 | | | | 187,7 | 12,233 |

Land Amount:
Net Depreciable Cost: 199,803

| | |
|---|---|
| | 12,233 |

EXHIBIT E

LAW OFFICES
## BARRY G. RODERMAN & ASSOCIATES, P.A.
PROFESSIONAL ASSOCIATION

One East Broward Blvd. Suite 700
Ft. Lauderdale, Florida 33301
Telephone (954) 761-8810        Facsimile (954) 761-9911

| | | CHECK # | TO | PAYMENTS | BALANCE |
|---|---|---|---|---|---|
| | $1,200,000.00 Deposit | | | | |
| 9/20/12 | | | | | $1,200,000.00 |
| 9/20/12 | | 2054 | Dude | $400,000.00 | $800,000.00 |
| 9/20/12 | | 2055 | Aldo Baltrano | $18,400.00 | $781,600.00 |
| 9/20/12 | | 2056 | Suzanne Farese | $87,500.00 | $694,100.00 |
| 9/20/12 | | 2057 | Barry Roderman | $18,750.00 | $675,350.00 |
| 9/20/12 | | 2058 | David Goldstein | $18,750.00 | $656,600.00 |
| 10/11/12 | | 2062 | Div. Hotels/Rest. | $800.00 | $655,800.00 |
| 10/10/12 | | 2063 | Div. WC | $17,010.42 | $638,789.58 |
| 10/15/12 | | 2064 | Congress Mgmt. | $5,400.00 | $633,389.58 |
| | | Wire | David Goldstein | $70,000.00 | $563,389.58 |
| 10/26/12 | | 2065 | Linda Induici | $4,900.00 | $558,489.58 |
| 10/26/12 | | 2066 | Suzanne Farese | $65,000.00 | $493,489.58 |
| 10/26/12 | Check Voided | 2067 | Mark Goldstein | $15,000.00 | $478,489.58 |
| 10/30/12 | $1,208,789.09 | | Wire Transfer | | $1,702,278.67 |
| 10/31/12 | | 2068 | Three Women Inc | $35,761.44 | $1,666,517.23 |
| 10/31/12 | | 2069 | Mark Scott | $300,000.00 | $1,366,517.23 |
| 10/31/12 | | 2070 | Suzanne Farese | $870,322.06 | $496,195.17 |
| 10/31/12 | | 2071 | Barry Roderman | $204,767.58 | $291,427.59 |
| 10/31/12 | | 2072 | John Caruso | $130,000.00 | $161,427.59 |
| 11/01/12 | | 2073 | Suzanne Farese | $124.50 | $161,303.09 |
| 11/01/12 | | 2059 | Marc Scott | $542.00 | $160,761.09 |
| 11/05/12 | Check voided | 2074 | David Goldstein | $72,477.00 | $88,284.09 |
| 11/xx/12 | Wire transfer | | David Goldstein | $72,477.00 | $88,284.09 |
| 11/19/12 | Wire transfer [Bruce Loren Esq Charging Lien] | | Goldstein & Goldstein PA | $46,000.00 | $42,284.09 |
| 11/29/12 | | 2636 2637 2638 | Sharon R. Bock, Clerk & Comptroller Palm Beach County | $37.50 $37.50 $37.50 | $42,171.59 |
| 01/10/13 | | 2081 | Congress Plaza LLC (recording deed) | $2003.20 | $40,168.39 |
| 01/17/13 | Cashier's Check | | Tax Collector PBC | $26,701.66 | $13,466.73 |
| 01/18/13 | Deposit $27,101.24 | | | | $40,567.97 |
| 01/17/13 | Recording Fees | 2082 | Barry G. Roderman | 112.50 | $40,455.47 |
| 04/01/13 | Charging Lien | 2085 | Bruce Loren | 5,500.00 | $34,955.47 |
| 04/11/13 | Process Server | 2087 | Legal Ease | 45.00 | $34,910.47 |
| 05/16/13 | Court Reporter | 2089 | Alpha & Omega | 1279.85 | $33,630.62 |

| 7/1/13 | Court Reporter | 2094 | Collins Reporting Service | | $1,593.75 | $32,036.87 |
|---|---|---|---|---|---|---|
| 7/3/13 | Suzanne Farese | 2095 | Disbursement | | $25,760.00 | $6,276.87 |
| 7/3/13 | Barry Roderman | 2096 | Disbursement | | $6,240.00 | $36.87 |

**2**


CNLBank

**Item Detail**

| tranDate | account | amount | serial | tranCode | aba | sequence |
|---|---|---|---|---|---|---|
| 09/24/2012 | | $400,000.00 | | 000172 | | |

Check 1 of 1

Status: Paid ✔

View deposit | Add to Multi-Item | Back to List

2054

BARRY G. RODERMAN & ASSOCIATES, P.A.
IOTA TRUST ACCOUNT

PAY TO THE ORDER OF _Congress Management LLC_ DATE _Sept 20, 20/2_ 63-1428-631

_Four Hundred thousand and 00/100_ $ *400,000.00*

DOLLARS

CNLBank.
Fort Lauderdale, Florida, Fort Lauderdale Office

FOR _Reduction ; Modification Note pymt._

ENDORSE HERE

For Deposit to the Credit of
the within named payee
ABSENCE OF ENDORSEMENT GUARANTEED
PNC Bank - West Okeechobee 700



# CNLBank

## Item Detail

| tranDate | account | amount | serial | tranCode | aba | sequence |
|---|---|---|---|---|---|---|
| 09/24/2012 | | $18,400.00 | | | | |

Check 1 of 1

Status: Paid ✔

View deposit...    Add to Multi-Item    Back to List



2055

BARRY G. RODERMAN & ASSOCIATES, P.A.
IOTA TRUST ACCOUNT

PAY TO THE ORDER OF  Aldo Beltanno, Esq.
Eighteen thousand Four Hundred and 00/100  DOLLARS

DATE Sept 20, 2012

$18,400.00

CNLBank.
Fort Lauderdale, Florida / Fort Lauderdale Office

FOR Fees / Costs / NC Ct

53-1428-631

PAY TO THE ORDER OF
BANK OF AMERICA
W. Palm Beach, FL 33409
FOR DEPOSIT ONLY



**CNLBank**

## Item Detail

Check 1 of 1

Status: Paid ✔

| tranDate | account | amount | serial | tranCode | aba | sequence |
|----------|---------|--------|--------|----------|-----|----------|
| 09/24/2012 | | $87,500.00 | | | 0 | |

[View deposit]   [Add to Multi-Item]   [Back to List]

---

2056

BARRY G. RODERMAN & ASSOCIATES, P.A.
IOTA TRUST ACCOUNT

DATE Sept 20, 2012    63-1428-631

PAY TO THE ORDER OF  Suzanne Farese ————————    $ 87,500.00

Eighty seven thousand Five Hundred + 00/102    DOLLARS

**CNLBank.**
Fort Lauderdale, Florida · Fort Lauderdale Office

FOR Distribution / FBSH

---



## CNLBank.

## Item Detail

Check 1 of 2                                                          Status: Paid ✔

| tranDate | account | amount | serial | tranCode | aba | sequence |
|----------|---------|--------|--------|----------|-----|----------|
| 09/24/2012 | | $18,750.00 | | | | |

View deposit          Add to Multi-Item                    Back to List

**BARRY G. RODERMAN & ASSOCIATES, P.A.**
IOTA TRUST ACCOUNT

2058

DATE Sept 20, 2012    63-1428-631

PAY TO THE ORDER OF  BARRY G. Roderman                    $18,750.00

Eighteen Thousand Seven Hundred Fifty                    DOLLARS

CNLBank.
Fort Lauderdale, Florida / Fort Lauderdale Office

FOR  distribution / Pll



## CNLBank

## Item Detail

Check 2 of 2

Status: Paid ✔

| tranDate | account | amount | serial | tranCode | aba | sequence |
|----------|---------|--------|--------|----------|-----|----------|
| 09/24/2012 | | $18,750.00 | | | | |

View deposit        Add to Multi-Item        Back to List





## CNLBank

**Item Detail**

Check 1 of 1
Status: Paid ✔

| tranDate | account | amount | serial | tranCode | aba | sequence |
|----------|---------|--------|--------|----------|-----|----------|
| 10/18/2012 | | $800.00 | | | | |

View deposit          Add to Multi-Item          Back to List



BARRY G. RODERMAN & ASSOCIATES, P.A.
IOTA TRUST ACCOUNT

2062

63-1428-631

DATE 10/11/12

PAY TO THE ORDER OF _Division of Hotels & Restaurants_     $ 800.00

_Eight Hundred  +00/100_     DOLLARS

File# 228165   **CNLBank**
For Lauderdale, Florida - Fort Lauderdale Office
FOR Case # 2012033877/ Lic # 6020293

⑆0000080000⑈

FEDERAL RESERVE BOARD OF GOVERNORS REG CC

2264   231 94

DO NOT ....DBPR - Location 79001.99.. IS LINE

Pay to the Order of
Bank of America
Chief Financial Officer of Florida
CIU-Revenue
ENDORSE HERE





## CNLBank

**Item Detail**

|  |  |  | Check 1 of 1 |  | Status: Paid ✔ |  |
|---|---|---|---|---|---|---|
| tranDate | account | amount | serial | tranCode | aba | sequence |
| 10/23/2012 | | $5,400.00 | | | | |

View deposit | Add to Multi-Item | Back to List



BARRY G. RODERMAN & ASSOCIATES, P.A.
IOTA TRUST ACCOUNT

2064

63-1428-631

DATE 10 15 12

PAY TO THE ORDER OF Congress Management LLC    $ 5,400.00

Five Thousand Four Hundred & 00/100    DOLLARS

CNLBank.
Fort Lauderdale, Florida - Fort Lauderdale Office

FOR Dude/ Congress Mgmt / Interest

CREDITED TO ACCOUNT OF
WITHIN NAMED PAYEE
FOR DEPOSIT ONLY
JPMorgan Chase Bank, N.A.



## CNLBank

## Item Detail

Check 1 of 1                                  Status: Paid ✔

| tranDate | account | amount | serial | tranCode | aba | sequence |
|----------|---------|--------|--------|----------|-----|----------|
| 10/29/2012 | | $4,900.00 | | | | |

View deposit          Add to Multi-Item          Back to List



BARRY G. RODERMAN & ASSOCIATES, P.A.
IOTA TRUST ACCOUNT

2065

PAY TO THE ORDER OF  Linda Induici

DATE  10/26/12

63-1428-631

Four Thousand Nine Hundred 400/100

$4,900.00

DOLLARS

CNLBank

Fort Lauderdale, Florida - Fort Lauderdale Office

FOR  Casual Labor CleanUp

For Deposit Only



# CNLBank

## Item Detail

Check 1 of 1                                    Status: Paid ✔

| tranDate | account | amount | serial | tranCode | aba | sequence |
|----------|---------|--------|--------|----------|-----|----------|
| 10/29/2012 | | $65,000.00 | | | | |

View deposit          Add to Multi-Item          Back to List



BARRY G. RODERMAN & ASSOCIATES, P.A.
IOTA TRUST ACCOUNT

2066

63-1428-631

DATE 10/26/12

PAY TO THE ORDER OF Suzanne Farese _____ $65,000.00

Sixty Five Thousand + 00/100 _____ DOLLARS

CNLBank
Fort Lauderdale, Florida - Fort Lauderdale Office

FOR Payment of Loans Made by SF to BSH

14



## CNLBank

**Item Detail**

| tranDate | account | amount | serial | tranCode | aba | sequence |
|---|---|---|---|---|---|---|
| 11/13/2012 | | $35,761.44 | | | | |

Check 1 of 1                                                    Status: Paid ✔

View deposit        Add to Multi-Item        Back to List



2068

**BARRY G. RODERMAN & ASSOCIATES, P.A.**
IOTA TRUST ACCOUNT

63-1428-631

DATE 10/31/12

PAY TO THE ORDER OF _Three Women Inc._ _____ |$35,761.44

_Thirty-Five Thousand Seven Hundred Sixty-one + 44/100_____ DOLLARS

## CNLBank.

Fort Lauderdale, Florida · Fort Lauderdale Office

FOR _Pay off license loan_____

ENDORSE HERE

PAY TO THE ORDER OF
BB&T (BRANCH BANKING & TRUST)
2631913367
FOR DEPOSIT ONLY
THREE WOMEN INC



## CNLBank

### Item Detail

Check 1 of 1                                          Status: Paid ✔

| tranDate | account | amount | serial | tranCode | aba | sequence |
|----------|---------|--------|--------|----------|-----|----------|
| 11/02/2012 | | $300,000.00 | | | | |

View deposit          Add to Multi-Item          Back to List



BARRY G. RODERMAN & ASSOCIATES, P.A.
IOTA TRUST ACCOUNT

2069

63-1428-631

DATE 10/31/12

PAY TO THE ORDER OF  Mark Scott                              $ 300,000.00

Three Hundred Thousand +00/100                      DOLLARS

CNLBank.
Fort Lauderdale, Florida - Fort Lauderdale Office

FOR Loan Repayment / Equity Dst.

CREDITED TO ACCOUNT OF
WITHIN NAMED PAYEE
FOR DEPOSIT ONLY
JP Morgan Chase Bank, N.A.

13625 2990
deposit only



**CNLBank**

## Item Detail

Check 1 of 1                                                      Status: Paid ✔

| tranDate | account | amount | serial | tranCode | aba | sequence |
|----------|---------|--------|--------|----------|-----|----------|
| 11/01/2012 | ▮▮▮▮ | $870,322.06 | ▮ | ▮▮▮ | ▮▮▮ | ▮▮▮ |

View deposit      Add to Multi-Item      Back to List



2070

**BARRY G. RODERMAN & ASSOCIATES, P.A.**
IOTA TRUST ACCOUNT

63-1428-631

DATE 10/31/12

PAY TO THE ORDER OF  Suzanne Farese    $ 870,322.06

Eight Hundred Seventy Thousand, Three Hundred Twenty-two + 06/100 DOLLARS

**CNLBank**
Fort Lauderdale, Florida - Fort Lauderdale Office

FOR Net Proceeds



# CNLBank

## Item Detail

Check 1 of 1                          Status: Paid ✔

| tranDate | account | amount | serial | tranCode | aba | sequence |
|----------|---------|--------|--------|----------|-----|----------|
| 10/31/2012 | ▮▮▮▮ | $204,767.58 | ▮▮▮▮ | ▮▮▮ | ▮▮▮ | ▮▮▮▮ |

View deposit          Add to Multi-Item          Back to List



2071

BARRY G. RODERMAN & ASSOCIATES, P.A.
IOTA TRUST ACCOUNT

63-1428-631

DATE  10/31/12

PAY
TO THE
ORDER OF  Barry G. Roderman                          $204,767.58

Two Hundred Four Thousand Seven Hundred Sixty-seven & 58/100 DOLLARS

CNLBank.
Fort Lauderdale, Florida · Fort Lauderdale Office

FOR  Net Proceeds







# CNLBank

**Item Detail**

Check 1 of 1                                    Status: Paid ✔

| tranDate | account | amount | serial | tranCode | aba | sequence |
|----------|---------|--------|--------|----------|-----|----------|
| 12/07/2012 | | $124.50 | | | | |

View deposit            Add to Multi-Item            Back to List



BARRY G. RODERMAN & ASSOCIATES, P.A.
IOTA TRUST ACCOUNT

2073

63-1428-631

PAY TO THE ORDER OF   Suzanne Farese          DATE  11/1/12      $ 124.50

One Hundred Twenty-Four & 50/100                          DOLLARS

CNLBank.

Fort Lauderdale, Florida - Fort Lauderdale Office

FOR Recording Fees Nemec Deed

2073



**CNLBank**

**Item Detail**

Check 1 of 1                                              Status: Paid ✔

| tranDate | account | amount | serial | tranCode | aba | sequence |
|----------|---------|--------|--------|----------|-----|----------|
| 11/09/2012 | | $542.00 | | | | |

View deposit            Add to Multi-Item            Back to List



BARRY G. RODERMAN & ASSOCIATES, P.A.
IOTA TRUST ACCOUNT

2059

63-1428-631

DATE 11/1/12

PAY
TO THE
ORDER OF _Marc Scott_                                    $542.00

_Five Hundred Forty- Two + 00/100_                       DOLLARS

**CNLBank**
Fort Lauderdale, Florida - Fort Lauderdale Office

FOR _Plane Fare to LA to Pick fr Goldstein_

22

23

24



## CNLBank

## Item Detail

Check 1 of 1                                    Status: Paid ✔

| tranDate | account | amount | serial | tranCode | aba | sequence |
|----------|---------|--------|--------|----------|-----|----------|
| 01/18/2013 | | $2,003.20 | | | | |

[View deposit]            [Add to Multi-Item]            [Back to List]



2081

BARRY G. RODERMAN & ASSOCIATES, P.A.
IOTA TRUST ACCOUNT

63-1428-631

DATE 1/10/13

PAY TO THE ORDER OF  Congress Plaza LLC          $ 2003.20

Two Thousand Three +05/100          DOLLARS

CNLBank.
Fort Lauderdale, Florida - Fort Lauderdale Office

FOR Recording of Deed

For Deposit



CNLBank

**Item Detail**

| tranDate | account | amount | serial | tranCode | aba | sequence |
|---|---|---|---|---|---|---|
| 01/17/2013 | | $26,701.66 | | | | |

Check 1 of 1

Status: Paid ✔

[ View deposit ]   [ Add to Multi-Item ]   [ Back to List ]



**MISC. CHECKING DEBIT**   DATE 1/17/18

REASON  Check payable to Constitutional Tax Collector Palm Beach County

ACCOUNT NUMBER   (Y)

T/C  157

AMOUNT  26 70 1 66

NAME AND ADDRESS
Barry G. Roderman &
Associates, P.A. - TRUST

COMPLETED BY  Mustis
APPROVED BY  Block

Item Detail



# CNLBank

## Item Detail

| | | | Check 1 of 1 | | | Status: Paid ✔ | |
| tranDate | account | amount | serial | tranCode | aba | sequence |
|---|---|---|---|---|---|---|
| 01/18/2013 | | $27,101.24 | | | | |

View deposit    Add to Multi-Item    Back to List

**CHECKING DEPOSIT**

CNLBank.

CASH ▶

DATE 1-18-13    27,101 24

NAME BARRY Rodeamm

CHECKS OR TOTAL FROM OTHER SIDE ▶
SUB TOTAL ▶
☐ LESS CASH ▶
NET DEPOSIT $ 27,101 24

SIGN HERE ONLY IF CASH RECEIVED FROM DEPOSIT
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL

⑈5000⑈0 ⑊00⑈

 **CNLBank**

Deposit Item Detail

Check 2 of 2                                         Status: Paid ✔

| tranDate | account | amount | serial | tranCode | aba | sequence |
|----------|---------|--------|--------|----------|-----|----------|
| 01/18/2013 | ▆▆▆▆ | $27,101.24 | ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ |

Add to Multi-Item

GOLDSTEIN & GOLDSTEIN PA
TRUST ACCT
286 Northeast 39th Street
Miami, FL 33137-3717

5133
63-9136/2631

DATE 1/14/17

PAY TO THE ORDER OF _Barry Roderman Trust Account_    $27,101.²⁴⁄₁₀₀

_Twenty-Seven Thousand One Hundred One & ⁷⁴⁄₁₀₀_    DOLLARS

BB&T  BRANCH BANKING AND TRUST COMPANY
1-800-BANK BBT  BBT.com

FOR _Conquer Plaza Inc. Taxes_

5133





**CNLBank**

**Item Detail**

Check 1 of 1

Status: Paid ✔

| tranDate | account | amount | serial | tranCode | aba | sequence |
|----------|---------|--------|--------|----------|-----|----------|
| 02/05/2013 | | $112.50 | | | | |

View deposit | Add to Multi-Item | Back to List

---

2082

**BARRY G. RODERMAN & ASSOCIATES, P.A.**
IOTA TRUST ACCOUNT

63-1428-631

DATE 0117 13

PAY TO THE ORDER OF_ Barry G. Roderman + Assoc PA         $ 112.50

One Hundred Twele 450/100 _____ DOLLARS

**CNLBank**
Fort Lauderdale, Florida - Fort Lauderdale Office

FOR_ Farese/ Congress Plaza / Recording fees

MP

PAY TO THE ORDER OF
CNL BANK
0631142SRS



**Item Detail**

| tranDate | account | amount | serial | tranCode | aba | sequence |
|---|---|---|---|---|---|---|
| 04/08/2013 | | $5,500.00 | | | | |

Check 1 of 1   Status: Paid ✔

View deposit     Add to Multi-Item     Back to List



2085

BARRY G. RODERMAN & ASSOCIATES, P.A.
IOTA TRUST ACCOUNT

DATE 04/01/13     63-1428-631

PAY TO THE ORDER OF Bruce Loren Esq.     | $5500.00

Five Thousand Five Hundred +00/100     DOLLARS

CNLBank.
Fort Lauderdale, Florida - Fort Lauderdale Office

FOR

PAY TO THE ORDER OF
CITIBANK, N.A.
266086554
FOR DEPOSIT ONLY

ENDORSE HERE



# CNLBank

## Item Detail

Check 1 of 1                                          Status: Paid ✔

| tranDate | account | amount | serial | tranCode | aba | sequence |
|----------|---------|--------|--------|----------|-----|----------|
| 04/18/2013 | ▮▮▮▮ | $45.00 | ▮▮▮▮ | ▮▮▮▮ | ▮▮▮▮ | ▮▮▮▮ |

View deposit            Add to Multi-Item            Back to List



2087

**BARRY G. RODERMAN & ASSOCIATES, P.A.**
IOTA TRUST ACCOUNT

DATE 4|11|13                    63-1428-631

PAY TO THE ORDER OF  Legal Ease                           $ 45.00

Forty-Five & 00/100                                        DOLLARS

# CNLBank.
Fort Lauderdale, Florida · Fort Lauderdale Office

FOR. Congress Plaza v. Flamingo Pk

ENDORSE HERE

PAY TO THE ORDER OF
BANK OF AMERICA
Plantation, Fl. 33322
FOR DEPOSIT ONLY
LEGAL EASE PROCESS SERVICE LLC

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

FEDERAL RESERVE BOARD OF GOVERNORS REG. CC



CNLBank

**Item Detail**

| tranDate | account | amount | serial | tranCode | aba | sequence |
|---|---|---|---|---|---|---|
| 05/24/2013 | | $1,279.85 | | | | |

Check 1 of 1    Status: Paid ✔

View deposit    Add to Multi-item    Back to List



2089

BARRY G. RODERMAN & ASSOCIATES, P.A.
IOTA TRUST ACCOUNT

63-1428-631

DATE 5/16/13

PAY
TO THE
ORDER OF  Alpha + Omega                                    $ 1279.85

One Thousand TwoHundred Seventy Nine & 85/100        DOLLARS

CNLBank.

Fort Lauderdale, Florida - Fort Lauderdale Office

FOR Ghahan v. PSH - Roumaya

 **CNLBank**

**Item Detail**

| tranDate | account | amount | serial | tranCode | aba | sequence |
|----------|---------|--------|--------|----------|-----|----------|
| 07/10/2013 | | $1,593.75 | | | | |

Check 1 of 1          Status: Paid ✔

View deposit     Add to Multi-Item     Back to List



**BARRY G. RODERMAN & ASSOCIATES, P.A.**
IOTA TRUST ACCOUNT

2094

DATE July 1, 2013

PAY TO THE ORDER OF Collins Reporting Service, Inc _____ | $ 1,593.75

One Thousand Five Hundred Ninety Three and 75/100 DOLLARS

CNLBank.
Fort Lauderdale, Florida, Fort Lauderdale

FOR Ravini Hosein deposition 31197 DW



# CNLBank

## Item Detail

Check 1 of 1                                        Status: Paid ✔

| tranDate | account | amount | serial | tranCode | aba | sequence |
|----------|---------|--------|--------|----------|-----|----------|
| 07/08/2013 | | $25,760.00 | | | | |

View deposit          Add to Multi-Item          Back to List



2095

**BARRY G. RODERMAN & ASSOCIATES, P.A.**
IOTA TRUST ACCOUNT

63-1428-631

DATE July 3, 2013

PAY TO THE ORDER OF _Suyanne Farlee_ _____ $25,760.₀₀

_Twenty Five Thousand Seven Hundred Sixty and ⁰⁰/₁₀₀_ DOLLARS

# CNLBank™

Fort Lauderdale, Florida · Fort Lauderdale Office

FOR _Disbursement N. Congress plaza_

MP



**CNLBank**

## Item Detail

Check 1 of 1                    Status: Paid ✔

| tranDate | account | amount | serial | tranCode | aba | sequence |
|----------|---------|--------|--------|----------|-----|----------|
| 07/03/2013 |  | $6,240.00 |  |  |  |  |

[ View deposit ]        [ Add to Multi-Item ]        [ Back to List ]

---

BARRY G. RODERMAN & ASSOCIATES, P.A.
IOTA TRUST ACCOUNT

2096

DATE *July 3, 2013*  63-1428-631

PAY TO THE ORDER OF *BARRY G RODERMAN* — — — — | $ *6240.00*

*Six thousand two Hundred forty and 00/100* — — DOLLARS

**CNLBank**

Fort Lauderdale, Florida - Fort Lauderdale Office

FOR *Disbursement Re Corson Plaza*

---