UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:12-cv-80762-Middlebrooks

GHAHAN, LLC,

    Plaintiff,

-vs-

PALM STEAK HOUSE, LLC f/k/a
PALM STEAK HOUSE GENTLEMENS
CLUB, LLC,

    Defendants.
_____/

## THIRD-PARTY DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

    COMES NOW, the Third-Party Defendant, BARRY RODERMAN ("Roderman") by and through the undersigned counsel, and hereby files the following Renewed Motion for Summary Judgment and Supporting Memorandum of Law pursuant to Rule 56, Federal Rules of Civil Procedure, and Rule 56.1, Local Rules for the Southern District of Florida:

### MOTION FOR SUMMARY JUDGMENT

    1.    In the case-at-bar the Third-Party Plaintiff, GHAHAN, LLC (the "Third-Party Plaintiff") seeks to void a transfer of $172,000.00 to Roderman in 2012 from the sale of the Defendant's, PALM STEAK HOUSE, LLC (the "Judgment Debtor") interest in the PALM STEAK HOUSE GENTLEMENS CLUB (the "Club") under Florida Statute § 56.20(3)(b).

    2.    The transfer to Roderman was made pursuant to a fifteen (15%) interest in the Club as a non-managerial member.

    3.    Roderman obtained his fifteen (15%) interest in the Club as compensation for legal services that were provided to a manager/member of the Judgment Debtor, Thomas R. Farese ("Farese"), in the case styled, *Thomas R. Farese v. Kenneth J. Scherer, etc. et., al.*, Case No.: 00-

8950-CIV-MIDDLEBROOKS/VITUNAC, in the Southern District of Florida that resulted in a jury verdict of $4,625,000.00 and a Final Judgment of $13,875,000.00.

4. As such, the transfer of $172,000.00 to Roderman from the sale Club was as a creditor of the Club and/or Farese.[1]

5. Pursuant to Florida Statute § 56.29(3)(a) and (b) a Court only has the authority to void transfers to third-parties if the transfer "has been made or contrived by the judgment debtor to delay, hinder, or defraud creditors."

6. There is no genuine issue of material fact hereto that Roderman was a valid creditor of the Judgment Debtor and/or Farese.

7. Moreover, Section 23.6(ii) of the Restaurant Nightclub Lounge Management Agreement for Palm Beach Gentlemen's' Club, LLC (the "Management Agreement") between the Third-Party Defendant and the Judgment Debtor expressly states:

> Notwithstanding anything to the contrary contained in this Agreement Manager [the Third-Party Plaintiff] agrees that . . . (ii) no property or assets or owner (or any of Owner's affiliates) *shall be subject to levy, execution or other enforcement procedure for the satisfaction of Manager's remedies under or with respect to this Agreement*. [Emphasis added].

8. Additionally, Section 4 of the Termination of Management Agreement and Mutual Release (the "Termination Agreement") between the Third-Party Plaintiff and the Judgment Debtor expressly states as follows:

> Ghahan, on behalf of . . . do hereby release, acquit, and forever discharge and agree to defend, indemnify and hold harmless [the Defendant], its representatives, predecessors, successors, assigns, *past, present and future members*, officers, agents, servants, and employees, principals, servants, partners, associates, representatives, *attorneys*, insurers, descendants, dependents, heirs, executors and administrators . . . from any and all past, present and future claims, counterclaims, demands, actions, causes of action, judgments, liabilities, damages, costs, loss of

---

[1] The Third-Party Plaintiff did not become a judgment creditor of the Defendant until the entry of a judgment against the Defendant in 2016. At the time of the transfer to Roderman, Ghahan was only potential judgment creditor to the Defendant.

services, expenses, (including reasonable attorney's fees), compensation, ***third-party actions***, suits at law or in equity, or every nature and description, whether known or unknown, suspected or unsuspected, foreseen, or unforeseen, real or imaginary, actual or potential, and whether arising in law or equity, under common law, state or federal law., or any other law, or otherwise. [Emphasis added].

9. The original Complaint that was filed by the Third-Party Plaintiff in the underlying action against the Defendant alleged that the Termination Agreement was valid and enforceable by virtue of a written confirmation between parties on or about May 19, 2011. [DE-1]. The Third-Party Plaintiff filed an Amended Complaint on or about August 2, 2012, which reiterated those allegations. [DE – 4: ¶¶ 29 – 34].

10. On or about February 25, 2016, the Third-Party Plaintiff obtained a Final Judgment against the Defendant for the amount set forth in the Termination Agreement (e.g. enforcement of the Termination Agreement). [DE – 444].

11. There is no genuine issue of material fact that the terms and conditions of the Management Agreement precluded the Third-Party Plaintiff from filing the case at bar against Roderman.

12. There is no genuine issue of material fact that the terms and conditions of the Termination Agreement precluded the Third-Party Plaintiff from filing the case at bar against Roderman.

13. Rule 56(a), Federal Rules of Civil Procedure provides that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion."

14. Accordingly, Roderman is entitled to the entry of a summary judgment in his favor pursuant to Rule 56(a), Federal Rules of Civil Procedure.

WHEREFORE, the Third-Party Defendant respectfully requests this Court to enter an Order GRANTING the Motion for Summary Judgment.

## SUPPORTING MEMORANDUM OF LAW

### Summary Judgment Standard

Summary Judgment is appropriate when there is no genuine issue as to any material facts, and the moving party is entitled to judgment as a matter of law. Fed. Rules of Civ. Pro. 56(c). *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

After the moving party has met this initial burden, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *See*, *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Fed.R.Civ.P. 56(e), however, does not permit the nonmoving party to avoid summary judgment by resting on the pleadings, but "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Moreover, the mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Anderson*, 477 U.S. at 251-52.

"Under Celotex and therefore the new rule, such a movant can satisfy its initial burden of production in either of two ways: '[I]f the nonmoving party must prove X to prevail [at trial], the moving party at summary judgment can either produce evidence that X is not so or point out that the nonmoving party lacks the evidence to prove X'." Id (citing *Bedford v. Doe*, 880 F.3d 993, 996-97 (8th Cir. 2018)).

"A movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *See*, *Wease v. Ocwen Loan Servicing, L.L.C*., 915 F.3d 987, 997

(5th Cir. 2019)). "In our view, the plain language of [Rule 56(c)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex* at 322-23.

"In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id* at 323.

Florida Statute § 56.29(3), which is currently the Third-Party Plaintiff's only route to recovery against Roderman, states, in pertinent part under subpart (a):

> When, within 1 year before service of process on the judgment debtor [the Defendant] in the original proceeding or action, the judgment debtor has title to, or paid the purchase price of, any ***personal property*** to which the judgment debtor's spouse, any relative, or any person on confidential terms with the judgment debtor claims ***title and right of possession***. [Emphasis added].

The language of Section 56.29(3)(a) strongly provides that the only type of property that is subject to this section is tangible personal property that can be titled and possessed.  Florida Statute § 56.29(3)(b) further provides as follows, emphasizing this concept:

> When any gift, transfer, assignment or other conveyance ***of personal property*** has been made by the judgment debtor to delay, hinder or defraud creditors, the court shall order the gift, transfer, assignment or other conveyance to be void and direct the ***sheriff to take the property to satisfy the execution***.   This does not authorize seizure of ***property exempted from levy and sale*** under execution of property which has been passed to a bona fide purchaser for value without notice.

Again, the language of the Section 56.29.(3)(b) specifically references only tangible personal property subject to levy and seizure.

Whereas, by contrast, under the Fraudulent Transfer Statute Florida, Statute § 726.102, a transfer ***also includes the payment of money***. [Emphasis added]. As of this Court's last ruling, any liability under the Fraudulent Transfer Statute in this matter ***has been extinguished***. [Emphasis added].

In the case-at-bar, Roderman and David G. Goldstein had a retainer agreement with Farese to represent him in the case styled, *Thomas R. Farese v. Kenneth J. Scherer, etc. et., al.*, Case No.: 00-8950-CIV-MIDDLEBROOKS/VITUNAC, in the Southern District of Florida. The exact nature of the retainer agreement was for thirty (30%) of the gross recovery for Farese in the lawsuit. Although the matter resulted in a substantial jury verdict and final judgment, in also resulted in a lengthy appeals process. The net result was that neither Roderman nor Mr. Goldstein received an immediate payment for the legal services which were rendered in that lawsuit. Roderman and Mr. Goldstein did eventually each receive a fifteen (15%) percent equity interest in the Club as an in-kind payment for the legal services which were previously rendered to Farese in the above-referenced lawsuit. It was only when the Club was sold that Roderman's fifteen (15%) percent equity interest in the Club was monetized for the legal services which were previously rendered to Farese in the above-referenced lawsuit. These facts are absolutely undisputed.

The Eleventh Circuit Court of Appeals, applying Florida Law, has held that a limitation of liability clause, a hold harmless clause and/or an exculpatory clause must be enforced regarding third-party actions if such clauses are clear and unequivocal. *See, Cooper v. Meridian Yachts, Ltd*, 575 F.3d 1151, 1166-68 (11th Cir 2009).

In the case-at-bar, both the Management Agreement and the Termination Agreement stipulated that Florida Law would apply to all controversies regarding each respective agreement. (See, Exhibits F and G). "Under Florida law, '[e]xculpatory provisions which attempt to relieve

a party of his or her own negligence are generally looked upon with disfavor, and Florida law requires that such clauses be strictly construed against the party claiming to be relieved of liability'." *Cooper* at 1166 – 67 (citing *Sunny Isles Marina, Inc. v. Adulami*, 706 So.2d 920, 922 (Fla. 3d DCA 1998). "Such provisions, however, have been found to be valid and enforceable by Florida courts where the intention is made clear and unequivocal." Id (citing *Murphy v. Young Men's Christian Ass'n of Lake Wales, Inc.*, 974 So.2d 565, 568 (Fla. 2d DCA 2008). "Exculpatory clauses are enforceable only where and to the extent that the intention to be relieved was made clear and unequivocal in the contract, and the wording must be so clear and understandable that an ordinary and knowledgeable party will know what he is contracting away." Id (citing, *Southworth & McGill, P.A. v. Bell Teli & Tel. Co.*, 580 So.2d 628, 634 (Fla. 1st DCA 1991).

Thus, if a limitation of liability clause or a hold harmless clause is clear and unequivocal third-party claims against other individuals will be barred. *Cooper* at 1167-68.

In the case-at-bar, to the extent that all or part of the Management Agreement is enforceable by Roderman, clearly and unequivocally bars third-party actions against him by the Third-Party Plaintiff by virtue of the following express language under section 23.6(ii):

> no property or assets or owner (or any of Owner's affiliates) ***shall be subject to levy, execution or other enforcement procedure for the satisfaction of Manager's remedies under or with respect to this Agreement***.

Even if this Court should ultimately concluded that section 23.6(ii) of the Management Agreement is not enforceable by Roderman, the. Termination Agreement clearly and unequivocally bars any third-party action against Roderman for collection or enforcement of a judgment against the Defendant in the underlying matter. Section 4 of the Termination Agreement states:

> Ghahan, on behalf of . . . do hereby release, acquit, and forever discharge and agree to defend, indemnify and hold harmless [the Defendant], its representatives, predecessors, successors, assigns, ***past, present and future members***, officers, agents, servants, and employees, principals, servants, partners, associates,

representatives, ***attorneys***, insurers, descendants, dependents, heirs, executors and administrators . . . from any and all past, present and future claims, counterclaims, demands, actions, causes of action, judgments, liabilities, damages, costs, loss of services, expenses, (including reasonable attorney's fees), compensation, ***third-party actions***, suits at law or in equity, or every nature and description, whether known or unknown, suspected or unsuspected, foreseen, or unforeseen, real or imaginary, actual or potential, and whether arising in law or equity, under common law, state or federal law., or any other law, or otherwise. [Emphasis added].

Section 4 of the Termination Agreement clearly contemplates exculpating any third-party actions against any past, present or future members of the Defendant from actions such as the case-at-bar.

## CONCLUSION

Under the undisputed facts, and the prevailing legal authority cited above, there are no genuine issues of material fact to be decided by a jury, and Roderman is entitled to a judgment as a matter of law.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the foregoing was electronically filed with the Clerk of the Courts on the 14th day of June, 2021 with the CM/ECF Filing System and served to counsel of record through the System.

Respectfully Submitted,

BARRY G. RODERMAN & ASSOCIATES, P.A.
*Attorneys for Roderman*
633 S.E. 3rd Avenue, Suite 4R
Ft. Lauderdale, Florida 33301
Telephone: (954) 761-8810
Service: mail@barryroderman.com

By: /s/ Barry G. Roderman
BARRY G. RODERMAN, ESQUIRE
Fla. Bar No.: 105637