UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

CASE NO.: 9:12-cv-80762-Middlebrooks

GHAHAN, LLC

    Plaintiff,

vs.

PALM STEAK HOUSE, LLC,
f/k/a PALM STEAK HOUSE GENTLEMENS CLUB, LLC,

    Defendant,

GHAHAN, LLC

    Third-Party Plaintiff,

vs.

SUZANNE FARESE AND DAVID GOLDSTEIN, AS TRUSTEES
OF PALM BEACH GENTLEMEN'S CLUB TRUST,

PALM BEACH GENTLEMEN'S CLUB TRUST,

DAVID M. GOLDSTEIN, AS TRUSTEE OF NOLITA TRUST,

NOLITA TRUST,

    and

BARRY RODERMAN,

    Third-Party Defendants.
_____/

# THIRD PARTY PLAINTIFFS', MOTION FORM PARTIAL SUMMARY JUDGMENT AGAINST THIRD-PARTY DEFENDANT BARRY RODERMAN

Third-Party Plaintiff, Ghahan, LLC (hereinafter referred to as "Ghahan" or "Plaintiff"), by through its undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, hereby moves the Court to issue an order, granting it summary judgment against

Third-Party Defendant, Barry Roderman (hereinafter referred to as "Roderman") on Ghahan's Amended Impleader Complaint in Proceedings Supplementary to Set Aside Fraudulent Conveyance and to Satisfy Judgment and for other Relief (hereinafter referred to as the "Amended Impleader Complaint"). [D.E. 611]. In support of this Motion, Ghahan submits the accompanying Statement of Undisputed Material Facts ("SUMF") and the following Memorandum.

### INTRODUCTION

This Motion seeks entry of a final summary judgment against Roderman as to the sole count pled in the Amended Impleader Complaint seeking relief in a proceedings supplementary under Florida Statute §56.29(3). On February 24, 2016, this Court entered a Final Judgment on a jury verdict in the amount of $675,000.00 on Ghahan's breach of contract claim against PALM STEAK HOUSE, LLC, f/k/a PALM STEAK HOUSE GENTLEMENS CLUB, LLC (hereinafter referred to as "PBGC" or "Judgment Debtor"), and further ordering that Ghahan shall receive pre and post judgment interest on this amount from the date of November 29, 2011 from PBGC (the "Judgment") [D.E. 444], an entity wholly owned by the Third-Party Defendants.

On July 16, 2012, Ghahan initiated the underlying action in this Court against PBGC, Susan Farese and Thomas Farese. [D.E. 1]. On September 17, 2012, a contract was entered into between PBGC, the Third-Party Defendants, representing one hundred percent (100%) of the membership interests in PBGC and S & J Crazy Lizards Entertainment, LLC, for the sale of all of the assets of PBGC. [D.E. 611, Ex. A]. The total sale price was two million four hundred thousand dollars ($2,400,000.00). On October 29, 2012, during the pendency of the underlying litigation, the sale closed. On the same day as the sale, PBGC transferred $223,517.58 to Roderman. The transfer to Roderman was a distribution made to Roderman as a member of PBGC. The sale of all of the assets of PBGC and transfer of the proceeds to Third-Party Defendants rendered PBGC insolvent and Roderman, a Florida attorney and a member of PBGC, signatory to the sale agreement, and escrow agent for the closing of the sale, had actual knowledge that the sale rendered PBGC insolvent. The undisputed facts unequivocally demonstrate that PBGC made the

5

transfer with the actual intent to hinder, delay, or defraud Ghahan because it is undisputed that the transfer depleted PBGC of any assets that could be used to satisfy Ghahan's Judgment.

## STATEMENT OF UNDISPUTED FACTS

**A.     The Amended Impleader Complaint**

1. Ghahan's Impleader Complaint brings the following count: Count I- Relief in Proceedings Supplementary pursuant to Florida Statute §56.29(3) against the Third-Party Defendants.

2. Count I is predicated on the factual allegation that, "Palm Beach Gentlemen's Club Trust with Suzanne Farese and David Goldstein as trustees, Nolita Trust with David M. Goldstein as trustee, and Barry Roderman, received fraudulent transfers of the proceeds of the sale of all of the assets of PBGC, which PBGC had title to within one (1) year before service of process on the original suit, and further the transfers were made or contrived to delay, hinder or defraud PBGC . ("Amended Impleader Complaint ¶13).

**B.     The Underlying Litigation and Existence of the Debt**

3. On July 16, 2012, Ghahan initiated the above-styled action in this Court against PBGC, Susan Farese and Thomas Farese. [D.E. 1].

4. On September 7, 2012, Barry Roderman filed a Motion to Dismiss on behalf of Judgment Debtor and Suzanne Farese. [D.E. 16].

5. From February 8 – 11, 2016, a jury trial was conducted in this case. Prior to the trial, the Court severed claims, and the only claims that went to trial were those as to PBGC.

6. On February 24, 2016, this Court entered a Final Judgment on a jury verdict in favor of Ghahan and against PBGC, in the amount of $675,000.00, on Ghahan's breach of contract claim relating to a buyout agreement, and further ordered that Ghahan shall receive pre and post judgment interest on this amount from the date of November 29, 2011. (the "Judgment") [D.E. 444].

7. Ghahan obtained a Writ of Execution in an effort to collect on the Judgment (the "Writ of Execution").

8. The Writ of Execution remains unsatisfied and is valid and outstanding.

9. On September 6, 2019, this Court granted Plaintiff's motion to commence proceedings supplementary against several third-party defendants, including Defendant Roderman. [DE 589].

10. Plaintiff filed an Impleader Complaint on October 8, 2019. [DE 595 "IC"].

C. **The Sale of PBGC Rendered it Insolvent**

11. On September 17, 2012, a contract was entered into between PBGC, the Members of PBGC and S & J Crazy Lizards Entertainment, LLC, for the sale of all of the assets of PBGC. (Amended Impleader Complaint ¶ 25.)

12. The total sale price was two million four hundred thousand dollars ($2,400,000.00). (Amended Impleader Complaint ¶ 26.)

13. The sale closed on October 29, 2012. (Amended Impleader Complaint ¶ 27.)

14. After the sale, PBGC had no assets. (Amended Impleader Complaint ¶ 31.)

15. The Members of PBGC, including but not limited to Roderman, were signatories to the Asset and Purchase Agreement, and knew that all the assets of Palm were sold. (Amended Impleader Complaint ¶ 34.)

16. Roderman admitted all the allegation contained in paragraphs eight (3) through twelve (12) above. [D.E. 632, Ans. of Roderman to Amended Impleader Complaint as to ¶¶ 25, 26, 27, 31 and 34.)

17. Once the sale was consummated, PBGC ceased business operations as there was nothing left, PBGC was out of it and had no other means of generating revenue. (*See* attached Exhibit A, Depo. Transcript of Roderman, pg. 10 lns. 9 – 18 and 24 – 25 and pg. 11 ln. 1.)

C. **Roderman was an Insider who Received Proceeds from the Sale of PBGC**

18. Roderman was an owner of PBGC when all of its assets were sold. (Depo. Transcript of Roderman, pg. 9, lns. 3 – 7.)

19. Roderman received distributions of $18,750 and $204, 767.58 for a total of $223,517.58. (Depo. Transcript of Roderman, Ex. 10 pgs. 6 and 18.)[1]

20. Roderman was the closing agent for the sale. (Depo. Transcript of Roderman, pg. 9, lns. 8 – 13.)

21. The total amount received by the members from the sale was $1,479,326.64, representing 61.6 % of the total price paid for the assets sold. [Depo. Transcript of Roderman, Ex. 10 pgs. 1,2 5 -7, 13, 17, 18 and 34].

## RELIEF SOUGHT

22. No genuine issue as to any material fact exists as to Count I (Fla. Stat. §56.29(3), entitling Plaintiff to the entry of a partial summary judgment in its favor and against Roderman in the amount of **$223,517.58**, plus pre and post judgment interest, costs and attorneys' fees[2] as a matter of law. Fed. R. Civ. P. 56.

## LAW AND ARGUMENT

I.   **The Summary Judgment Standard.**

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted if the record of the case shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court affirmed the vitality of summary judgment as a method for the just, speedy and inexpensive disposition of cases. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Once the moving party identifies those

---

[1] Roderman and his counsel attending the deposition stipulated that a predicate for records custodian had been established as to Exhibit 10: Depo Transcript of Roderman pgs. 52 – 53, lns. 18 – 13.)
[2] Costs for proceedings supplementary shall be taxed against the defendant as well as all other incidental costs determined to be reasonable and just by the court including, but not limited to, docketing the execution, sheriff's service fees, and court reporter's fees. Reasonable attorney's fees may be taxed against the defendant. Fla. Stat. §56.26(11).

portions of the record that demonstrate the absence of a genuine issue of material fact, any party opposing summary judgment must set forth specific facts showing a genuine issue for trial, and may not rely on mere allegations or denials. Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256-57; Martin v. Commercial Union Ins. Co., 935 F.2d 235, 238 (11 Cir. 1991). "[A] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1576 (11th Cir.1990) *(citing* Anderson*,* 477 U.S. at 252, 106 S. Ct. 2505). If the record as a whole could not lead a rational finder of fact to find for the non-moving party, then there is no genuine issue of fact precluding summary judgment. Matsushita Elec. Indus. Co., 475 U.S. at 586-87. Where the factual context renders the non-moving party's position implausible, it must come up with more persuasive evidence than would otherwise be necessary to defeat summary judgment. Id. at 587. "[S]ummary judgment set forth in Rule 56(c), which provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 317, 106 S. Ct. 2548, 2549–50, 91 L. Ed. 2d 265 (1986). (citation omitted)

"There is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. On the contrary, Rule 56(c), which refers to the affidavits, 'if any,' suggests the absence of such a requirement, and Rules 56(a) and (b) provide that claimants and defending parties may move for summary judgment 'with or without supporting affidavits." Rule 56(e), which relates to the form and use of affidavits and other materials, does not require that the moving party's motion always be supported by affidavits to show initially the absence of a genuine issue for trial." Id. at 318.

As more fully set forth below, no genuine issues of material facts exist as to Count I (Fla. Stat. §56.29(3)), entitling Ghahan to the entry of a partial summary judgment in its favor and against

5

Roderman in the amount of **$223,517.58**, plus pre and post judgment interest, costs and attorneys' fees[3] as a matter of law. Fed. R. Civ. P. 56.

II.     **Standard of Proof and Florida Statute §56.29(3)(b) and §726.105**

"When any gift, transfer, assignment or other conveyance of personal property has been made or contrived by the judgment debtor to delay, hinder, or defraud creditors, the court shall order the gift, transfer, assignment or other conveyance to be void and direct the sheriff to take the property to satisfy the execution. This does not authorize seizure of property exempted from levy and sale under execution or property which has passed to a bona fide purchaser for value and without notice. Any person aggrieved by the levy or Notice to Appear may proceed under ss. 56.16-56.20." Florida Statute 56.29(3)(b).

"Florida Courts use § 726.105 caselaw to interpret § 56.29's 'delay, hinder or defraud' language. *See,* e.g., Pollizzi v. Paulshock, 52 So.3d 786, 789–90 (Fla. 5th Dist.Ct.App.2010) (upholding judgment in proceeding supplementary where judgment creditor proved fraudulent transfer under the UFTA). [D.E. 610, Order on Motion to Dismiss, fn. 3]. "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Fla. Stat. §726.105(1)(a).

III.  **Badges of Fraud**

Florida Statute, §726.105(2)(a), provides that when determining actual intent, as similarly referenced under Florida Statute § 56.29(3)(b), consideration may be given to the following factors commonly referred to as badges of fraud:

(1) The transfer was to an insider;

---

[3] Costs for proceedings supplementary shall be taxed against the defendant as well as all other incidental costs determined to be reasonable and just by the court including, but not limited to, docketing the execution, sheriff's service fees, and court reporter's fees. Reasonable attorney's fees may be taxed against the defendant. Fla. Stat. §56.26(11).

5

(2) The debtor retained possession or control of the property transferred after the transfer;

(3) The transfer was disclosed or concealed;

(4) Before the transfer was made the debtor had been sued or threatened with suit;

(5) The transfer was of substantially off the debtor's assets;

(6) The debtor absconded;

(7) The debtor removed or concealed assets;

(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. Fla. Stat. §726.105(2).

Although a single badge of fraud may create a suspicious circumstance, several of them together are necessary to afford a basis to infer fraud. In re PSI Indus., Inc., 306 B.R. 377, 387 (Bankr. S.D. Fla. 2003). One specific 'badge' is insufficient to establish fraudulent intent. XYZ Options, 154 F.3d at 1271 n. 17; *see also* General Trading Inc. v. Yale Materials Handling Corp., 119 F.3d 1485, 1498 (11th Cir.1997); In re Model Imperial, Inc., 250 B.R. 776, 791-92 (Bankr. S.D. Fla. 2000).

Here, the badges of fraud do more than create a suspicious circumstance, they clearly establish that PBGC had actual fraudulent intent. The transfer to Roderman (hereinafter the "Transfer") was one to an insider of the Judgment Debtor. Facts ¶ 18 - 19. The underlying action was pending at the time of the transfer. Facts ¶ 3 and 11. The transfer consisted of all of the Judgment Debtor's assets and rendered PBGC completely insolvent. Facts ¶ 11 – 17.

**A. The Transfer was Made To Roderman, an Insider of the Judgment Debtor**

Florida Statute §726.105(2)(a)(1) provides that a transfer being to an insider is reflective of fraudulent intent. An insider is defined as a director, officer, or person in control of the debtor. Fla.

5

Stat. § 726.102. Roderman was a member of PBGC, and therefore an insider of PBGC. Facts ¶ 18.

### B. PBGC was Rendered Insolvent by the Transfer

Florida Statute §726.105(2)(a)(9) provides that when debtor was insolvent or becomes insolvent shortly after the transfer was made is reflective of fraudulent intent. There is no question that PBGC was rendered insolvent by the Transfer. Facts ¶¶ 13, 14 and 17. Section 726.103, Florida Statutes, provides: "(1) A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation; (2) A debtor who is generally not paying his or her debts as they become due is presumed to be insolvent." Fla. Stat. §726.103. At the time of the Transfer, all of the assets of PBGC were sold. Facts ¶ 15.

The assets of PBGC sold to a third party in a commercially reasonable manner for the amount of $2.4 Million. Facts ¶12. When a sale was conducted in a commercially reasonable manner, there can be no doubt that the actual selling price is the best manifestation of the fair market value of the assets. Cf. In the Matter of Chicago, Rock Island and Pacific R.R. Co., 794 F.2d 1182, 1185 (7th Cir.1986) ( "An actual price ... is a far better indicator of the value of this parcel than is a hypothetical price based on sales of other parcels.")" Ocean Services Towing & Salvage, Inc. v. Brown, 810 F. Supp. 1258, 1263 (S.D. Fla. 1993). After the time of the Transfer, PBGC's liabilities included approximately $675,000.00 owed to Ghahan. Facts ¶ 6. Thus, PBGC's liabilities exceeded its assets by at least $675,000.00. Facts ¶¶ 3, 6 and 18.

### C. Roderman, Knew or Reasonably should have Known of PBGC's Insolvency

Roderman, as member of PBGC, signatory to the contract for the sale of all of the assets of PBGC and closing agent for the sale of all the assets was aware that the sale was for the sale of all the assets of PBGC and and that PBGC was rendered insolvent. Facts ¶¶ 14, 15 and 20. Furthermore, at the time of the Transfer, Rodermam had knowledge that PBGC was indebted to Ghahan for unpaid services rendered and of the pendency of the Initial Action. Facts ¶4.

### D. Before the Transfer was Made the Debtor had been Sued or Threatened with Suit

Florida Statute §726.105(2)(a)(4) provides that when a transfer is made when the debtor is sued or threatened with suit it is reflective of fraudulent intent. On July 16, 2012, Ghahan initiated the above-styled action in this Court against PBGC, Susan Farese and Thomas Farese. Facts ¶ 1. The transfer took place on October 29, 2012. Facts ¶ 13. The Transfer was made after suit had been filed. Facts ¶ 3 and 13.

### E. The Transfer was for Substantially all of the Judgment Debtor's Assets

Florida Statute §726.105(2)(a)(5) provides that when a transfer is for substantially all of the Judgment Debtor's assets it is reflective of fraudulent intent. The transfer was for substantially all of PBGC's assets. Facts ¶ 18.

## IV. Ghahan has Standing to Avoid the Transfer because its Claim Arose prior To PBGC's Transfer To Roderman Rendering PBGC Uncollectible

The insider fraudulent transfer provision may be used only to benefit a creditor whose claim arose before transfer was made. <u>In re Toy King Distrib., Inc.</u>, 256 B.R. 1, 141 – 42 (Bankr. M.D. Fla. 2000). Ghahan's claim, litigated in an action commencing on July 16, 2012, arose well before the Transfer took place on October 29, 2012. Facts ¶¶ 3 and 13.

## V. Roderman is not a Good Faith Transferee, did not Give New Value in Exchange for the Transfer, and the Transfer was not Made in the Ordinary Course of Business, or in a Good Faith Effort to Rehabilitate the Debtor

Once the complaining creditor demonstrates an avoidable transfer or obligation, the burden then shifts to the transferee to demonstrate a defense under §726.109, Florida Statutes. <u>In re Total Acquisition Corp.</u>, 29 B.R. 836 (Bkrtcy. S.D. Fla. 1983). Similarly, once a creditor demonstrates an avoidable transfer, under Florida Statute §56.29(3), the burden shifts to the transferee.

### A. Roderman is not a Good Faith Transferee

A person who possesses knowledge regarding the transferor's "poor financial condition at the

time of the transfer," is not a good faith transferee. In re O'Connell, 119 B.R. 311, 317 (Bankr. M.D. Fla. 1990); In re Revels, 2007 WL 1756987 * 7 (Bankr. M.D. Fla. 2007) (finding that debtor's brother was not a good faith transferee under Fla. Stat. § 726.109[1] because he was on notice through his father of debtor's financial problems). Roderman signatory to the contract for the sale of all of the assets of PBGC, and closing agent for the sale of all the assets was well aware of the resulting PBGC's poor financial condition resultant from the Transfer. Facts ¶¶ 14, 15 and 20.

### B. The Transfer Was Not Made In PBGC's Ordinary Course of Business

The purpose of the ordinary course of business defense is "to leave undisturbed normal financial relations," In re Craig Oil Co., 785 F.2d 1563, 1566 (11th Cir.1986), which enables "the struggling debtor to continue operating its business." Union Bank v. Wolas, 502 U.S. 151, 161 (1991). The Transfer was for all the assets of PBGC. Fact ¶ 12. "A transfer of all the assets of an entity . . . is not . . . in the ordinary course of its business. In re Am. Dev. Corp., 95 B.R. 735, 737 (Bankr. C.D. Cal. 1989).

## VI. Affirmative Defenses

### A. Affirmative Defenses One

Affirmative Defense One alleges that by virtue of the Judgment Creditor being made aware of the sale and being provided a right of first refusal they waived their right to seek recovery in the present action. There is no law in support of this position. With the exception of a sale of the assets of the Judgment Debtor for less than adequate consideration and/or to insiders, the sale of the assets of the Judgment Debtor by itself is not an improper action nor is it what the judgment creditor pleads as a basis of recovery. It is the subsequent **transfer** of the proceeds from that sale to insiders, namely the third-party defendants, and the resultant insolvency of the judgment debtor that was improper.

### B. Affirmative Defense Two

Affirmative Defense Two argues excuse based upon the fact that Roderman was a creditor. Roderman was a member. Facts ¶ 18. "Judgment creditors of insolvent corporation, who were also

insiders, were fraudulent transferees under the Uniform Fraudulent Transfer Act as to payments made on those judgments, where creditor's claim arose before payments were made to judgment creditors, and judgment creditors knew that corporation was insolvent at time of transfers." <u>Mied, Inc. v. Summit Healthcare Inc</u>., 849 So. 2d 397 (Fla. 4th DCA 2003) *citing to* Fla. Stat. § 726.106(2). The Uniform Fraudulent Transfer Act and proceedings supplemental are almost identical in their definition of what constitutes a fraudulent transfer. The same result is called for, namely a finding that even if Roderman was paid as a creditor, which the tax returns and Exhibit 10 to the deposition demonstrate he was not for the reason that the shares were the consideration.

### C. Affirmative Defense Three

The factual basis in support of affirmative defense four is that other creditors were paid from the sale of all of the assets of PBGC. Firstly, the inquiry is not all, it is substantially all. Florida Statute 726.105(2)(a)(3). In the present matter, $1,479,326.64 of $2.4 million was transferred to the members of PBGC, representing 61.6% of the total sales prices for all of the assets of PBGC. The largest creditor of the Judgment Debtor, PBGC, was paid absolutely nothing where the insiders were paid substantially all of the proceeds of the sale of the assets of the Judgment Debtor. Facts ¶21. Finally, there is no legal support for the proposition that insiders can liquidate a company and pay themselves before creditors.

### D. Affirmative Defense Four

`In Affirmative Defense Four, Roderman asserts that the is not liable for attorneys' fees because he is not the Judgment Debtor. Reasonable attorney's fees may be taxed against the defendant. Fla. Stat. §56.26(11). Plaintiff can recover reasonable attorneys' fees and costs incurred in bringing supplementary proceedings from the funds fraudulently transferred. <u>Broward Marine, Inc. v. S/V Zeus</u>, 05-23105-CIV, 2010 WL 1524778, at *3 (S.D. Fla. Apr. 15, 2010).

### E. Affirmative Defense Five

Affirmative Defense Five is the statute of limitations. This issue has been litigated extensively and there are no new facts on the issue, and the same result is called for, namely a

5

finding that the statute of limitations is not a bar to the present action. [D.E. 610 and 629, Orders on Motions to Dismiss].

### F.  Affirmative Defense Six and Seven

Each affirmative defenses alleges that Ghahan waived its right to collect upon its debts under a proceedings supplementary by virtue of an agreement that was terminated and then a termination agreement that terminated the aforementioned management agreement and released parties prior to the malfeasance of the Third-Party Defendants and PBGC.  This is an unsustainable position.

**WHEREFORE**, for the aforesaid reasons, Ghahan move the Court to grant this motion for partial summary judgment, in Ghahan's favor and against the Roderman, jointly and severally: (i) avoiding and/or setting aside the fraudulent transfers; (ii) entering judgment against Roderman in favor of Ghahan, for the full amount Roderman collectively received from said transfers and which is owed Ghahan; (iii) ordering Roderman to pay over to Ghahan the full amount received  and owed on the judgment; (iv) awarding Plaintiffs their reasonable attorneys' fees and court costs pursuant to Fla. Stat. §§ 56.29(11), Section 56.29 and 57.115,; and (v) awarding Plaintiffs such further relief deemed equitable and just under the circumstances.

Respectfully submitted,
THE ELLIOT LEGAL GROUP, P.A.
BY: /s/*Gavin Tudor Elliot*

Gavin Tudor Elliot, Esq.
Florida Bar No. 542997
3101 N Federal Hwy, Ste 609
Fort Lauderdale, Florida 33306
Phone: (305) 399-3832
Email: gelliot@elliotlegal.com
Attorney for Ghahan, LLC

### CERTIFICATE OF SERVICE

THE UNDERSIGNED HEREBY CERTIFIES that a true and correct copy of the foregoing document  was  electronically filed with  the  Clerk  of  Court  using  the

5

CM/ECF system, on this 14th day day of June, 2021, and that the foregoing document is being served this day on all counsel of record and pro-se parties via transmission of Notices of Electronic Filing generated by CM/ECF or by e-mail.

By: /s/ *Gavin Tudor Elliot*